## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **JAMES RAY EPPS, SR.**, | : |
|  | : |
| Plaintiff, | : |
|  | : |
| v. | :    C.A. No. 1:23-cv-00761-MN |
|  | : |
| **FOX NEWS NETWORK, LLC**, | : |
|  | : |
| Defendant. | : |
|  | : |

## MEMORANDUM IN SUPPORT OF
## <u>DEFENDANT FOX NEWS NETWORK, LLC'S MOTION TO DISMISS</u>

**OF COUNSEL:**

Patrick F. Philbin
Katherine A. Petti
**ELLIS GEORGE CIPOLLONE
O'BRIEN LLP**

1155 F Street, NW, Suite 750
Washington, DC 20004
(202) 249-6900; (202) 249-6899 (Fax)

2121 Avenue of the Stars, Suite 3000
Los Angeles, California 90067
(310) 274-7100; (310) 275-5697 (Fax)
pphilbin@egcfirm.com
kpetti@egcfirm.com

Paul D. Clement
Erin E. Murphy
**CLEMENT & MURPHY PLLC**
706 Duke Street
Alexandria, VA 22314
(202) 742-8900; (703) 997-6207 (Fax)
paul.clement@clementmurphy.com
erin.murphy@clementmurphy.com

**DLA PIPER LLP (US)**
John L. Reed (I.D. No. 3023)
Peter H. Kyle (I.D. No. 5918)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
(302) 468-5700
(302) 394-2341 (Fax)
john.reed@us.dlapiper.com
peter.kyle@us.dlapiper.com

*Attorneys for Defendant
Fox News Network, LLC*

## TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDINGS ...................................................................1

SUMMARY OF THE ARGUMENT ......................................................................................1

STATEMENT OF FACTS ....................................................................................................2

    A.    Plaintiff Voluntarily Takes a Prominent Public Role on January 6. ........................2

    B.    The FBI Publicly Seeks Plaintiff, Then Stops. ......................................................3

    C.    Plaintiff's Public Role in January 6 Becomes the Subject of Intense
        Interest from Congress and the Media. ..................................................................3

    D.    Plaintiff Tells His Story Nationally Through the January 6th Committee. ..............4

    E.    Fox Hosts Also Discuss the Public Controversy Around Plaintiff. .......................5

    F.    The New York Times and 60 Minutes Provide a Platform for Plaintiff's
        Story. ...................................................................................................................5

    G.    Plaintiff Sues. ......................................................................................................6

LEGAL STANDARD .........................................................................................................6

CHOICE OF LAW .............................................................................................................6

ARGUMENT .....................................................................................................................6

I.     PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION. ....................................6

    A.    Plaintiff's Defamation Claims Fail Because the Challenged Statements
        Are Constitutionally Protected Opinions, Not Provably False Statements
        of Fact. .................................................................................................................7

        1.    The statements did not have precise meaning or convey objectively
            verifiable facts. ........................................................................................7

        2.    Even if the challenged statements conveyed a factual implication,
            context confirms that they are opinions based on fully disclosed
            facts. .......................................................................................................9

        3.    Broader context also confirms the challenged statements are
            opinion. ..................................................................................................12

    B.    Plaintiff Fails To Allege Facts Plausibly Suggesting Actual Malice. .....................12

        1.    Plaintiff Is a Limited Purpose Public Figure. ............................................13

        2.    Plaintiff Fails To Allege Any Facts Plausibly Suggesting Actual
            Malice. ...................................................................................................15

    C.    Plaintiff Fails To Plead Malice Adequately Under State Law. ..............................18

    D.    Claims Based on Statements Made Before July 10, 2022 Are Time Barred. ........18

## TABLE OF CONTENTS
### (Continued)

**Page**

    E.    The Complaint Fails To Allege Facts Under which Fox Could Be Liable for Statements Made on the Third-Party "*Redacted*" Podcast. ............................. 19

II.    THE FALSE LIGHT CLAIM FAILS FOR THE SAME REASONS ............................. 20

CONCLUSION .................................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adelson v. Harris*,
   973 F. Supp. 2d 467 (S.D.N.Y. 2013) .........................................................................7

*Albert v. Loksen*,
   239 F.3d 256 (2d Cir. 2001) .........................................................................................7

*Aoki v. Benihana, Inc.*,
   839 F. Supp. 2d 759 (D. Del. 2012) .............................................................................6

*Arpaio v. Zucker*,
   414 F. Supp. 3d 84 (D.D.C. 2019) .............................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................................6

*Bates v. Utah Ass'n of Realtors*,
   297 P.3d 49 (Utah Ct. App. 2013) .............................................................................20

*Bauman v. Butowsky*,
   377 F. Supp. 3d 1 (D.D.C. 2019) ........................................................................7, 8, 11

*Benak ex rel. All. Premier Growth Fund v. All. Cap. Mgmt. L.P.*,
   435 F.3d 396 (3d Cir. 2006) ......................................................................................3, 9

*Birkner v. Salt Lake Cnty.*,
   771 P.2d 1053 (Utah 1989) .........................................................................................19

*Biro v. Conde Nast*,
   963 F. Supp. 2d 255 (S.D.N.Y. 2013) ........................................................3, 16, 17, 19

*Boone v. Newsweek LLC*,
   No. CV 22-1601, 2023 WL 2245104 (E.D. Pa. Feb. 27, 2023) .................................17

*Brian v. Richardson*,
   660 N.E.2d 1126 (N.Y. 1995) .....................................................................................11

*Chapin v. Knight-Ridder, Inc.*,
   993 F.2d 1087 (4th Cir. 1993) ......................................................................................8

*Condit v. Dunne*,
   317 F. Supp. 2d 344 (S.D.N.Y. 2004) ..........................................................................3

*Costanza v. Seinfeld,*
    181 Misc.2d 562 (N.Y. Sup. Ct. 1999) ...........................................................................20

*Coughlin v. Westinghouse Broad. & Cable, Inc.,*
    603 F. Supp. 377 (E.D. Pa. 1985), *aff'd,* 780 F.2d 340 (3d Cir. 1985)...................16

*Curtis Pub. Co. v. Butts,*
    388 U.S. 130 (1967).............................................................................................13, 14

*Diamond Ranch Academy, Inc. v. Filer,*
    2016 WL 633351 (D. Utah Feb. 17, 2016) ..................................................................19

*Doe v. Delaware, Dep't of Servs. for Child., Youth & Their Fams.,*
    No. CV 15-963-LPS, 2016 WL 5416679 (D. Del. Sept. 27, 2016).........................10

*Drew v. Pac. Life Ins. Co.,*
    496 P.3d 201 (Utah 2021) ............................................................................................19

*Dunn v. Gannett New York Newspapers, Inc.,*
    833 F.2d 446 (3d Cir. 1987).........................................................................................10

*Eliott v. Lions Gate Entertainment Corp.,*
    No. 2:21-cv-08206-SSS-DFMx, 2022 WL 17408662 (C.D. Cal. Nov. 8, 2022) .....................3

*Gertz v. Robert Welch, Inc.,*
    418 U.S. 323 (1974)........................................................................................2, 12, 14

*Grass v. News Grp. Publications, Inc.,*
    570 F. Supp. 178 (S.D.N.Y. 1983) ...............................................................................14

