IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAMES RAY EPPS, SR.,

     Plaintiff,

v.

FOX NEWS NETWORK, LLC,

     Defendant.

C.A. No. 23-cv-761-MN

**ANSWERING BRIEF OF PLAINTIFF JAMES RAY EPPS, SR. TO
DEFENDANT FOX NEWS NETWORK, LLC'S MOTION TO DISMISS**

Dated: September 5, 2023

Michael J. Teter (admitted *pro hac vice*)
TETER LEGAL
4055 S. 700 East, Suite 205
Salt Lake City, UT 84107
(202) 796-6619
michael@teterlegal.com

Dick J. Baldwin (admitted *pro hac vice*)
ZIMMERMAN BOOHER
341 South Main Street, Fourth Floor
Salt Lake City, UT 84111
(801) 924-0200
dbaldwin@zbappeals.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Rodney Alan Smolla (Bar No. 6327)
164 Chelsea Street
South Royalton, VT 05068
(864) 373-3882
rodsmolla@gmail.com

*Attorneys for Plaintiff James Ray Epps, Sr.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS .................................................... 1

SUMMARY OF THE ARGUMENT ............................................................................. 1

STATEMENT OF FACTS ............................................................................................. 2

CHOICE OF LAW ......................................................................................................... 2

ARGUMENT ................................................................................................................... 3

    1.     RAY STATED A CLAIM FOR DEFAMATION ................................................. 3

        1.1   The Statements Were Provably False Statements of Fact ........................ 3

             1.1.1   The Statements' Common Meaning Conveyed Objectively
                   Verifiable Facts ................................................................................. 5

             1.1.2   Context Shows the Statements Were Intended to Convey
                   Facts Not Opinions ........................................................................ 6

             1.1.3   The Statements' Broader Setting Shows They Were Factual
                   Assertions ....................................................................................... 12

        1.2   Ray Alleged Facts Plausibly Showing Actual Malice ........................... 13

    2.     RAY STATED A CLAIM FOR FALSE LIGHT ................................................. 18

    3.     NONE OF THE CLAIMS ARE TIME-BARRED ............................................. 19

CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

*Abbas v. Foreign Policy Grp., LLC*,
    783 F.3d 1328 (D.C. Cir. 2015) ...................................................................................... 7

*Aoki v. Benihana Inc.*,
    839 F. Supp. 2d 759 (D. Del. 2012) ............................................................................... 2

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................................... 2

*Benak ex rel. All. Premier Growth Fund v. All. Capital Mgmt., L.P.*,
    435 F.3d 396 (3d Cir. 2006) ........................................................................................... 2

*Biro v. Conde Nast*,
    807 F.3d 541 (2d Cir. 2015) ......................................................................................... 15

*Biro v. Conde Nast*,
    963 F. Supp. 2d 255 (S.D.N.Y. 2013) .................................................................... 17, 18

*Boulger v. Woods*,
    917 F.3d 471 (6th Cir. 2019) ...................................................................................... 6-7

*Buck v. Hampton Tp. Sch. Dist.*,
    452 F.3d 256 (3d Cir. 2006) ......................................................................................... 10

*Celle v. Filipino Reporter Enters. Inc.*,
    209 F.3d 163 (2d Cir. 2000) ......................................................................................... 14

*Condit v. Dunne*,
    317 F. Supp. 2d 344 (S.D.N.Y. 2004) ..................................................................... 8, 13

*Coughlin v. Westinghouse Broad. & Cable, Inc.*,
    603 F. Supp. 377 (E.D. Pa. 1985) ............................................................................... 16

*Curtis Publ'g Co. v. Butts*,
    388 U.S. 130 (1967) ..................................................................................................... 15

*Dunn v. Gannett*,
    833 F.2d 446 (3d Cir. 1987) ......................................................................................... 12

*Eastwood v. Nat'l Enquirer, Inc.*,
    123 F.3d 1249 (9th Cir. 1997) ................................................................................. 13-14

*Gertz v. Robert Welch, Inc.*,
    680 F.2d 527 (7th Cir. 1982) ....................................................................................... 16

*Goldwater v. Ginzburg*,
   414 F.2d 324 (2d Cir. 1969) .......................................................................... 15, 16

*Harris v. City of Seattle*,
   152 F. App'x 565 (9th Cir. 2005) ........................................................................ 16

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1989) ............................................................................... 16, 17, 18

*Herbert v. Lando*,
   441 U.S. 153 (1979) .............................................................................................. 15

*In re Phila. Newspapers, LLC*,
   690 F.3d 161 (3d Cir. 2012) .................................................................................. 19

*Johnson v. Warner Bros. Ent., Inc.*,
   C.A. No. 16-185-LPS, 2017 WL 588714 (D. Del. 2017) ....................................... 3

*McCafferty v. Newsweek*,
   955 F.3d 352 (3d Cir. 2020) ............................................................................. 8, 17

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990) ........................................................................................... 7, 8, 9

*Nunes v. Lizza*,
   12 F.4th 890 (8th Cir. 2021) ................................................................................. 17

*Parsi v. Daioleslam*,
   890 F. Supp. 2d 77 (D.D.C. 2012) ........................................................................ 17

*Piccione v. Bartels*,
   785 F.3d 766 (1st Cir. 2015) ................................................................................... 9

*Schiavone Constr. Co. v. Time, Inc.*,
   847 F.2d 1069 (3d Cir. 1988) ................................................................................ 16

*St. Amant v. Thompson*,
   390 U.S. 727 (1968) .............................................................................................. 15

*Talley v. Time, Inc.*,
   923 F.3d 878 (10th Cir. 2019) .............................................................................. 14

*Triestman v. Slate Grp., LLC*,
   C.A. No. 19-890 (MN), 2020 WL 1450562 (D. Del. 2020) ............................ 3, 20