*Harte-Hanks Commc'ns, Inc. v. Connaughton,*
    491 U.S. 657 (1989).............................................................................................15, 16

*Hill v. Cosby,*
    665 Fed. App'x 169 (3d Cir. 2016)..............................................................................10

*Hosszu v. Barrett,*
    202 F. Supp. 3d 1101 (D. Ariz. 2016) ...................................................................11, 12

*Howard v. Antilla,*
    294 F.3d 244 (1st Cir. 2002)........................................................................................20

*Immuno AG v. Moor-Jankowski,*
    567 N.E.2d 1270 (N.Y. 1991)........................................................................................7

*Jacob v. Bezzant,*
    212 P.3d 535 (Utah 2009).............................................................................................20

*Jensen v. Sawyers*,
130 P.3d 325 (Utah 2005) ................................................................................................18, 20

*Kinsey v. New York Times Co.*,
991 F.3d 171 (2d Cir. 2021) ...................................................................................................6

*Lawrence v. Moss*,
639 F.2d 634 (10th Cir. 1981) ..............................................................................................18

*Lohrenz v. Donnelly*,
223 F. Supp. 2d 25 (D.D.C. 2002) ..................................................................................16, 17

*Marcone v. Penthouse Int'l Mag. For Men*,
754 F.2d 1072 (3d Cir. 1985) ............................................................................................13, 14

*McCafferty v. Newsweek Media Grp., Ltd.*,
955 F.3d 352 (3d Cir. 2020) ........................................................................................ *passim*

*McCullough v. Gannett, Co.*,
No. 1:22-cv-1099, 2023 WL 3075940 (E.D. Va. Apr. 25, 2023) ...........................................17

*McDougal v. Fox News Network, LLC*,
489 F. Supp. 3d 174 (S.D.N.Y. 2020) ...................................................................................12

*McDowell v. Paiewonsky*,
769 F.2d 942 (3d Cir. 1985) ............................................................................................13, 14

*McFarlane v. Sheridan Sq. Press, Inc.*,
91 F.3d 1501 (D.C. Cir. 1996) ..............................................................................................16

*McKee v. Cosby*,
874 F.3d 54 (1st Cir. 2017) ...................................................................................................10

*Milkovich v. Lorain Journal Co.*,
497 U.S. 1 (1990) .....................................................................................................................7

*Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*,
14 F. Supp. 3d 191 (S.D.N.Y. 2014) .....................................................................................19

*Mzamane v. Winfrey*,
693 F. Supp. 2d 442 (E.D. Pa. 2010) ....................................................................................14

*Negussey v. Syracuse Univ.*,
No. 95-CV-1827, 1997 WL 141679 (N.D.N.Y. Mar. 24, 1997) ............................................20

*New York Times v. Sullivan*,
376 U.S. 254 (1964) ...........................................................................................................2, 15

*Nunes v. Rushton*,
    299 F. Supp. 3d 1216 (D. Utah 2018) ............................................................................20

*Ogden Bus Lines v. KSL Inc.*,
    551 P.2d 222 (Utah 1976) ...............................................................................................18

*Pace v. Baker-White*,
    850 F. App'x 827 (3d Cir. 2021) .....................................................................................15

*Parsi v. Daioleslam*,
    890 F. Supp. 2d 77 (D.D.C. 2012) ..................................................................................15

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1995) .............................................................................................9

*Piccione v. Bartels*,
    785 F.3d 766 (1st Cir. 2015) ...........................................................................................11

*Pliuskaitis v. USA Swimming, Inc.*,
    243 F. Supp. 3d 1217 (D. Utah 2017) .............................................................................19

*Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*
    829 F.2d 1280 (4th Cir. 1987) ........................................................................................11

*Prince v. Intercept*,
    634 F. Supp. 3d 114 (S.D.N.Y. 2022) ..............................................................................3

*Redco Corp. v. CBS, Inc.*,
    758 F.2d 970 (3d Cir. 1985) ...................................................................................*passim*

*Rivera v. State*,
    142 N.E.3d 641 (N.Y. 2019) ...........................................................................................19

*Russell v. Thomson Newspapers, Inc.*,
    842 P.2d 896 (Utah 1992) ...............................................................................................18

*Seymour v. New York State Elec. & Gas Corp.*,
    215 A.D.2d 971 (N.Y. 1995) ...........................................................................................19

*Shchegol v. Rabinovich*,
    10 Misc. 3d 1057(A), (N.Y. Sup. Ct. 2005), *aff'd*, 30 A.D.3d 311 (N.Y. App.
    Div. 2006) ..........................................................................................................................8

*SIRQ, Inc. v. The Layton Companies, Inc.*,
    379 P.3d 1237 (Utah 2016) .............................................................................................20

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ...........................................................................................6, 13, 15

*Standing Committee on Discipline v. Yagman,*
    55 F.3d 1430 (9th Cir. 1995) ..............................................................10

*Steinhilber v. Alphonse,*
    501 N.E.2d 550 (N.Y. 1986)..............................................................7, 9

*Tah v. Glob. Witness Publ'g, Inc.,*
    991 F.3d 231 (D.C. Cir. 2021) .......................................................12, 17

*Talley v. Time, Inc.,*
    923 F.3d 878 (10th Cir. 2019) ...........................................................17

*Time, Inc. v. Hill,*
    385 U.S. 374 (1967)............................................................................20

*Triestman v. Slate Grp., LLC,*
    No. 19-890 (MN), 2020 WL 1450562 (D. Del. Mar. 25, 2020) ...........18

*Trotter v. Jack Anderson Enterprises, Inc.,*
    818 F.2d 431 (5th Cir. 1987) ..............................................................14

*Wang v. University of Pittsburgh, et. al.,*
    No. 2:20-CV-1952, 2021 WL 6051568 (W.D. Pa. Dec. 21, 2021) .........8

*West v. Thomson Newspapers,*
    872 P.2d 999 (Utah 1994).................................................................7, 12

*Westmoreland v. CBS Inc.,*
    596 F. Supp. 1170 (S.D.N.Y.1984)......................................................16

**Statutes**

Ariz. Rev. Stat. § 12-541(1).......................................................................19

Del. Code tit. 10, § 8119 ...........................................................................18

Del. Code tit. 10, § 8121 ...........................................................................18

N.Y. C.P.L.R. § 215(3)...............................................................................18

NY Civ. Rts. Law § 76-a ...........................................................................18

UT Code § 45-2-3(5) .................................................................................18

UT Code § 45-2-5 ......................................................................................18

UT Code § 78B-2-302(4)............................................................................18

**Other Authorities**

Restatement (Second) of Torts § 566 ...........................................................................................9, 10

Restatement (Second) of Torts § 652E ...............................................................................................20

1 Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems* §
     5:5.2(C) (5th ed. 2017) ...............................................................................................................17

Smolla, 1 Law of Defamation § 6:29 (2d ed.) ...................................................................................11

*United States v. Brown*, 8:21-cr-00348-SCB-SPF (M.D. Fla.) Dkt. 344-1 ....................................4

## NATURE AND STAGE OF THE PROCEEDINGS

After Plaintiff sued in state court, Defendant removed this action on July 12, 2023, (D.I. 1.), and was served later that day.  (D.I. 1.).