State Cases

*Bertrand v. Mullin*,
   846 N.W.2d 884 (Iowa 2014) .......................................................................... 17

*Birkner v. Salt Lake County*,
   771 P.2d 1053 (Utah 1989) .............................................................................. 6

*Immuno AG. v. Moor-Jankowski*,
   77 N.Y.2d 235 (1991) ...................................................................................... 3

*Jensen v. Sawyers*,
   130 P.3d 325 (Utah 2005) ......................................................................... 18, 20

*RainFocus Inc. v. Cvent Inc.*,
   528 P.3d 1221 (Utah Ct. App. 2023) .............................................................. 3, 4

*Russell v. Thomson Newspapers*,
   842 P.2d 896 (Utah 1992) .............................................................................. 18

*SIRQ, Inc. v. Layton Cos., Inc.*,
   379 P.3d 1237 (Utah 2016) ............................................................................ 18

*Spencer v. Glover*,
   397 P.3d 780 (Utah Ct. App. 2017) .................................................................. 5

*US Dominion, Inc. v. Fox News Network, LLC*,
   293 A.3d 1002 (Del. Super. Ct. 2023) ........................................................ 4, 13

*West v. Thomson Newspapers*,
   872 P.2d 999 (Utah 1994) ........................................................................ 3, 4, 5

*Zuckerbrot v. Lande*,
   167 N.Y.S.3d 313 (N.Y. Sup. Ct. 2022) ......................................................... 17

Statutes

10 Del. C. § 8119 ......................................................................................... 20

Utah Code § 78-12-29 ................................................................................... 20

Rules

Fed. R. Civ. P. 12 .......................................................................................... 2

Fed. R. Civ. P. 56 .......................................................................................... 2

Other

Black's Law Dictionary (9th ed. 2009)................................................................. 6

Bryan A. Garner, The Chicago Guide to Grammar, Usage, and
    Punctuation (2016)....................................................................................... 7

W. Keeton et al., Prosser & Keeton on the Law of Torts (5th ed. 1984)................. 6, 8

Restatement (Second) of Torts § 566..................................................................... 12

Restatement (Second) of Torts § 614....................................................................... 5

Restatement (Second) of Torts § 652E................................................................... 18

1 Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems*
    § 5:5.2(C) (5th ed. 2017)............................................................................ 15

## NATURE AND STAGE OF THE PROCEEDINGS

Fox removed this action from Delaware state court on July 12, 2023. (D.I. at 1.) Fox now seeks dismissal under Federal Rule of Civil Procedure 12(b)(6). (D.I. at 12.)

## SUMMARY OF THE ARGUMENT

Fox News Network used the highest-rated primetime cable news program to create and spread falsehoods about Ray Epps. Each defamatory statement published by Fox creates its own cognizable cause of action. Nevertheless, Fox has chosen to present its motion to dismiss on a categorical basis, without analyzing the individualized statements that Ray alleged are defamatory. That approach allows Fox to offer generic defenses without grappling with the *actual* words its on-air personalities uttered about Ray. Further, the sweeping nature of Fox's arguments suggest that the claims rise or fall together. That—like Fox's assertions about Ray—is false.

The thrust of Fox's argument is twofold: the statements were pure opinion and Ray inadequately pleaded actual malice. Fox misreads and misapplies the law regarding statements couched as opinion, which, if to be protected, must be presented with fully disclosed and truthful facts. Fox's statements fail that basic test, as its hosts did not disclose facts, instead implying that its opinions were formed, at least in part, on undisclosed facts (like 40,000 hours of video Speaker McCarthy provided exclusively to Fox). But more directly, Fox's blanket defenses and assertions fail to address the many statements that were presented as fact but are false.

The Complaint details the defamatory statements Fox published. It explains how Fox's factual assertions about Ray are false and their gist and sting was defamatory. It discusses how Fox misled viewers by failing to disclose facts and presenting purposefully distorted videos from January 6. And it not only alleges actual malice, but specifies the many ways in which such

1

malice can be shown—including through a Fox producer's admission that Fox pursued the falsehoods against Ray, knowing they were untrue, to deflect its own blame for January 6.

In short, Ray has sufficiently alleged every element of his defamation and false light claims. Fox seeks dismissal of Ray's entire Complaint and thus bears a heavy burden of demonstrating that *none* of the statements Fox published about Ray are even *capable* of sustaining a defamatory meaning or placing Ray in a false light. Fox comes nowhere close to meeting its burden, both because it fails to address each of the statements giving rise to the Complaint and because its blanket arguments are unsupported by the facts or the law.

## STATEMENT OF FACTS

When evaluating Fox's motion to dismiss, all of Ray's factual allegations are accepted as true, and all reasonable inferences are drawn in his favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather than restate each of those allegations here, Ray will reference them (with citations to his Complaint) as needed when responding to Fox's arguments.[1]

## CHOICE OF LAW

Utah law governs this dispute. Delaware applies the most-significant-relationship test to determine choice of law issues in multi-state tort actions, such as defamation and false light. *See Aoki v. Benihana Inc.*, 839 F. Supp. 2d 759, 764-65 (D. Del. 2012). In that analysis, Fox must

---

[1] Fox's motion recounts various media reports and a court filing, not solely for the fact of their publication but instead to assert the truthfulness of their contents. None of those factual assertions or documents (i.e., Fox's exhibits C, G, K, L, W, and the media interview transcript filed in another court) are properly considered under rule 12(b)(6) and should be disregarded. *Benak ex rel. All. Premier Growth Fund v. All. Capital Mgmt., L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006). Were the Court to entertain converting this motion to one for summary judgment, Ray respectfully requests an opportunity to "present all material that is pertinent" to a summary judgment motion but improper under rule 12(b)(6) and to submit declarations addressing discovery needed before summary judgment can be decided. Fed. R. Civ. P. 12(d), 56(d).

overcome the presumption that the law of Ray's domicile applies. *Johnson v. Warner Bros. Ent., Inc.*, C.A. No. 16-185-LPS, 2017 WL 588714, at *3 (D. Del. 2017). It has not.[2]

But Fox has not sought a choice of law determination and instead argues under both New York and Utah law. The Court must therefore determine whether Fox has demonstrated that Ray's claims fail under both Utah and New York law. Importantly, the causes of action for defamation and false light are not the same in those jurisdictions.