## SUMMARY OF THE ARGUMENT

This lawsuit is a direct attack on the First Amendment.  After Plaintiff was filmed taking a conspicuous role on January 6—exhorting a crowd the day before to "go into the Capitol"—members of Congress and the media asked questions: why was he not arrested and was it possible that he or others were undercover federal agents?  Fox opinion hosts joined the debate by doing exactly what the First Amendment protects.  They set out key facts (that Plaintiff does not dispute) and then asked questions and offered opinions.  They pointed to the lack of an arrest and asked, "Why is that?" and said it was "odd" and argued that these were "legitimate question[s]."

Now Plaintiff claims that Fox should be liable for defamation because its hosts *implied* that he was "a federal agent who was encouraging and inciting others to engage in unlawful activities." Compl. ¶ 109.  That claim suffers from a host of defects that require dismissal as a matter of law.

*First,* all the challenged statements are opinions protected by the First Amendment.  "Under the First Amendment, opinions based on disclosed facts are 'absolutely privileged' no matter how derogatory they are." *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 357 (3d Cir. 2020). This rule recognizes that, when a speaker sets out the facts supporting a conclusion, "a listener may choose to accept or reject it on the basis of an independent evaluation of the facts."  *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972 (3d Cir. 1985).  The remedy for faulty conclusions based on disclosed facts is more speech, not punishing speech.  Here, the allegations and transcripts of Fox shows demonstrate that Fox hosts were presenting protected opinions, on disclosed facts, that viewers could take or reject.  Indeed, in one segment that Plaintiff attacks (but fails to quote in full), the host showed a video of Plaintiff and told viewers: "Once again, you can draw whatever

1

conclusions you like from that video.  We have ours and we shared them with you."  Ex.A at 2.

*Second*, Plaintiff is a limited purpose public figure and he fails to allege actual malice. Because Plaintiff voluntarily thrust himself into a public controversy by the prominent role he assumed on January 6—even giving live interviews that day—he became a limited purpose public figure.  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974).  Accordingly, he must allege facts showing actual malice—*i.e.*, that Fox speakers knew their statements were false or had substantial awareness that they were probably false.  *New York Times v. Sullivan*, 376 U.S. 254, 280 (1964). The Complaint fails to allege any such facts.

*Third*, both Utah and New York law independently require pleading facts to satisfy a malice standard, and Plaintiff fails to meet those state-law requirements for the same reasons.

*Fourth*, Plaintiff's claims are largely time-barred.  Under the one-year statute of limitations, Plaintiff can bring claims only for statements *after* July 10, 2022.  Broadcasts before that date cannot give rise to a claim.  And Plaintiff cannot claim damages from the loss of his home and business in Arizona, which were complete in May 2022, *outside* the limitations period.

Plaintiff's false light claim is foreclosed by the same First Amendment principles and is also largely time-barred under the same one-year limitations period.

## STATEMENT OF FACTS

### A.    Plaintiff Voluntarily Takes a Prominent Public Role on January 6.

On January 4, 2021, Plaintiff flew across the country to attend the "Stop the Steal Rally" and to draw attention to his message supporting President Trump.  Compl.  ¶¶ 28, 26.  On January 5, he was live-streamed on the Internet telling a large crowd: "I'm probably gonna go to jail for this.  Tomorrow, we need to go into the Capitol."  *Id.* ¶¶ 29–30.  Members of the crowd, apparently suspecting that he was a federal agent, spontaneously chanted: "Fed! Fed! Fed!"  *Id.* ¶ 30.  Later, Plaintiff told one of the leaders in the crowd, "we're here to storm the [mumbles] I'm not kidding."

Ex.B at 4:09:00.[1]  That person responded: "We're here to storm the Capitol, hell yeah!"  *Id.*

On January 6, Plaintiff took a leading role, directing the crowd at the rally to the Capitol. ¶ 31.  In one video, he tells a crowd, "we are going to the Capitol, where our problems are, it's that direction, please spread the word."  Ex.C at 5:19.  Along the way, he gave a TV interview.  *See* Ex.D at 4:19.  At the Capitol, Plaintiff went to the front of the crowd along a police barricade that became one of the initial breach points.  Compl. ¶ 32.  He was captured on video speaking into the ear of Ryan Samsel, and moments later Samsel and others pushed the barricade down, toppling it over an officer.  *Id.*; *see also* Ex.C.  Plaintiff immediately followed through the breach.  Compl. ¶ 35.  As he left the Capitol he texted his nephew, "I was in the front with a few others.  I also orchestrated it."  Select Committee to Investigate the January 6th Attack on the U.S. Capitol, U.S House of Representatives, Interview of: Ray Epps, at 60 (Jan. 21, 2022) ("Jan 6th Tr.") (Ex.E).

### B.    The FBI Publicly Seeks Plaintiff, Then Stops.

When the FBI began trying to identify those who instigated violence on January 6, it created a web page titled "MOST WANTED" and prominently placed Plaintiff's photo on it.  Ex.F. Compl. ¶ 37.  The FBI removed photos as people were arrested, but removed Plaintiff's photo around July 2021 without making an arrest.  Compl.  ¶ 37.

### C.    Plaintiff's Public Role in January 6 Becomes the Subject of Intense Interest from Congress and the Media.

As videos of Plaintiff circulated online, media and government officials took interest.  In

---

[1] On a motion to dismiss the Court may take judicial notice of published materials such as newspaper articles "to indicate what was in the public realm at the time," *Benak ex rel. All. Premier Growth Fund v. All. Cap. Mgmt. L.P.*, 435 F.3d 396, 401 n. 15 (3d Cir. 2006), to illustrate "the broader social context" in which statements were made, *Condit v. Dunne*, 317 F. Supp. 2d 344, 357 (S.D.N.Y. 2004), and to determine whether a plaintiff qualifies as a public figure, *see Prince v. Intercept*, 634 F. Supp. 3d 114, 135 n.23 (S.D.N.Y. 2022); *Biro v. Conde Nast,* 963 F. Supp. 2d 255, 271 n.9 (S.D.N.Y. 2013); *see also, e.g., Eliott v. Lions Gate Entertainment Corp.*, No. 2:21-cv-08206-SSS-DFMx, 2022 WL 17408662, at *3 (C.D. Cal. Nov. 8, 2022).

June 2021, the New York Times capped a six month investigation with a video entitled "Day of Rage" that featured Plaintiff.  *See* Ex.G.  The Times reported: "for some, storming the Capitol was part of the plan, all along," and showed Plaintiff telling a crowd that they need to "go into the Capitol."  *Id.* at 4:00.  It continued: "some make calls to storm the Capitol even before Trump speak[s]," and showed Plaintiff telling a crowd, "[w]e are going to the Capitol where our problems are.  It's that direction."  *Id.* at 6:23.  It also stated that Samsel pushing down the barricade, seconds after Plaintiff spoke to him, was when "the protest turn[ed] violent."  *Id.* at 10:08.

Plaintiff was also the focus of two articles in Arizona's largest newspaper.  Ex.H, Ex.I.