## ARGUMENT

### 1. RAY STATED A CLAIM FOR DEFAMATION

#### 1.1 The Statements Were Provably False Statements of Fact

The distinction between fact and opinion has both state-law and federal First Amendment law aspects. New York has interpreted the New York Constitution as providing protection higher than the First Amendment minima. *See Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235 (1991).

Utah law, however, is less stringent. *See West v. Thomson Newspapers*, 872 P.2d 999, 1015 (Utah 1994). To be sure, Utah recognizes that full disclosure of *truthful* underlying facts may insulate a publisher from liability. *RainFocus Inc. v. Cvent Inc.*, 528 P.3d 1221, 1231 (Utah Ct. App. 2023). But speakers are not immunized simply by sprinkling in some factual content in the midst of "opinions" that imply defamatory facts that may be objectively proven or disproven. *West*, 872 P.2d at 1015. That is because those seeking to defame by implication almost always include some factual content to give the defamatory sting greater verisimilitude. *Id.* The principal

---

[2] Fox suggests that New York law applies, asserting without any support that the statements were made at its New York headquarters. (D.I. 12 at 6.) But media reports suggest that Tucker Carlson and Laura Ingraham typically record their programs in Maine, Florida, or Washington, D.C. Even if the Court assumes the statements were made in New York, that is insufficient to rebut the presumption in favor of Ray's domicile. *Triestman v. Slate Grp., LLC*, C.A. No. 19-890 (MN), 2020 WL 1450562, at *2-3 (D. Del. 2020).

touchstone is always objective verifiability. Thus, while Utah's Constitution protects expressions of opinion, a speaker "abuse[s] this protection . . . when the opinion states or implies facts that are false and defamatory." *Id.* Indeed, the Utah Court of Appeals recently rejected an opinion defense, finding that "the factors of common meaning and objective verifiability lean toward fact." *RainFocus*, 528 P.3d at 1221.

And quite recently, the Delaware Superior Court, applying New York law, rejected Fox's attempt to rely on a similar opinion defense. *US Dominion, Inc. v. Fox News Network, LLC*, 293 A.3d 1002, 1061 (Del. Super. Ct. 2023). It correctly ruled, "An 'opinion' is actionable if a 'reasonable listener' would find the speaker conveyed facts about the plaintiff." *Id.* "[T]he key inquiry is whether the challenged expression, however labeled by defendant, would reasonably appear to state or imply assertions of objective fact." *Id.* (citation omitted). The "literal words of challenged statements do not entitle a media defendant to 'opinion' immunity or a libel plaintiff to go forward with its action." *Id.* (citation omitted). What matters is what, viewed realistically, was actually communicated. "In determining whether speech is actionable, courts must additionally consider the impression created by the words used as well as the general tenor of the expression, from the point of view of the reasonable person." *Id.* (citation omitted). Viewers would have understood the broadcasts as communicating *as a fact* that Epps was a federal agent provocateur. Under either Utah or New York law, the statements are actionable.

The Court must also respect the substantive Utah standard, which aligns with the national consensus, that if in doubt, the Court must not dismiss. Fox is entitled to dismissal only if its interpretation of the statements as non-defamatory is the *only* permissible interpretation, as a matter of law. If the statements are "capable of sustaining [a defamatory] meaning as a matter of

law, the trier of fact must then determine whether the statement was in fact so understood by its audience." *West*, 872 P.2d at 1008 (citing Restatement (Second) of Torts § 614).

### 1.1.1    The Statements' Common Meaning Conveyed Objectively Verifiable Facts

Utah courts "employ the 'common usage or meaning of the words' to determine 'whether the statement is capable of being objectively verified as true or false.'" *Spencer v. Glover*, 397 P.3d 780, 784-85 (Utah Ct. App. 2017) (quoting *West*, 872 P.2d at 1018). Fox broadly argues that the statements were not assertions of verifiable fact because they were all either questions or subjective opinions that the facts about Ray are strange. (D.I. 12 at 7.) That is incorrect. Fox directly told its viewers that Ray was a federal agent as part of its larger message that the January 6 attack was a false flag operation by the FBI. (D.I. 1-1, ¶¶ 44-48, 50, 52.)  It repeated and reinforced that message using rhetorical questions, onscreen graphics, distorted and selectively edited videos, and incomplete descriptions of the facts. (D.I. 1-1, ¶¶ 20, 46, 48, 50-54, 60.)

For example, after the January 6th Committee (the "Committee") refuted the conspiracy theory about Ray, Tucker Carlson told his viewers that the Committee was "lying about Ray Epps. There's no question about that." (D.I. 1-1, ¶¶ 46, 52; D.I. 13-10 at 6.) By asserting that the Committee lied, Carlson necessarily asserted *as a fact* that Ray was involved with the FBI or law enforcement. Carlson also prominently displayed an image of Ray with the phrase: "Fed Epps" beneath it. (D.I. 1-1, ¶ 20.) There were no question marks or caveats to this on-screen graphic. It was naturally understood by viewers as a statement of fact: Ray Epps is a fed.

Fox also chose to air Darren Beattie's assertion that Ray was "the smoking gun of the entire fed-surrection." (D.I. 1-1, ¶ 50.) He did not say that was his opinion, simply point out strange facts, or leave the viewers to decide for themselves. Instead, he used the metaphor of the

"smoking gun," which is unmistakable in common usage as an indication that there is conclusive evidence of a demonstrable fact. *E.g.*, *Smoking Gun*, Black's Law Dictionary (9th ed. 2009).