On October 21, 2021, Rep. Massie played videos of Plaintiff on January 5 and 6 in a hearing and asked the Attorney General whether there were federal agents in the crowd on those days.  Ex.J at 240; *see also* Jan 6th Tr. Ex.E at 93–94.  Attorney General Garland declined to answer.  *Id.*

Four days later, *Revolver News* claimed that Plaintiff was a "Fed-Protected Provocateur."  https://tinyurl.com/4rx8y8nx.  Congressman Matt Gaetz argued on his podcast that this was "the biggest story in the world right now," and noted that Members of Congress and journalists were asking, "was the FBI involved in animating criminal activity on January 6?"  Ex.K at 2:31.  Gaetz pointed out that agents were on tape trying to insert an informant into the Oath Keepers, of which Plaintiff had been a member.  *Id.* at 3:08–6:01; *see also United States v. Brown*, 8:21-cr-00348-SCB-SPF (M.D. Fla.) Dkt. 344-1, at 11, 33–34 (transcript describing tape of DHS agents).

On January 11, 2022, Senator Ted Cruz asked an FBI official whether any FBI agents or informants participated in January 6, pointed to still shots of Plaintiff, and asked whether Plaintiff was a "fed."  Ex.L at 1:22:00.  The official declined to answer.  *Id.*  According to 60 Minutes, the FBI refused to comment on Plaintiff for almost *two years*, until April 2023.  Ex.C at 13:00.

**D.      Plaintiff Tells His Story Nationally Through the January 6th Committee.**

On January 21, 2022, Plaintiff testified before the January 6th Committee that he had not

been working for the government on January 6.  Jan 6th Tr. Ex.E at 77–78.  The Committee amplified his message by tweeting out his denial to all its followers.  Ex.M.

**E.    Fox Hosts Also Discuss the Public Controversy Around Plaintiff.**

Fox hosts also joined the public debate about Plaintiff's prominent role on January 6.  The first challenged mention of Plaintiff on Fox was on October 25, 2021, Compl. ¶ 56a—after the New York Times special feature and after the congressional inquiries about him.

As quoted in the Complaint, Tucker Carlson (and/or his guests) described the known (and undisputed) facts about Plaintiff.  *See, e.g.*, Compl. ¶¶ 50, 52.  Then they asked questions and speculated about answers.  One night, "Mr. Carlson ended his show asking why Epps was 'never charged or arrested or sent to jail' and promis[ed] his audience an investigation." *Id.* ¶ 51.  Another time, Mr. Carlson said: "The question is, did Ray Epps work or have any contact with any government agency?" and he followed up: "We don't know."  Compl. ¶ 52.  He also pointed out that Plaintiff had not been charged and asked, "Why is that?" and gave his view that, "At this point, it's pretty obvious why that is."  Compl. ¶ 52.  Similarly, he argued:  "It's a legitimate question. Why won't they answer it?"  *Id.* ¶ 43.  Another opinion host similarly "questioned why Epps was removed from the FBI list and has not been arrested."  Compl. ¶ 56c.  And another asked "'What about Epps?  Did he work for the FBI?'"  *Id.* ¶ 56d.

**F.    The New York Times and 60 Minutes Provide a Platform for Plaintiff's Story.**

On July 13, 2022 the New York Times published a new feature about Plaintiff declaring that he was the "Target" of a "Conspiracy Theory."  Ex.N.  The story presented Plaintiff's account of his role on January 6, including that he was not working for the government.  On April 21, 2023, 60 Minutes devoted one third of its broadcast to Plaintiff's story.  Ex.C.  On national television, Plaintiff gave his account, again explaining that he was not working for the government.

### G.      Plaintiff Sues.

On July 10, 2023, Plaintiff sued Fox alleging defamation and false light based on the claimed implication that Plaintiff "was a federal agent who was encouraging and inciting others to engage in unlawful activities."  Compl. ¶ 109.  As damages, he points to the loss of his home and business as of May 2022 when he left Arizona, *id.* ¶ 22, more than one year before he filed suit.

### LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

### CHOICE OF LAW

The Court need not rule on choice of law now, because the Complaint fails under either the law of Plaintiff's domicile (Utah), *see, e.g.*, *Aoki v. Benihana, Inc.*, 839 F. Supp. 2d 759, 764–66 (D. Del. 2012), or the law of Fox's headquarters and the place where the statements were made (New York), *see, e.g.*, *Kinsey v. New York Times Co.*, 991 F.3d 171, 176–78 & n.21 (2d Cir. 2021).

### ARGUMENT

### I.      PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION.

This lawsuit attacks core First Amendment protected speech in which Fox opinion hosts asked questions, looked for answers, and provided commentary and opinions on widely reported— and undisputed—facts about Plaintiff's prominent role in one of the biggest public controversies in political history:  the January 6 storming of the Capitol.  Plaintiff's claims run into the bedrock rule that, "[u]nder the First Amendment, opinions based on disclosed facts are 'absolutely privileged' no matter how derogatory they are."  *McCafferty*, 955 F.3d at 357.  And Plaintiff also fails to plead actual malice—that is, that Fox hosts subjectively knew their statements were false or seriously doubted their truth.  *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

Under both Utah and New York law, defamation requires, among other things: (i) a

provably false statement of fact (not opinion); (ii) made with the requisite degree of fault—which here is "actual malice," because Plaintiff is a limited purpose public figure. *See West v. Thomson Newspapers*, 872 P.2d 999, 1007–08 (Utah 1994); *Albert v. Loksen*, 239 F.3d 256, 265–66 (2d Cir. 2001). The Complaint fails on both requirements, and is mostly time-barred as well.

### A. Plaintiff's Defamation Claims Fail Because the Challenged Statements Are Constitutionally Protected Opinions, Not Provably False Statements of Fact.

Plaintiff's defamation claim fails because the challenged statements all convey opinions, not facts. Under the First Amendment, a statement that "does not contain a provably false factual connotation will receive full constitutional protection," and "statements that cannot reasonably be interpreted as stating actual facts about an individual" are protected. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). Utah and New York law incorporate the same or greater protections. *See West*, 872 P.2d at 1015–19; *Immuno AG v. Moor-Jankowski*, 567 N.E.2d 1270, 1273 (N.Y. 1991). The question whether a statement "constitutes constitutionally protected opinion or unprotected fact is an issue that must be decided by the court," and if the issue is close, "a court should err on the side of non-actionability." *Adelson v. Harris*, 973 F. Supp. 2d 467, 487 (S.D.N.Y. 2013); *accord Bauman v. Butowsky*, 377 F. Supp. 3d 1, 15 (D.D.C. 2019).

Whether a statement is opinion turns on: (i) whether it has a precise meaning; (ii) whether it can be objectively verified as true or false; (iii) the full context of the statement; and (iv) the broader context in which the statement is made. *West*, 872 P.2d at 1018; *Steinhilber v. Alphonse*, 501 N.E.2d 550, 553 (N.Y. 1986). All factors confirm the statements here are opinions.

### 1. The statements did not have precise meaning or convey objectively verifiable facts.

Virtually all of the challenged statements are not assertions of verifiable fact, because they consist of a Fox opinion host (or guest) setting out the facts about Plaintiff and (i) asking questions or (ii) providing a subjective opinion that the facts are "strange" or "odd" and warrant further

investigation.  For example, Tucker Carlson "ask[ed] why Epps was 'never charged or arrested or sent to jail,'" and noted that "[h]e's never been charged . . . . Why is that?" and gave his view that "[t]he question is, did Ray Epps work or have any contact with any government agency?"  Compl. ¶¶ 51, 52.  Another host "questioned why Epps was removed from the FBI list and has not been arrested" and "questioned why Epps was not charged with conspiracy."  Compl.  ¶ 56(c), (e).