In addition to the foregoing, Carlson himself confirmed that his intent was to convey objectively verifiable facts, not mere opinions. On the *Redacted* podcast, Carlson said about his Fox show, "I did not want to suggest someone was a federal agent or informant unless I knew for a fact because you could really get someone in trouble." (D.I. 1-1, ¶ 57.) Carlson's comment evidences his intended meaning when he spoke about Ray during Fox's programming.[3]

### 1.1.2    Context Shows the Statements Were Intended to Convey Facts Not Opinions

The broader context shows that the challenged statements were not mere opinion. As demonstrated above, multiple statements were assertions of fact, on their face—e.g., that the Committee was lying about Ray, the Fed Epps graphic, and that Ray was the smoking gun of the fed-surrection. Those comments helped lay groundwork for other statements to be understood as assertions of fact even when phrased as questions. In light of the network's assertions of fact and the references to the conspiracy across multiple Fox programs, questions about Ray were not understood as a genuine search for answers. (D.I. 1-1, ¶ 56.) They were rhetorical questions used to repeat the false assertion that Ray was a federal agent provocateur. Statements phrased as questions do not give the media immunity to "use questions 'as tools to raise doubts about a person's activities or character while simultaneously avoid liability.'" *Boulger v. Woods*, 917

---

[3] Fox argues that Carlson's comments on the podcast cannot give rise to liability because Ray did not allege that the comments were motivated by the purpose of serving Fox's interests. (D.I. 12 at 19.) In support, Fox cites *Birkner v. Salt Lake County*, 771 P.2d 1053 (Utah 1989). But *Birkner* expressly notes that such an allegation is not required for intentional torts, including defamation. *Id.* at 1057 n.2 (citing W. Keeton et al., Prosser & Keeton on the Law of Torts § 70, at 503–07 (5th ed. 1984)). Ray also adequately pleaded that Carlson was acting as Fox's agent at all relevant times. (D.I. 1-1, ¶ 24.) Of course, Ray must prove this at trial—after discovery.

F.3d 471, 479-80 (6th Cir. 2019) (quoting *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1338 (D.C. Cir. 2015)); *see also* Bryan A. Garner, The Chicago Guide to Grammar, Usage, and Punctuation (2016) ("[A] rhetorical question is phrased in the interrogative structure but is meant as an emphatic or evocative statement."). Ray alleged that Fox's statements about him "were understood by people who saw, heard, and read them to be statements of fact about Epps." (D.I. 1-1, ¶ 100.) Specifically, "[t]he gist and sting of the statements made by Fox of and concerning Epps, considered individually and in their entirety, was that Epps was a federal agent planted to provoke the insurrection at the Capitol on January 6th." (D.I. 1-1, ¶ 100.)

As one example, Carlson said, "Ray Epps is still a free man. He's never been charged, much less imprisoned in solitary confinement like so many others. Why is that? Well, let's just stop lying. At this point, it's pretty obvious why that is. But, of course, they're still lying about it." (D.I. 1-1, ¶ 52.) That passage illustrates a key feature of the context in which Fox repeatedly made its defamatory statements: Carlson's use of rhetorical questions. When Carlson asked, "Why is that?," it was not a question for which he was seeking an answer. He was making a point. And indeed, in this instance, he made that abundantly clear by supplying the answer to his question when asserting that the Committee was "still lying" about Ray.

The Supreme Court has held that "expressions of 'opinion' may often imply an assertion of objective fact." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990). The statements Fox labels as opinions demonstrate the Court's point. For example, in one broadcast Carlson claimed that if the Committee wanted answers about the attack on the Capitol it should speak to Ray Epps and "various FBI informants." (D.I. 1-1, ¶ 48.) Of course, Ray had already appeared before the Committee and Carlson had already told his viewers that the Committee was lying about Ray. (D.I. 1-1, ¶¶ 46, 52.) By continuing to connect Ray to the FBI while claiming that Ray

could explain the attack, Carlson was necessarily reiterating his prior assertion that Ray was a federal agent provocateur.

Fox argues its broadcasts were replete with cautionary language, signaling that they were mere opinion. (D.I. 12 at 11.) But Fox has not addressed *each pleaded statement* and identified the language that renders each one a pure opinion. Even if it had, that type of signaling does not insulate a defendant who "appeared to vouch for the statements at [other] times during the [broadcast]." *Condit v. Dunne*, 317 F. Supp. 2d 344, 366 (S.D.N.Y. 2004). Further, "[s]tatements that constitute false assertions of fact are no less defamatory simply because they are preceded by qualifying expressions." *Id.*

Fox also argues variations on the theme that the statements were opinions based on disclosed facts. (D.I. 12 at 9-12.) The principle that opinions accompanied by fully disclosed facts are not actionable applies in contexts where explicit statements of fact are not themselves false. *Milkovich*, 497 U.S. at 13-14. However, Ray alleges that Fox made false, defamatory statements of fact, so that principle does not apply. And even characterizing some of Carlson's statements as opinion does not protect Fox from liability, as a matter of law. Fox relies on *McCafferty v. Newsweek*, where the Third Circuit distinguished between a generalized accusation of "racism" and factual allegations of racist misconduct, which could be actionable. 955 F.3d 352, 352 (3d Cir. 2020). Here, Fox accused Ray not of some amorphous ideological pejorative. Rather, Fox labeled him a federal agent provocateur. (D.I. 1-1, ¶ 50.) Whether he was or was not is a fact that may be proven true or false.

Even expressions of opinion are not insulated from liability when the speaker "did not entertain the opinion" or "a reasonable and fair-minded person could not have entertained the derogatory opinion." W. Keeton et al., Prosser & Keeton on the Law of Torts § 113. Ray alleged

that "Fox and Mr. Carlson knew the story they were pushing about Epps was a lie." (D.I. 1-1, ¶¶ 59, 63.) If Carlson or Fox did not subjectively believe what they presented to viewers, even if phrased as opinion, Fox has no legitimate claim to the opinion doctrine's protection.