Asking such questions, however, does not assert a precise meaning or imply provable facts. It conveys an opinion that the facts raise questions deserving investigation.  In fact, Fox opinion hosts squarely asserted their goal was to show there were real questions that should be answered. Mr. Carlson argued that "this is not a conspiracy theory.  It's a legitimate question.  Why won't they answer it?" Compl. ¶ 43, and he said: "I don't think anyone watching should feel embarrassed to ask those questions or allow anyone to bark you into silence by calling you a conspiracy nut."[2] Ex.O at 9.  Commentary asserting that facts "deserv[e] serious scrutiny," *Bauman*, 377 F. Supp. 3d at 11, and "raising questions" and "urging readers to investigate" is a classic form of opinion. *Shchegol v. Rabinovich*, 10 Misc. 3d 1057(A), at *7 (N.Y. Sup. Ct. 2005), *aff'd*, 30 A.D.3d 311 (N.Y. App. Div. 2006) (table decision).  It lies at the heart of protected commentary on issues of public concern.  "[I]nviting the public to ask" questions, "rather than a libel, is the paradigm of a properly functioning press." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1096 (4th Cir. 1993).

Similarly, statements arguing that the facts were "very odd," that "something very strange is going on with Ray Epps," and that "the Ray Epps thing isn't, isn't organic," Compl. ¶¶ 56, 57, are protected opinions.  Statements characterizing facts as "'suspicious' . . . [are] expression[s] of opinion that cannot support a claim of defamation." *Bauman*, 377 F. Supp. 3d at 11.

---

[2] Even where the complaint quotes only a portion, the Court may consider the full statement (here, the transcript of a show) because it is incorporated by reference.  *See, e.g.*, *Wang v. University of Pittsburgh, et. al.*, No. 2:20-CV-1952, 2021 WL 6051568, at *15 (W.D. Pa. Dec. 21, 2021).

2.     **Even if the challenged statements conveyed a factual implication, context confirms that they are opinions based on fully disclosed facts.**

Even if the challenged statements implied that Plaintiff was working for the government, the context confirms they were still protected opinion.  The governing rule here is that, "[u]nder the First Amendment, opinions based on disclosed facts are 'absolutely privileged' no matter how derogatory they are." *McCafferty*, 955 F.3d at 357; *see also Steinhilber*, 501 N.E.2d at 552 ("'pure opinion' is a statement of opinion…accompanied by a recitation of the facts upon which it is based.").[3]  This rule reflects the principle that, "[i]f the disclosed facts are true and the opinion is defamatory, a listener may choose to accept or reject it on the basis of an independent evaluation of the facts." *Redco Corp.*, 758 F.2d at 972.  "[W]hen an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader to draw his own conclusions, those statements are generally protected by the First Amendment." *Partington v. Bugliosi*, 56 F.3d 1147, 1156–57 (9th Cir. 1995).

That principle applies to *all* the challenged statements, which were all based on disclosed facts.  The Complaint quotes at length two segments from Tucker Carlson Tonight that show the typical pattern.  The host or guest details the key facts: Plaintiff was on video urging a crowd to go "into the Capitol"; he was at the front of the crowd at a barricade right before it was breached; he was on the FBI's wanted poster and then removed; unlike others, he had not been charged.  *See* Compl. ¶¶ 50, 52.  Then the host or guest offers questions or commentary based on the facts.  The same format is apparent in other challenged statements.  Thus, Plaintiff asserts "Mr. Carlson ended his show asking why Epps was 'never charged or arrested or sent to jail,'" and another host said

---

[3] Restatement (Second) of Torts § 566 cmt. c ("A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is.").

that it was "very odd" that Plaintiff's photo was taken off the FBI list.  Compl. ¶¶ 51, 56a.  Such statements are plainly commentary on disclosed and undisputed facts.[4]

Plaintiff does not claim that the facts recited in the challenged statements were false and defamatory in themselves.  *Cf. Standing Committee on Discipline v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995) ("A statement of opinion on fully disclosed facts can be punished only if the stated facts are themselves false and demeaning.").  To the contrary, he admits all the key facts about his involvement on January 5 and January 6.  *See* Compl. ¶¶ 30, 31, 33, 37.

Nor does he allege that any statement implied *undisclosed* facts.  That is critical, because "[a]n opinion can be a defamatory statement only if it implies that it is based on *undisclosed facts*." *Doe v. Delaware, Dep't of Servs. for Child., Youth & Their Fams.*, No. CV 15-963-LPS, 2016 WL 5416679, at *7 (D. Del. Sept. 27, 2016) (emphasis added); *see also Redco Corp.*, 758 F.2d at 972 (noting that "if an opinion is stated in a manner that implies that it draws on unstated facts for its basis," it may be actionable).  Far from hinting that they knew more, Fox hosts were making the point that the known facts did not provide satisfactory answers.

It does not matter that the implication Plaintiff derives from the challenged statements (that he was working for the FBI) is a factual point that could be proved true or false.  As the Restatement explains, where a speaker discloses the facts on which he relies, even a factual conclusion—such as that a person is an alcoholic—is protected opinion.  Restatement (Second) of Torts § 566 cmt. c, illus. 4; *see, e.g., McKee v. Cosby,* 874 F.3d 54, 61,63 (1st Cir. 2017) (assertion that plaintiff lied about incident was opinion on disclosed facts); *Hill v. Cosby*, 665 Fed. App'x 169, 174–75

---

[4] Because the facts were widely known and Fox hosts discussed them repeatedly, hosts did not need to repeat all the facts in every segment for this principle to apply.  *See, e.g., Dunn v. Gannett New York Newspapers, Inc.*, 833 F.2d 446, 453 (3d Cir. 1987) (statement is opinion "when the maker of the statement does not spell out the alleged facts on which the opinion is based, but both parties to the communication know the facts or assume their existence").

(3d Cir. 2016) (same); *Redco*, 758 F.2d at 972 (statement that tire rims were unsafe was opinion on disclosed facts);  *Potomac Valve & Fitting Inc. v. Crawford Fitting Co.* 829 F.2d 1280, 1290 (4th Cir. 1987) ("[W]e acknowledge that the defendant's statement is capable of being proved or disproved, but we nevertheless hold that when viewed in context it is clearly an opinion."); *Hosszu v. Barrett*, 202 F. Supp. 3d 1101, 1106–07 (D. Ariz. 2016) (conclusion that facts pointed to swimmer using performance-enhancing drugs was protected opinion).[5]  Similarly here, even if Fox hosts implied a factual conclusion about Plaintiff, it reflected only their interpretations based on disclosed facts.

It is especially clear that any conclusions were only opinions, because the statements were replete with "cautionary language" that signal opinion and interpretation.  *Bauman*, 377 F. Supp. 3d at 11.  The format of the segments involved setting out facts and raising queries on those facts, *see, e.g.*, Compl. ¶¶ 50, 52, which indicated that issues surrounding Plaintiff presented a puzzle to unravel, not a matter on which there were definitive answers.  The opinion hosts argued that further inquiry was needed precisely because officials would not ask or answer key questions.  *See, e.g.*, Compl. ¶ 43 ("It's a legitimate question. Why won't they answer it?").[6]  Calling for further investigation signals that a speaker's conclusions are a theory or conjecture, not established fact. *Cf. Brian v. Richardson*, 660 N.E.2d 1126, 1131 (N.Y. 1995) (where article calls for investigation, readers would understand statements as "*allegations* to be investigated rather than as *facts*").