Additionally, despite Fox's arguments, it did not fully disclose the facts relating to Ray, nor did it rely on *true* facts. *See Milkovich*, 497 U.S. at 13-14 (requiring protected statements to be based "upon true . . . facts"); *Piccione v. Bartels*, 785 F.3d 766, 771 (1st Cir. 2015) (conditioning immunity for statements on speaker "fully disclosing" facts). For example, Carlson repeatedly asserted that Ray was treated differently than others present that day because he was not immediately arrested and prosecuted. (D.I. 1-1, ¶¶ 50-51.) But Carlson never fully disclosed the facts that would bear on that decision, including Ray's efforts to de-escalate the crowd. (D.I. 1-1, ¶ 62.) And, importantly, as Carlson made sure his viewers knew, Fox had been the only news source granted access to the over 40,000 hours of January 6 videos gathered by Congress. (D.I. 1-1, ¶¶ 53, 55.) To Carlson's viewers, his statements about Ray would therefore seem to be based on undisclosed facts ascertained from those videos.

Further, Carlson showed an image of Ray speaking with Ryan Samsel and said that Ray had been captured on camera encouraging people to storm the Capitol at least three times. (D.I. 1-1, ¶ 52.) The obvious gist of Carlson's comment was that Ray encouraged Samsel to storm of the Capitol. In that same broadcast, Carlson discussed Ray's testimony before the Committee, but did not tell his viewers that Ray testified to telling Samsel, "[T]hat's not why we're here. You've got to be peaceful . . . . It's not what we're about." (J6 Committee Transcript at 51-52,

attached as Ex A.)[4] Carlson also failed to disclose Samsel's statement to the authorities, explaining that Ray had said, "Relax, the cops are doing their job." (D.I. 1-1, ¶¶ 33, 52.) Ray also alleged that Carlson aired "distorted and selectively edited videos." (D.I. 1-1, ¶ 60.) Fox's attempt to seek protection under the guise of presenting disclosed facts is unavailing.

Carlson also did not disclose that other evidence in his possession showed mitigating circumstances that made Ray different from protesters who were immediately arrested and prosecuted. After the crowd pushed through the barricades, Ray patrolled the line between the police and the protesters, working to prevent future incursions on the police line. (D.I. 1-1, ¶ 35.) Ray urged the crowd to be respectful of the police and helped keep protesters from getting too close to the police officers. (D.I. 1-1, ¶ 35.) Carlson had footage of those events but did not disclose it, even though his statements about Ray implied that there was no evidence of Ray engaging in that type of conduct. (D.I. 1-1, ¶¶ 35, 50-52, 63.)

Carlson further claimed the Committee coached Ray on how to answer questions about a text Ray sent to his nephew. Carlson read the following question asked by a Committee member:

> "I just want to understand a little more your use of the word orchestrated. It sounds to me like at this point when you sent this text you had turned away in part because of seeing some things that you didn't agree with. Is that right? Like when you sent this you were already on your way from the Capitol because of concerns of people taking it in a different direction?"

(D.I. 1-1, ¶ 52.) After reading that excerpt, Carlson laughed and said, "Is that the most leading question ever asked in the history of a congressional hearing? Probably. And the whole interview goes on like this." (D.I. 1-1, ¶ 52.) The implication was that, based on that one example, the

---

[4] The Court can consider the full transcript of Ray's testimony before the Committee because his complaint incorporates it by reference. (D.I. 1-1, ¶ 66.) *Buck v. Hampton Tp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Committee continually provided Ray with answers he had not already provided. What Carlson did not fully disclose, however, is that Ray *had* provided that answer earlier in the hearing, so the question was a recapitulation of Ray's own testimony, not a coached answer. (Ex. A at 59, 61.)

Fox argues Ray does not assert that facts in the challenged statements are false. (D.I. 12 at 10.) But as discussed above, Ray's allegations plausibly show that Fox made false factual assertions. Again, Carlson told viewers that the Committee was lying about Ray, which was necessarily a false assertion that Ray was a federal agent; labeled him Fed Epps; and broadcast a guest's comment that Ray was the smoking gun of the fed-surrection. (D.I. 1-1, ¶¶ 50, 52.)

Fox argues that even if their hosts implied a factual conclusion about Ray, he did not allege that any of Fox's statements implied that it was based on undisclosed facts. (D.I. 12 at 10.) Again, that is wrong. To illustrate, on one occasion, Carlson said,

> We do know that two years after January 6th, long after an awful lot of other people have gone to jail for walking around the Capitol building, Ray Epps is still a free man. He's never been charged, much less imprisoned in solitary confinement like so many others. Why is that? Well, let's just stop lying. At this point, it's pretty obvious why that is. But, of course, they're still lying about it.

(D.I. 1-1, ¶ 52.) Carlson's statement implied that it was based on an undisclosed, derogatory, and false fact—that Ray had also entered and walked around the Capitol building—which justified Carlson's assertion that Ray should have gone to jail like the others who undertook such action. And again, Ray specifically alleged that Carlson "deceptively presented cherry-picked" and "distorted and selectively edited videos." (D.I. 1-1, ¶¶ 53, 60.)

On another occasion, Carlson stated that officials have admitted under oath that "there was some number of undercover federal agents in the crowd at the Capitol." (D.I. 1-1, ¶ 53.) After his guest agreed and referenced Ray, Carlson implied there were more damning facts: "It's very clear from the footage that our producers bravely slogged through for three weeks and God bless them for doing it, that's exactly right. That federal agents encouraged the violence that

11

day." (D.I. 1-1, ¶ 53.) He again connected that assertion to Ray, saying "We are just a TV show and we can't show people without proof who they really were." (D.I. 1-1, ¶ 53.) Although Carlson implied the existence of facts showing that Ray encouraged violence, he provided none.