---

[5]  *See also Piccione v. Bartels*, 785 F.3d 766, 771 (1st Cir. 2015) ("[A] speaker can immunize his statement from defamation liability by fully disclosing the non-defamatory facts on which his opinion is based."); Smolla, 1 Law of Defamation § 6:29 (2d ed.) ("A pure opinion does not lose its protected status merely because it is ostensibly cast in factual form . . . .").

[6]  *See also, e.g.*, Ex.O at 8–9 ("Why would they not want to get to the bottom of such an obvious and important question?"); Ex.P at 6.("No one in the [Jan. 6] Committee has explained whether Ray Epps was in communication with any U.S. government agency.  Why won't they just tell us that?"); Ex.Q at 7. ("[W]e will keep asking, because we think it is a very obvious and very important question . . . .").

Fox hosts also acknowledged that they did not have definitive answers.  Mr. Carlson asked "[D]id Ray Epps work or have any contact with any government agency?"  And he answered: "We don't know."  Compl. ¶ 52.  The official silence and lack of clear answers were part of the point of his commentary.  In one segment, after showing a video of Plaintiff, Mr. Carlson squarely stated: "once again, you can draw whatever conclusions you like from that video.  We have ours and we shared them with you."  Ex.A at 2.  Fox opinion hosts were clearly providing their interpretations that listeners could accept or reject based on their own assessment of the fully disclosed facts.

First Amendment protection for such commentary is essential for our democracy.  If commentators could be liable in defamation any time they provided a theory to explain a set of facts, debate on public matters would be stifled.  Protection for such commentary is based on the recognition that "an opinion which is unfounded reveals its lack of merit when the opinion-holder discloses the factual basis for the idea."  *Redco*, 758 F.2d at 972.  It reflects the foundational First Amendment principle that the remedy for erroneous ideas is more speech, not punishing speech.

### 3.   Broader context also confirms the challenged statements are opinion.

Finally, the broader context confirms the statements are opinion, because they all appeared on "commentary talk shows" where audiences expect "pitched commentary."  *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 182–84 (S.D.N.Y. 2020); *see, e.g.*, *West*, 872 P.2d at 1018, 1020 (setting such as editorial page "argue[s] strongly in favor of finding the statements to be protected opinion"); *Hosszu*, 202 F. Supp. 3d at 1107 (a blog is " a form of media known for containing personal opinion and commentary").  That context confirms that audiences would understand the statements as opinion and speculation, not implied assertions of objective fact.

### B.   Plaintiff Fails To Allege Facts Plausibly Suggesting Actual Malice.

The defamation claims also fail because Plaintiff is a limited purpose public figure, but he fails to allege actual malice.  *See Gertz*, 418 U.S. at 351.  That "famously daunting" standard, *Tah*

*v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 240 (D.C. Cir. 2021), is a bulwark protecting free speech. It requires alleging facts showing that Fox hosts *subjectively knew* their statements were false or had *serious doubts* about their truth. *St. Amant*, 390 U.S. at 731. The Complaint does not come close to meeting that standard.

### 1.     Plaintiff Is a Limited Purpose Public Figure.

Limited purpose public figure status is a question of law for the Court, *see Marcone v. Penthouse Int'l Mag. For Men*, 754 F.2d 1072, 1081 n.4 (3d Cir. 1985), that requires considering (1) whether the alleged defamation involves a "public controversy," and (2) "the nature and extent of plaintiff's involvement in that controversy." *McDowell v. Paiewonsky*, 769 F.2d 942, 948 (3d Cir. 1985). The January 6 storming of the Capitol—and debates about origins of the violence— qualify as a "public controversy." They present "a real dispute, the outcome of which affects the general public." *Marcone*, 754 F.2d at 1083 (drug trafficking is public controversy); *see also Curtis Pub. Co. v. Butts*, 388 U.S. 130, 155 (1967) (race riot was "important public controversy").

As for Plaintiff's involvement, "[w]hen an individual undertakes a course of conduct that invites attention [related to a public controversy] . . . he may be deemed a public figure." *McDowell*, 769 F.2d at 949. Plaintiff easily crossed that line as he "voluntarily thrust himself into the vortex of the dispute." *Marcone*, 754 F.2d at 1083. He flew across the country to join protests designed to draw attention to the protestors' message. Compl. ¶¶ 11–13. He was filmed urging others to "go into the Capitol," even though he said he was "probably go[ing to] go to jail." Compl. ¶¶ 29–30. The next day, on video, he urged protestors to march on the Capitol, *id.* ¶ 31, and along the way gave a TV interview. *See* Ex.D at 4:19. He went to the front of the crowd at a police barricade, Compl. ¶ 32, and was filmed there just before it was breached, *id.* ¶¶ 33–34. He went through the breach and placed himself at the front of the crowd *again* at the *next* police line. *Id.* ¶ 35. He admitted that he helped "orchestrate" the protests. Jan 6th Tr. Ex.E at 60. He also gave

another interview.  *See* Ex.R.  Such open participation in notorious activities easily makes Plaintiff

a limited purpose public figure.  *See, e.g.*, *Curtis Pub.*, 388 U.S. at 154–55 (participating in riot

made plaintiff a public figure); *Marcone*, 754 F.2d at 1083, 1086 ("voluntary connection with

motorcycle gangs" sufficient for limited purpose public figure).

Plaintiff also was "the subject of intense attention."  *Marcone,* 754 F.2d at 1085; *see also*

*Curtis Pub.,* 388 U.S. at 154.  Before the first alleged mention of him on Fox on October 25, 2021,

he was featured in the New York Times "Day of Rage" video, *see supra* p. 4–5, he was the subject

of two stories in Arizona's largest newspaper, *see supra* p. 4, and an article on Daily Kos, Ex.S.

He was also the subject of questions for the Attorney General in a congressional hearing, *see supra*

*id.*, and had been on the FBI "Most Wanted" webpage for 6 months.  Compl. ¶ 37.

Limited purpose public figure status for Plaintiff is also foursquare with the twin rationales

in *Gertz.*  The "more important" factor is "assumption of risk"—Plaintiff "voluntarily put [himself]

in a position of greater public scrutiny" by his conspicuous participation on January 6.  *McDowell,*

769 F.2d at 948; *accord Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 498–505 (E.D. Pa. 2010)

("more importan[t] factor is whether plaintiff "voluntarily assumed the risk of attracting public

attention").  In addition, although not required, Plaintiff had "access to the channels of effective

communication" to respond to any commentary about him.  *Gertz*, 418 U.S. at 344; *see also, e.g.*,

*Trotter v. Jack Anderson Enterprises, Inc.*, 818 F.2d 431, 436 (5th Cir. 1987) (noting that "media

access [is] only one factor in the public-figure analysis" and "significant involvement in public

controversies [is] more important").  Plaintiff was interviewed twice on January 6, and later

interviewed by both 60 Minutes, Ex.C, and the New York Times, Ex.N.  *See, e.g., Mzamane*, 693

F. Supp. 2d at 501 (media access *after* alleged defamation supports limited public figure status);

*Grass v. News Grp. Publications, Inc.*, 570 F. Supp. 178, 185 (S.D.N.Y. 1983) (same).  He also

had the compounded media access that came from telling his story to the January 6 Committee and having the Committee endorse it and tweet it out, Ex.M, which produced multiple further stories in the press.  *See, e.g.*, Ex.T; Ex.U.