Indeed, Fox tacitly concedes that each broadcast did not fully disclose the facts upon which the statements were made when arguing that it was not required to disclose them in every segment. (D.I. 12 at 10 n.4.) The one case Fox cites in support does not stand for that wide-ranging proposition. In *Dunn v. Gannett*, the court relied on the Restatement to explain that a statement is capable of being a "pure opinion" even if the speaker does not disclose all of the underlying facts only when "*both* parties to the communication know the facts or assume their existence." 833 F.2d 446, 453 (3d Cir. 1987) (citing Restatement (Second) of Torts § 566 cmt. b) (emphasis added). Nothing in *Dunn* suggests that a media network whose viewership fluctuates daily and between programs—not to mention across the various platforms on which the statements are published—can satisfy that requirement as to their viewers.

Finally, even assuming that Fox's statements merely implied a false factual conclusion about Ray, which Fox argues was based on fully disclosed facts, that defense is not amenable to resolution on a motion to dismiss. Ray adequately alleged the failure to fully disclose the facts supporting Fox's statements. Thus, the sufficiency of Fox's disclosure is a factual question that cannot be resolved at this stage.

### 1.1.3   The Statements' Broader Setting Shows They Were Factual Assertions

Fox argues that the broader setting demonstrates its statements were all opinion because they appeared on commentary talk shows. (D.I. 12 at 12.) Of course, the network broadcasts under the name Fox News, suggesting the network broadcasts news, not solely opinion. Even so, Fox does not explain how direct assertions of fact are insulated simply because they appear in a

commentary talk show. Instead, Fox cites cases acknowledging that statements in editorial pages and blogs are commonly understood as opinions. (D.I. 12 at 12.) That may be true, but Fox News is not a blog or an editorial page and not all statements are immunized simply because they occur in that type of setting. *Condit*, 317 F. Supp. 2d at 363 (regarding *The Laura Ingraham Show*). Indeed, Fox's recent litigation against Dominion Voting demonstrates that statements on commentary talk shows—including those at issue in this litigation—are not categorically protected as mere opinion. *US Dominion, Inc.*, 293 A.3d 1002.

Ray's allegations also plausibly show that Fox hoped to manufacture a scapegoat for January 6. (D.I. 1-1, ¶¶ 64-65.) A former Fox producer has admitted that Fox "was very set on finding an FBI person who was implanted in the crowd and spinning this conspiracy that they were ultimately the ones responsible for the Capitol attack, not Fox News." (D.I. 1-1, ¶ 65.)

### 1.2     Ray Alleged Facts Plausibly Showing Actual Malice[5]

Fox chose to sweepingly address all of the complained-of defamatory statements, without individual identification or analysis. But in tackling Ray's allegations of actual malice, Fox urges the Court view them separately, as if each, standing alone, must be sufficient to prove Fox's actual malice. That approach conflicts with caselaw and how parties prove malice. Many courts have recognized that defamation plaintiffs will essentially *never* have direct evidence of actual malice. "As we have yet to see a defendant who admits to entertaining serious subjective doubt about the authenticity of an article it published, we must be guided by circumstantial evidence. By examining the editors' actions, we try to understand their motives." *Eastwood v. Nat'l*

---

[5] Fox argues that Ray is a limited purpose public figure and his Complaint fails to allege facts plausibly showing actual malice. (D.I. 12 at 12-18.) The Court should reserve that question for another day because even accepting Fox's contention, Ray has alleged facts plausibly showing actual malice.

*Enquirer, Inc.*, 123 F.3d 1249, 1253 (9th Cir. 1997). Such circumstantial evidence includes "the defendant's own actions or statements, the dubious nature of his sources, [and] the inherent improbability of the story [among] other circumstantial evidence.'" *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 183 (2d Cir. 2000) (cleaned up).

In addition to alleging that Fox "knew the story they were pushing was a lie" (D.I. 1-1, ¶ 59), Ray also pleaded several specific allegations of circumstantial evidence that, under the totality of circumstances, plausibly allege Fox acted with actual malice or reckless disregard for the truth. (D.I. 1-1, ¶¶ 26, 37, 46, 50, 52, 59-68, 99.)

First, Ray alleged that "Fox knowingly and intentionally relied on unreliable sources, including among others, Darren Beattie, known by Fox to be a discredited conspiracy theorist." (D.I. 1-1, ¶ 99.) Fox takes issue with this allegation, arguing that Ray did not allege that Beattie was a source. (D.I. 12 at 17.) But Carlson's on-air introduction of Beattie contradicts that position. (D.I. 1-1, ¶ 50.) Carlson suggested that his own stories about Ray had been informed by Beattie's publications when he credited Beattie with "publishing the first stories about Ray" and thanked Beattie for "pulling this thread relentlessly." (D.I. 1-1, ¶ 50.)

Fox argues that relying on tainted or troubled sources, *without more*, is not enough to show actual malice. (D.I. 12 at 17.) Of course, Ray is not relying on that allegation alone. But more fundamentally, Fox's legal authority is inapposite. The case it cites, *Talley v. Time, Inc.*, 923 F.3d 878 (10th Cir. 2019), does not stand for the proposition Fox asserts—that actual malice cannot be shown through reliance on known conspiracy theorists or other unreliable sources. Instead, *Talley* holds that actual malice is not proven by showing reliance on "tainted or troubled" sources, such as those who have used drugs or been convicted of crimes. *Id.* at 903. Ray does not allege Beattie is unreliable on the grounds that he is "not a paragon of virtue."

1 Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems* § 5:5.2(C) at 5-109 (5th ed. 2017). Instead, Beattie is unreliable because he is a known conspiracy theorist whose reporting is not believable, and "recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968); *accord Herbert v. Lando*, 441 U.S. 153, 156-57 (1979); *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 158-59 (1967); *Biro v. Conde Nast*, 807 F.3d 541, 545-46 (2d Cir. 2015).