### 2.  Plaintiff Fails To Allege Any Facts Plausibly Suggesting Actual Malice.

Plaintiff "must allege *facts* to support an inference of actual malice," *Pace v. Baker-White*, 850 F. App'x 827, 831 (3d Cir. 2021) (emphasis in original).  That requires facts suggesting that Fox hosts acted with "knowledge that [their statements] [were] false or with reckless disregard of whether [they were] false or not."  *Sullivan*, 376 U.S. at 280.  Reckless disregard is a subjective standard that requires showing "a high degree of awareness of . . . probable falsity."  *St. Amant*, 390 U.S. at 731 (quotation omitted).  It "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing."  *Id.*  In fact, failure to investigate and even an "extreme departure from professional standards" is not enough for actual malice.  *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665, 688 (1989).  Instead, a plaintiff must plead facts indicating that the defendant "in fact entertained serious doubts as to the truth of his publication."  *St. Amant*, 390 U.S. at 731.  The Complaint fails to allege any facts suggesting such subjective knowledge of falsity.

First, claims that Fox had an "economic motive" and sought to appease viewers, Compl. ¶ 99, are irrelevant.  "[C]aselaw resoundingly rejects the proposition that a motive to disparage someone is evidence of actual malice," *Parsi v. Daioleslam*, 890 F. Supp. 2d 77, 90 (D.D.C. 2012), and allegations of a "desire to increase . . . profits" are also insufficient.  *McCafferty*, 955 F.3d at 360.[7]  Conclusory assertions about motive provide no facts suggesting knowledge of falsity.

---

[7] *See also Harte-Hanks*, 491 U.S. at 665 ("[M]otive in publishing . . . cannot provide a sufficient basis for finding actual malice."); *Arpaio v. Zucker*, 414 F. Supp. 3d 84, 92 (D.D.C. 2019) ("[T]he

Second, claims that Fox sought guests to support a "pre-conceived story line" also fall short.  Compl. ¶ 99; *see also id.* ¶¶ 64–65.  "[E]vidence that an investigation was 'designed to confirm a hostile premise rather than to find the truth' does not establish malice." *Coughlin v. Westinghouse Broad. & Cable, Inc.*, 603 F. Supp. 377, 386 (E.D. Pa. 1985), *aff'd,* 780 F.2d 340 (3d Cir. 1985).  A "pre-existing agenda, even one which may be noxious to some minds, is not indicative of actual malice." *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 48 (D.D.C. 2002); *Westmoreland v. CBS Inc.*, 596 F. Supp. 1170, 1174 (S.D.N.Y.1984) ("a determined effort to confirm a previously formed suspicion . . . does not establish malice").  In any event, comments from one potential guest rejecting the idea that the FBI infiltrated the Proud Boys gave no information about Plaintiff, who had been an Oath Keeper, especially when DHS *had* attempted to infiltrate the Oath Keepers, *see supra* pp. 4; Jan 6th Tr. Ex.E at 6–7 (Plaintiff was in the Oath Keepers).  Moreover, Fox hosts pursued investigative efforts (including seeking comment from officials and gaining exclusive access to congressional video of January 6, Ex.V at 11, 15**)** to get at the facts, which belies any claim of actual malice. *McFarlane v. Sheridan Sq. Press, Inc.*, 91 F.3d 1501, 1509 (D.C. Cir. 1996) (investigating allegations "is evidence that the publisher neither believed the allegations to be false nor willfully blinded himself to the truth").

Third, Plaintiff claims that Fox "purposeful[ly] avoid[ed]" the truth, Compl. ¶ 99, apparently based on Plaintiff's denials. *Id.* ¶¶ 66–67.  But self-serving denials are "so commonplace" that "the press need not accept" them; they "hardly alert the conscientious reporter to the likelihood of error." *Harte-Hanks*, 491 U.S. at 691 n.37 (quotation omitted); *see also Biro v. Conde Nast*, 963 F. Supp. 2d 255, 281–82 (S.D.N.Y. 2013).  Nor was Fox required to accept the

---

motivations behind defendants' communications . . . do not impact whether defendants acted with actual malice as a matter of law.").

January 6th Committee's view, which just repeated Plaintiff's own denial. *See Lohrenz*, 223 F. Supp. 2d at 56. Plaintiff wholly fails to point to any "evidence that could be readily verified" as would be required to give Fox hosts reasons to doubt their commentary. *Tah*, 991 F.3d at 242.

Fourth, Plaintiff fares no better asserting that Fox used "unreliable sources"—like Darren Beattie. Compl. ¶ 99. "Courts have consistently held that reliance on tainted or troubled sources does not alone establish actual malice." *Talley v. Time, Inc.*, 923 F.3d 878, 903 (10th Cir. 2019); *see also* 1 Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems* § 5:5.2(C) at 5-121–5-122 (5th ed. 2017). Also, the Complaint does not even allege facts showing Beattie was a source. *See* Compl. ¶ 50. Rather, he provided commentary on known facts about Plaintiff.

Fifth, Plaintiff also cannot allege actual malice by asserting that the idea of federal informants pushing the crowd towards violence is "inherently improbable." Compl. ¶ 99. Just last year, the prosecution for a conspiracy to kidnap the governor of Michigan fell apart because two alleged conspirators were FBI sources who were pushing the plan. Ex.W. The First Amendment protects commentators speculating—on disclosed facts—about similar conduct here, *see supra* pp. 9–12. If one could plead actual malice simply by labeling a theory about government misconduct "improbable," the actual malice standard would not provide much protection for those critiquing government actors. That is why "there is no 'inherent improbability' exception that replaces the requirement that Plaintiff plead facts showing actual malice." *McCullough v. Gannett, Co.*, No. 1:22-cv-1099, 2023 WL 3075940, at *13 (E.D. Va. Apr. 25, 2023).

Sixth, the absence of any retraction, *see* Compl. ¶ 99, is not evidence of intent at the time of publication and "is not in itself enough to nudge an allegation of actual malice from conceivable to plausible." *Biro*, 963 F. Supp. 2d at 281–82 ; *see also, e.g.*, *Boone v. Newsweek LLC*, No. CV 22-1601, 2023 WL 2245104, at *6 (E.D. Pa. Feb. 27, 2023).

### C.     Plaintiff Fails To Plead Malice Adequately Under State Law.

The Complaint also fails requirements to allege malice under New York and Utah law.

Under New York law, because this case involves exercise of "the right of free speech in connection with an issue of public interest," the First Amendment actual malice standard applies, NY Civ. Rts. Law § 76-a, and the Complaint fails for the reasons above.  *Supra* Part I.B.

Under Utah law, the challenged statements are privileged: (i) under UT Code § 45-2-5 as television broadcasts of "a program for discussion of controversial or any other subjects"; (ii) under UT Code § 45-2-3(5) as publications made "for the public benefit"; and (iii) under the common law public interest privilege.  *See Ogden Bus Lines v. KSL Inc.*, 551 P.2d 222, 225–26 (Utah 1976); *Lawrence v. Moss*, 639 F.2d 634, 638 (10th Cir. 1981) (under the public interest privilege, "in the area of defamation, [Utah] has chosen to protect speech related to matters of general public concern").  To overcome these privileges, Plaintiff must allege common law malice, which requires showing ill will or that "defendant did not honestly believe his statements to be true." *Russell v. Thomson Newspapers, Inc.*, 842 P.2d 896, 904 (Utah 1992).  The Complaint fails to allege any facts showing ill will, and the honest belief standard is equivalent to actual malice, which the Complaint fails to satisfy for the reasons explained above.  *Supra* Part I.B.