Second, Ray alleged that the statements described an "inherently improbable story" that only a reckless broadcaster would air. (D.I. 1-1, ¶ 99.) The Supreme Court has recognized that evidence of actual malice can include whether the published information was "internally consistent and would have seemed reasonable" to someone familiar with the statement's subject matter. *Curtis Publ'g*, 388 U.S. at 158-59. And reporting an "inherently improbable" story can be evidence that it was published with actual malice. *Goldwater v. Ginzburg*, 414 F.2d 324, 337 (2d Cir. 1969). Ray alleged that Fox advanced an inherently improbable story that "FBI agents or other federal law enforcement authorities working under the administration of Donald Trump would employ Epps as a provocateur to advance a federal government agenda to engage in an insurrection and commit violence at the Capitol." (D.I. 1-1, ¶ 99.) Indeed, the FBI is charged with preventing domestic terrorism, not committing it. And one can add to that improbability the idea that after enlisting a 60-year-old wedding venue owner to incite an insurrection, the FBI then placed him on its own website seeking to learn his identity. (D.I. 1-1, ¶¶ 26, 37.)

Third, Fox "engaged in a pre-conceived story line" by "direct[ing] its employees to find guests who would spew similar lies about Epps and when prospective guests indicated that such a narrative was false, Fox instead sought out others who would offer a factual assessment in line

with Fox's preferred message." (D.I. 1-1, ¶ 99.) "[E]vidence that a defendant conceived a story line in advance of an investigation and then consciously set out to make the evidence conform to the preconceived story is evidence of actual malice, and may often prove to be quite powerful evidence." *Harris v. City of Seattle*, 152 F. App'x 565, 568 (9th Cir. 2005). "Where the defendant finds internal inconsistencies or apparently reliable information that contradicts its libelous assertions, but nevertheless publishes those statements anyway, the *New York Times* actual malice test can be met." *Schiavone Constr. Co. v. Time, Inc.*, 847 F.2d 1069, 1090 (3d Cir. 1988); *accord Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 539 (7th Cir. 1982) (decision on remand from the Supreme Court, finding actual malice in editor's preconceived story line); *Goldwater*, 414 F.2d at 337, 339. Fox employed Abby Grossberg as a producer for Carlson during times relevant to this suit and Grossberg has confirmed Fox's determination to avoid blame for its role in the attack by purposefully creating a false story about Ray and the FBI being responsible. (D.I. 1-1, ¶¶ 64-65.) Further, Ray's allegations include Grossberg's statements about Fox directing her to find guests who "will say" what Carlson wanted and to not book guests who would contest his falsehoods. (D.I. 1-1, ¶ 65.)[6]

Fourth, Carlson not only disregarded the findings of the Committee, which publicly refuted the claim that Ray was a federal agent provocateur, he directly asserted that the Committee was lying about Ray. (D.I. 1-1, ¶ 46, 52.) Such "purposeful avoidance of the truth" supports finding actual malice. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692

---

[6] Fox argues, "[E]vidence that an investigation was 'designed to confirm a hostile premise rather than to find the truth' does not establish malice." (D.I. 12 at 16 (quoting *Coughlin v. Westinghouse Broad. & Cable, Inc.*, 603 F. Supp. 377, 386 (E.D. Pa. 1985)). But Fox omits the opening clause of that sentence, which explains that the principle only applies "[a]bsent a showing of reckless indifference to the truth." *Coughlin*, 603 F. Supp. at 386.

(1989). Additionally, "[a] speaker who repeats a defamatory statement or implication after being informed of its falsity 'does so at the peril of generating an inference of actual malice.'" *Nunes v. Lizza*, 12 F.4th 890, 900 (8th Cir. 2021) (quoting *Bertrand v. Mullin*, 846 N.W.2d 884, 901 (Iowa 2014); *see also Zuckerbrot v. Lande*, 167 N.Y.S.3d 313, 336 (N.Y. Sup. Ct. 2022) ("[P]ublication in the face of unresolved subjective doubt is actual malice").

Fifth, and similarly, as more information became available, Fox refused to retract, correct, or apologize for its errors. (D.I. 1-1, ¶ 99.) Fox argues that such refusal is not evidence of intent at the time of publication and is "not enough in itself to nudge an allegation of actual malice from conceivable to plausible." (D.I. 12 at 17 (quoting *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 281-82 (S.D.N.Y. 2013)).) Fox's statements about Ray span well over a year in various segments on multiple programs, with many opportunities to correct its coverage of him—such as after the Committee refuted the story that Ray was a federal agent or once Fox obtained footage of Ray's de-escalation efforts. (D.I. 1-1, ¶ 61.) Failing to do so is evidence of actual malice.

Sixth, Ray alleged that Fox had an "economic motive to lie and make Ray a scapegoat" because of Fox's role in fostering an environment that led to the attack on the Capitol. (D.I. 1-1, ¶ 99.) Fox argues that the allegation about its motive is irrelevant, relying on *Parsi v. Daioleslam*, 890 F. Supp. 2d 77 (D.D.C. 2012), and *McCafferty*, 955 F.3d 352. The problem for Fox is that both of those cases apply *Harte-Hanks*, which squarely rejected Fox's argument: "a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence . . . and it cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry." 491 U.S. at 668.

Seventh, Fox disregarded Ray's repeated denials *under oath*. (D.I. 1-1, ¶ 66.) Fox argues such "self-serving denials" are irrelevant to the actual malice inquiry, but the cases it cites

disagree. *Biro* explained that a plaintiff's denials are evidence of actual malice "when there is something in the content of the denial or supporting evidence produced in conjunction with the denial that carries a doubt-inducing quality." 963 F. Supp. 2d at 281-82. Similarly, *Harte-Hanks* did not foreclose reliance on a denial as evidence of actual malice. Instead, it merely explained, in a brief footnote, that reporters are not required to accept denials. 491 U.S. at 691 n.37. Where Ray's denials were made under oath, before Congress, they carry a doubt-inducing quality.