### D.     Claims Based on Statements Made Before July 10, 2022 Are Time Barred.

Any claim based on statements before July 10, 2022 is time-barred.  Under Del. Code tit. 10, § 8121, the court "must apply the shorter of the Delaware statute of limitations or the statute of limitations of the state where the cause of action arose." *Triestman v. Slate Grp., LLC*, No. 19-890 (MN), 2020 WL 1450562, at *2 (D. Del. Mar. 25, 2020) (quotation omitted).  New York (Fox's headquarters and where the statements were made) and Utah (Plaintiff's domicile), both have a one-year limitations period.  *See* N.Y. C.P.L.R. § 215(3); UT Code § 78B-2-302(4); *Jensen v. Sawyers*, 130 P.3d 325, 333 (Utah 2005).  That is shorter than Delaware's two-year period, Del.

Code tit. 10, § 8119.  Thus, a one-year statute of limitations applies.[8]  Because a defamation claim accrues when the statement is broadcast, *see, e.g., Pliuskaitis v. USA Swimming, Inc.*, 243 F. Supp. 3d 1217, 1229 (D. Utah 2017), and Plaintiff filed his complaint on July 10, 2023, all claims based on statements made before July 10, 2022 are barred.[9]  *See* Ex.X (listing statements).

### E.    The Complaint Fails To Allege Facts Under which Fox Could Be Liable for Statements Made on the Third-Party "*Redacted*" Podcast.

Statements Mr. Carlson made on the podcast *Redacted*, which is not a Fox product, cannot support a claim.  *See* Compl. ¶ 55.  Fox cannot be liable for those statements unless Mr. Carlson was acting within the scope of his employment.  *See Drew v. Pac. Life Ins. Co.*, 496 P.3d 201, 214 (Utah 2021); *Seymour v. New York State Elec. & Gas Corp.*, 215 A.D.2d 971, 973 (N.Y. 1995).  But the Complaint does not allege any facts suggesting that appearance was "i] of the general kind [Mr. Carlson] is employed to perform," [ii] that it occurred "within the hours of the [Mr. Carlson's] work and the ordinary spatial boundaries" of his employment and [iii] that it was "motivated, at least in part, by the purpose of serving the employer's interest."  *Birkner v. Salt Lake Cnty.*, 771 P.2d 1053, 1057 (Utah 1989); *Rivera v. State*, 142 N.E.3d 641, 645 (N.Y. 2019) (actions are in scope of employment if (i) "generally foreseeable and a natural incident of the employment" and (ii) "committed in furtherance of the employer's business").  The conclusory allegation that Mr. Carlson was "at all relevant times . . . an agent for Fox," Compl. ¶ 24, is insufficient.  *See Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 215 (S.D.N.Y. 2014).  And the mere fact that Mr. Carlson "spoke about the work" he did at Fox, Compl. ¶ 55, does not indicate

---

[8]  Even if Plaintiff's claim for statements made while he lived in Arizona (until May 2022) were deemed to arise in Arizona, the result would be the same.  *See* Ariz. Rev. Stat. § 12-541(1).

[9]  Under the single-publication rule, statements are made when broadcast and their continued presence on the Internet is not republication and does not restart the limitations period.  *See, e.g.*, *Diamond Ranch Academy, Inc. v. Filer,* 2016 WL 633351, at *10 (D. Utah Feb. 17, 2016); *Biro*, 963 F. Supp. 2d at 267.

that he was then acting within the scope of his employment.  *See, e.g.*, *Negussey v. Syracuse Univ.*, No. 95-CV-1827, 1997 WL 141679, at *14 (N.D.N.Y. Mar. 24, 1997).

## II.      THE FALSE LIGHT CLAIM FAILS FOR THE SAME REASONS.

Plaintiff's false light claim fails for similar reasons.[10]

*First,* the same First Amendment restrictions apply to false light.  The claim fails because the challenged statements are all protected opinions and Plaintiff failed to allege actual malice.[11]

*Second,* the claim is mostly time-barred.  Where, as here, false light is "tied to the same operative facts" as a defamation claim, the one-year limitations period applies to both.  *See Jensen*, 130 P.3d at 332–37; *Bates v. Utah Ass'n of Realtors*, 297 P.3d 49, 50 (Utah Ct. App. 2013).

*Third*, Plaintiff's false light claim fails because he has not pled special damages.  *See Jacob v. Bezzant*, 212 P.3d 535, 543 (Utah 2009) ("fail[ure] to adequately plead special damages" "would be enough, by itself, to affirm" dismissal of false light claim); *see also* Restatement (Second) of Torts § 652E cmt. e.  The only special damages in the Complaint are Plaintiff's loss of his home and business in Arizona.  But Plaintiff cannot rely on that, because those damages were complete in May 2022 when he left Arizona  Thus, Plaintiff has not pled special damages that can be connected to any claim within the limitations period and his false light claims fail.

## <u>CONCLUSION</u>

The Complaint should be dismissed for failure to state a claim.

_____

[10] New York does not recognize a tort of false light invasion of privacy, so the claim fails under New York law.  *See, e.g.*, *Costanza v. Seinfeld*,  181 Misc.2d 562, 564 (N.Y. Sup. Ct. 1999).

[11] *See Time, Inc. v. Hill*, 385 U.S. 374, 390–91 (1967) (actual malice standard applies to false light); *McCafferty*, 955 F.3d at 360 ("failure to plead actual malice dooms" false light claim); *Nunes v. Rushton*, 299 F. Supp. 3d 1216, 1235 (D. Utah 2018) (false light, like defamation, fails because the "comments were all protected opinion"); *accord SIRQ, Inc. v. The Layton Companies, Inc.*, 379 P.3d 1237, 1246 (Utah 2016) *Howard v. Antilla*, 294 F.3d 244, 248–49 (1st Cir. 2002).

DATED: August 23, 2023

**DLA PIPER LLP (US)**

**OF COUNSEL:**

Patrick F. Philbin
Katherine A. Petti
**ELLIS GEORGE CIPOLLONE
O'BRIEN LLP**

1155 F Street, NW, Suite 750
Washington, DC 20004
(202) 249-6900
(202) 249-6899 (Fax)

2121 Avenue of the Stars, Suite 3000
Los Angeles, California 90067
(310) 274-7100
(310) 275-5697 (Fax)

pphilbin@egcfirm.com
kpetti@egcfirm.com

Paul D. Clement
Erin E. Murphy
**CLEMENT & MURPHY PLLC**
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
(703) 997-6207 (Fax)
paul.clement@clementmurphy.com
erin.murphy@clementmurphy.com

_/s/ John L. Reed_
John L. Reed (I.D. No. 3023)
Peter H. Kyle (I.D. No. 5918)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
(302) 468-5700
(302) 394-2341 (Fax)
john.reed@us.dlapiper.com
peter.kyle@us.dlapiper.com

_Attorneys for Defendant
Fox News Network, LLC_