In sum, Ray alleged many specific facts that, when considered in their totality, plausibly demonstrate that Fox acted with actual malice or reckless disregard for the truth.

## 2.    RAY STATED A CLAIM FOR FALSE LIGHT

There are similarities between false light and defamation, but they are distinct torts. "[I]t is because false light invasion of privacy protects a different interest than defamation that [Utah has] granted it status as an independent tort." *Jensen v. Sawyers*, 130 P.3d 325, 334 (Utah 2005). "In many cases . . . the publicity given to the plaintiff is defamatory," and where that is so, false light claims will "afford an alternative or additional remedy, and the plaintiff can proceed upon either theory, or both, although he can have but one recovery for a single instance of publicity." Restatement (Second) of Torts § 652E cmt. b.

Even where the publicity is not defamatory, the false-light doctrine redresses harms. "It is not [necessary] that the plaintiff be defamed. It is enough that he is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position." *Id.* Reflecting that guidance from the Restatement, Utah law recognizes "a distinct branch of false light liability for speech that is technically true but places someone in a highly offensive and misleading light." *SIRQ, Inc. v. Layton Cos., Inc.*, 379 P.3d 1237, 1246 n.6 (Utah 2016); *Jensen*, 130 P.3d at 336 (same); *Russell v. Thomson Newspapers*, 842 P.2d 896, 906-07 (Utah 1992) (same).

Ray's allegations plausibly demonstrate that Fox published statements that placed Ray in a highly offensive and misleading light, and that Fox acted with actual malice or reckless disregard for the truth. Thus, he has successfully stated an alternative claim for false light arising from technically true statements that nonetheless placed him in a highly offensive and misleading light. The thrust of Fox's motion unavoidably precludes dismissal of that claim, because it is Fox's position that its statements were all technically true, even if those statements falsely suggested that Ray was a federal agent provocateur. This case perfectly illustrates the distinction between the two torts—if the statements were defamatory, Ray has viable claims for defamation, and if they were nondefamatory, Ray has viable claims for false light.

## 3.    NONE OF THE CLAIMS ARE TIME-BARRED

Fox argues that a one-year statute of limitation applies to Ray's defamation claims under Utah and New York law. (D.I. 12 at 18-19.) While accurate, the time has not run as a result of the republication doctrine, *In re Phila. Newspapers, LLC*, 690 F.3d 161, 174 (3d Cir. 2012) ("Republishing . . . resets the statute of limitations."), and the statute of limitations for Ray's false light claim is two years, as discussed below. But the Court can consider the republication question at a later time because the Complaint alleges that within one year of the Complaint's filing, Fox made repeated statements regarding Ray being a federal agent provocateur, including the assertion that Ray was the "smoking gun of the entire fed-surrection."[7]

Importantly, Ray asserts two distinct types of false light claims. Under Utah law, one form of false light claims flow from allegedly defamatory statements and are subject to a one-

---

[7] Even if the Court were to conclude that Ray could not assert liability for defamation claims arising solely from statements made prior to July 12, 2022, statements from before that time are nonetheless probative of whether Fox's statements were mere opinion and whether it acted with actual malice.

year statute of limitation that specifically governs claims for libel and slander. Utah Code § 78-12-29(4); *Jensen v. Sawyers*, 130 P.3d 325, 336 (Utah 2005). But there is a second type of false light claim under Utah law that arise from speech that is *technically true* but nonetheless places someone in a highly offensive and misleading light. *Jensen*, 130 P.3d at 336 (emphasis added). The Utah Supreme Court has suggested that the four-year catch-all statute of limitations would apply to those claims. *Id*. Again, Ray also asserts that second type of false light claim in this case. (D.I. 1-1, ¶¶ 113-119.)

Undoubtedly Fox will argue that the Court should extend the reasoning from *Jensen* to nondefamatory false light claims. But *Jensen* carefully limited its holding to avoid that result, explaining that the Utah Supreme Court continued to recognize "that there is certain unacceptable conduct that could be within the reach of false light invasion of privacy, but not defamation" and for purposes of its holding, "actions for false light invasion of privacy that do not involve allegations of defamatory statements . . . are not relevant." 130 P.3d at 337.

Under Delaware's borrowing statute, the Court applies "the shorter of the Delaware statute of limitations or the statute of limitations of the state 'where the cause of action arose.'" *Triestman v. Slate Grp., LLC*, C.A. No. 19-890 (MN), 2020 WL 1450562, at *2 (D. Del. 2020). Delaware's statute of limitations is two years. 10 Del. C. § 8119. Thus, a two-year statute of limitation applies to Ray's claims for false light arising from statements that are technically true but place him in a highly offensive and false light. Even if the Court concludes portions of Ray's defamation claims are time-barred, his false light claims are all timely.

## CONCLUSION

For the foregoing reasons, this Court should deny Fox's motion in its entirety.

Dated:  September 5, 2023

Respectfully submitted,

Farnan LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Rodney Alan Smolla (Bar No. 6327)
164 Chelsea Street
South Royalton, VT 05068
(864) 373-3882
rodsmolla@gmail.com

Michael J. Teter (admitted *pro hac vice*)
Teter Legal
PO Box 522365
Salt Lake City, UT 84152
(202) 796-6619
michael@teterlegal.com

Dick J. Baldwin (admitted *pro hac vice*)
Zimmerman Booher
341 South Main Street, Fourth Floor
Salt Lake City, UT 84111
(801) 924-0200
dbaldwin@zbappeals.com

*Attorneys for Plaintiff James Ray Epps, Sr.*