## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **JAMES RAY EPPS, SR.**, | |
| *Plaintiff*, | |
| v. | C.A. No. 1:23-cv-00761-JLH |
| **FOX NEWS NETWORK, LLC**, | |
| *Defendant*. | |

## MEMORANDUM IN SUPPORT OF DEFENDANT FOX NEWS NETWORK, LLC'S <u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>

**OF COUNSEL:**

Patrick F. Philbin (*pro hac vice*)
Kyle T. West (*pro hac vice forthcoming*)

**TORRIDON LAW PLLC**
801 Seventeenth Street NW
Suite 1100
Washington, DC 20006
Tel: (202) 249-6900
pphilbin@torridonlaw.com
kwest@torridonlaw.com

**DLA PIPER LLP (US)**
John L. Reed (I.D. No. 3023)
Peter H. Kyle (I.D. No. 5918)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Tel: (302) 468-5700
Fax: (302) 394-2341
john.reed@us.dlapiper.com
peter.kyle@us.dlapiper.com

*Attorneys for Defendant*
*Fox News Network, LLC*

## <u>TABLE OF CONTENTS</u>

**Page**

NATURE AND STAGE OF THE PROCEEDINGS ................................................................. 1

SUMMARY OF THE ARGUMENT ................................................................................... 1

LEGAL STANDARD ..................................................................................................... 2

CHOICE OF LAW ........................................................................................................ 2

ARGUMENT ............................................................................................................... 2

I.    The Amended Complaint Still Fails To State A Claim For Defamation. ........................ 2

    A.    The Amended Complaint Still Fails To Allege Facts Suggesting Actual Malice. ................................................................................................... 3

        1.    The Views Of Former Fox Employees Who Were Not Responsible For The Challenged Statements Cannot Show Actual Malice. .................. 4

        2.    The Alleged "Omission" Of Facts Does Not Show Actual Malice. ........... 8

        3.    Alleged Inconsistency In Statements Does Not Allege Actual Malice. ................................................................................................ 9

        4.    The Court Has Correctly Rejected Plaintiff's Remaining Assertions. ........................................................................................... 10

    B.    Fox Cannot Be Liable For Carlson's Statements On The "*Redacted*" Podcast. .................................................................................................. 11

    C.    The Amended Complaint Also Fails To State A Claim For Defamation Because The Challenged Statements Are Constitutionally Protected Opinions. ............................................................................................... 12

        1.    The Challenged Statements Did Not Have A Precise Meaning Or Convey Objectively Verifiable Facts. ................................................... 13

        2.    The Challenged Statements Are Opinions Based On Disclosed Facts. .............................................................................................. 14

            a.    July 13, 2022 Broadcast of TCT ................................................ 17

            b.    July 14, 2022 Broadcast of TCT ................................................ 18

            c.    January 6, 2023 Broadcast of TCT .............................................. 19

d.      March 6, 2023 Broadcast of TCT.................................................... 20

3.      Broader Context Also Confirms The Challenged Statements Are
Opinion. ....................................................................................................... 21

D.      Claims Based On The July 13, 2022 Broadcast Of TCT Are Time Barred. ......... 22

E.      Plaintiff Fails to Allege Either Defamation Per Se or Special Damages. ............. 23

II.    The False Light Claim Fails for the Same Reasons. .......................................................... 25

CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Foreign Policy Grp., LLC,*
    783 F.3d 1328 (D.C. Cir. 2015) ...........................................................................14

*Adelson v. Harris,*
    973 F. Supp. 2d 467 (S.D.N.Y. 2013) ..................................................................12

*Agnant v. Shakur,*
    30 F. Supp. 2d 420 (S.D.N.Y. 1998) ...............................................................23, 24

*Aoki v. Benihana, Inc.,*
    839 F. Supp. 2d 759 (D. Del. 2012) .......................................................................2

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...............................................................................................2

*Bates v. Utah Ass'n of Realtors,*
    297 P.3d 49 (Utah Ct. App. 2013) .......................................................................25

*Baum v. Gillman,*
    667 P.2d 41 (Utah 1983) ......................................................................................23

*Bauman v. Butowsky,*
    377 F. Supp. 3d 1 (D.D.C. 2019) ....................................................................12, 14

*Beattie v. Fleet Nat'l Bank,*
    746 A.2d 717 (R.I. 2000) .....................................................................................16

*Biro v. Condé Nast,*
    963 F. Supp. 2d 255 (S.D.N.Y. 2013) ....................................................................8

*Blankenship v. NBCUniversal, LLC,*
    60 F.4th 744 (4th Cir. 2023) ..............................................................................5, 7

*Chapin v. Knight-Ridder, Inc.,*
    993 F.2d 1087 (4th Cir. 1993) .............................................................................14

*Cianci v. New Times Pub. Co.,*
    639 F.2d 54 (2d Cir. 1980) ..................................................................................19

*Cohn v. J. C. Penney Co., Inc.,*
    537 P.2d 306 (Utah 1975) ....................................................................................24

*Costanza v. Seinfeld,*
 181 Misc.2d 562 (N.Y. Sup. Ct. 1999) ..........................................................25

*Donald J. Trump for President, Inc. v. CNN Broad., Inc.,*
 500 F. Supp. 3d 1349 (N.D. Ga. 2020) ..........................................................5

*Dongguk Univ. v. Yale Univ.,*
 734 F.3d 113 (2d Cir. 2013) ...........................................................................4

*Drew v. Pac. Life Ins. Co.,*
 496 P.3d 201 (Utah 2021) ..............................................................................11

*Fairstein v. Netflix, Inc.,*
 553 F. Supp. 3d 48 (S.D.N.Y. 2021) ..............................................................16

*Favre v. Sharpe,*
 117 F.4th 342 (5th Cir. 2024) .........................................................................16

*Flynn v. CNN, Inc.,*
 No. 21-cv-2587, 2024 WL 1765566 (S.D.N.Y. Apr. 24, 2024) .............15, 17, 19

*Geraci v. Probst,*
 938 N.E.2d 917 (N.Y. 2010) ...........................................................................23

*Herring Networks, Inc. v. Maddow,*
 8 F.4th 1148 (9th Cir. 2021) ...........................................................................19

*Hill v. Cosby,*
 665 F. App'x 169 (3d Cir. 2016) .....................................................................15

*Holy Spirit Ass'n for Unification of World Christianity v. Sequoia Elsevier Publ'g Co.,*
 426 N.Y.S.2d 759 (1st Dept. 1980) ................................................................15

*Immuno AG v. Moor-Jankowski,*
 567 N.E.2d 1270 (N.Y. 1991) .........................................................................12

*Jacob v. Bezzant,*
 212 P.3d 535 (Utah 2009) ...............................................................................25

*Jensen v. Sawyers,*
 130 P.3d 325 (Utah 2005) ...............................................................................22, 25

*Jewell v. Cap. Cities/ABC, Inc.,*
 No. 97-cv-5617, 1998 WL 702286 (S.D.N.Y. Oct. 7, 1998) ..........................22

*Keisel v. Westbrook,*
 542 P.3d 536 (Utah 2023) ...............................................................................16, 17

*Kinsey v. N.Y. Times Co.*,
   991 F.3d 171 (2d Cir. 2021).............................................................................2

*Lemelson v. Bloomberg L.P.*,
   903 F.3d 19 (1st Cir. 2018)..............................................................................9

*Liberman v. Gelstein*,
   605 N.E.2d 344 (N.Y. 1992)......................................................................23, 24

*McCafferty v. Newsweek Media Grp., LTD*,
   955 F.3d 352 (3d Cir. 2020)......................................................................14, 25

*McDougal v. Fox News Network, LLC*,
   489 F. Supp. 3d 174 (S.D.N.Y. 2020)........................................................14, 21

*McKee v. Cosby*,
   874 F.3d 54 (1st Cir. 2017)........................................................................15, 21

*Mejia v. Telemundo Mid-Atl. LLC*,
   440 F. Supp. 3d 495 (D. Md. 2020)..................................................................5

*Michel v. NYP Holdings, Inc.*,
   816 F.3d 686 (11th Cir. 2016).........................................................................9

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990).........................................................................................12

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964)....................................................................................3, 4

*Nothstein v. USA Cycling*,
   499 F. Supp. 3d 101 (E.D. Pa. 2020).............................................................8

*Nunes v. Rushton*,
   299 F. Supp. 3d 1216 (D. Utah 2018)............................................................25

*Pace v. Baker-White*,
   850 F. App'x 827 (3d Cir. 2021)....................................................................3

*Partington v. Bugliosi*,
   56 F.3d 1147 (9th Cir. 1995).........................................................................15

*Passantino v. Weissmann*,
   23-cv-2780, 2024 WL 4346061 (D.D.C. Sept. 30, 2024)...............................24

*Piccone v. Bartels*,
   785 F.3d 766 (1st Cir. 2015).........................................................................15

*Porter v. Staples the Office Superstore, LLC*,
    521 F. Supp. 3d 1154 (D. Utah 2021)..............................................................23, 24

*Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*,
    829 F.2d 1280 (4th Cir. 1987) .....................................................................15

*Prince v. Intercept*,
    No. 21-cv-10075, 2023 WL 4492413 (S.D.N.Y. July 12, 2023).................................4

*Redco Corp. v. CBS, Inc.*,
    758 F.2d 970 (3d Cir. 1985)....................................................................15, 21

*Reid v. McKelvey*,
    No. 22-cv-10708, 2024 WL 4345585 (S.D.N.Y. Sept. 30, 2024) .............................22

*Reliance Ins. Co. v. Barron's*,
    442 F. Supp. 1341 (S.D.N.Y. 1977)..............................................................8

*Rivera v. State*,
    142 N.E.3d 641 (N.Y. 2019) ....................................................................11

*Shchegol v. Rabinovich*,
    10 Misc. 3d 1057(A), (N.Y. Sup. Ct. 2005).....................................................14

*SIRQ, Inc. v. The Layton Companies, Inc.*,
    379 P.3d 1237 (Utah 2016)......................................................................25

*Spelson v. CBS, Inc.*,
    581 F. Supp. 1195 (N.D. Ill. 1984) ...............................................................16

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)..........................................................................3, 4

*Standing Comm. on Discipline of U.S. Dist. Ct. for Cent. Dist. of Cal. v. Yagman*,
    55 F.3d 1430 (9th Cir. 1995) .....................................................................19

*Steinhilber v. Alphonse*,
    501 N.E.2d 550 (N.Y. 1986).................................................................12, 14

*Talley v. Time, Inc.*,
    923 F.3d 878 (10th Cir. 2019) ....................................................................8

*Thai v. Cayre Grp., Ltd.*,
    726 F. Supp. 2d 323 (S.D.N.Y. 2010)............................................................24

*Time, Inc. v. Hill*,
    385 U.S. 374 (1967)............................................................................25

*Wang v. Univ. of Pittsburgh, et. al.*,
    No. 2:20-cv-1952, 2021 WL 6051568 (W.D. Pa. Dec. 21, 2021) ..........................................14

*West v. Thomson Newspapers*,
    872 P.2d 999 (Utah 1994)...................................................................................................12, 22

*Westmont Residential LLC v. Buttars*,
    340 P.3d 183 (Utah Ct. App. 2014) ..........................................................................................23

*Westmoreland v. CBS Inc.*,
    601 F. Supp. 66 (S.D.N.Y. 1984) ...............................................................................................8

**Statutes**

UT Code § 78B-2-302(4)...................................................................................................................22

**Rules**

Fed. R. Civ. P. 9(g) ..........................................................................................................................24

Fed. R. Civ. P. 15(c)(1).....................................................................................................................22

N.Y. C.P.L.R. § 215(3) .....................................................................................................................22

**Other Authorities**

Meet Ray Epps: The Fed-Protected Provocateur Who Appears to Have Led the
    Very First 1/6 Attack on the US Capitol," *Revolver News* (Oct. 25, 2021),
    https://perma.cc/5JEV-8RR3 ....................................................................................................16

Office of the Inspector Gen., U.S. Dep't of Justice, A Review of the FBI's
    Handling of Its Confidential Human Sources and Intelligence Collection
    Efforts in the Lead Up to the January 6, 2021 Electoral Certification 4-5 (Dec.
    2024), https://perma.cc/MHS5-BLF4 ......................................................................................10

Redacted, *Tucker Carlson: The Truth Needs to Come Out*, YouTube (Mar. 11,
    2023), https://tinyurl.com/2cf4em4c...................................................................................11, 12

Restatement (Second) of Torts § 566.........................................................................................14, 15, 16

Restatement (Second) of Torts § 652E .............................................................................................25

Sara Fischer & Mike Allen, "Scoop: Fox News says Tucker Carlson breached his
    contract," *Axios* (June 7, 2023), https://perma.cc/4C5Q-R99S ..............................................11

1 Smolla, *Law of Defamation* § 6:29 (2d ed.).............................................................................16, 18

The Attorney General's Guidelines on FBI Undercover Operations,
    https://perma.cc/9R3A-52HK ...................................................................................................23

## NATURE AND STAGE OF THE PROCEEDINGS

After the Court dismissed the Complaint, D.I. 28, Plaintiff sought leave to amend.  D.I. 29. The Court indicated it would prefer to address amendments on a motion to dismiss, without prejudice to Fox's ability to argue that the amendments are futile.  D.I. 30.  Fox noted no objection. D.I. 31.  Accordingly, Plaintiff filed an Amended Complaint and this motion to dismiss follows.

## SUMMARY OF THE ARGUMENT

The Amended Complaint fails to remedy the defects that prompted the Court to dismiss this case, and it continues to suffer from additional fatal defects as well.

The Court rightly dismissed Plaintiff's claims for defamation and false light for failure to allege actual malice, and nothing in the Amended Complaint fixes that defect.  Plaintiff tries to bolster the role of former Fox employee Abby Grossberg on *Tucker Carlson Tonight* (TCT) to address the holding that nothing suggested she was responsible for the challenged statements (thus making her subjective views irrelevant to actual malice).  But the new allegations reinforce the same conclusion.  Grossberg did not even work on TCT when the first two challenged statements were made (July 13 & 14, 2022), and she claims that, before the next challenged statement was made, she had already been demoted from her Senior Producer role (which involved only booking guests in any event) and marginalized by her superiors.  Nothing in the new allegations plausibly suggests that Grossberg had responsibility for the challenged statements.  And to the extent Plaintiff asserts that Grossberg provides evidence of what *others* thought, he simply distorts what Grossberg has alleged in her lawsuits against Fox.  New allegations about *other* former employees (Jason Donner and Geraldo Rivera) are even more irrelevant.  They never worked on TCT at all, and nothing they say suggests that those who did subjectively believed the challenged statements were false or harbored substantial doubt on that score.

Plaintiff also fails to add any facts to alter the ruling that Fox cannot be held responsible for Carlson's statements on the *Redacted* podcast. Plaintiff points to a leaked cease-and-desist letter warning Carlson that publishing a show on X (f/k/a Twitter) violated his exclusive services contract. But nothing in that letter provides a basis for concluding that it was part of his employment with Fox to appear on *Redacted*. It makes it no more plausible than before that appearing on the podcast was a part of Carlson's employment at Fox any more than writing a book.

Plaintiff's claims also founder on further defects. The challenged statements are all protected opinions on disclosed facts. In addition, any claim based on the July 13, 2022, broadcast is time-barred. Because the statements in that show were set out for the first time in the Amended Complaint, there can be no relation back to the original complaint. Plaintiff also fails to allege either defamation per se or special damages, which separately forecloses any defamation claim.

Finally, the false light claim similarly fails because the challenged statements are all protected opinions and Plaintiff fails to allege special damages. The case should be dismissed.

## LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

## CHOICE OF LAW

The Court need not rule on choice of law, because the Amended Complaint fails under both the law of Plaintiff's domicile (Utah), *see, e.g.*, *Aoki v. Benihana, Inc.*, 839 F. Supp. 2d 759, 764-66 (D. Del. 2012), and the law of Fox's headquarters and the place of publication (New York), *see, e.g.*, *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176-78 & n.21 (2d Cir. 2021).

## ARGUMENT

**I.    The Amended Complaint Still Fails To State A Claim For Defamation.**

The Amended Complaint largely recycles the same allegations the Court has already held

2

insufficient to state a claim. *See* H'rg Tr. at 15 (Nov. 27, 2024) ("Ruling Tr.") (attached as Ex. 1). Given the Court's ruling on the statute of limitations, *see id.* at 4:19-21, Plaintiff's defamation claims are limited solely to statements made on four TCT shows aired on July 13, 2022, July 14, 2022, January 6, 2023, and March 6, 2023, and statements Carlson independently made on the *Redacted* podcast on March 11, 2023. *See* Am. Compl. ¶¶ 53-65.[1]  Nothing in the Amended Complaint fixes the fatal defects the Court found in the original complaint with respect to those statements—namely, Plaintiff fails to allege facts showing actual malice, and Carlson's statements on the *Redacted* podcast cannot be attributed to Fox.  In addition, all the statements Plaintiff attacks are protected opinions on disclosed facts that cannot be the basis for a defamation claim.

## A.    The Amended Complaint Still Fails to Allege Facts Suggesting Actual Malice.

Nothing in the Amended Complaint remedies the defect that Plaintiff has failed to allege facts plausibly showing actual malice.  The actual malice standard applies under both the First Amendment—because Plaintiff is a limited purpose public figure, D.I. 12 at 13-15—and under New York and Utah law, *id.* at 18.  Indeed, Plaintiff concedes he must allege actual malice under Utah law.  *See* Argument H'rg Tr. 43:10-15, 44:17-45:2 (Nov. 26, 2024); Ruling Tr. 9:16-23.

To satisfy that requirement, Plaintiff "must allege *facts*," *Pace v. Baker-White*, 850 F. App'x 827, 831 (3d Cir. 2021) (emphasis in original), showing the Fox employees responsible for the statements acted with "knowledge that [their statements] [were] false or with reckless disregard of whether [they were] false or not."  *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). Reckless disregard is a subjective standard requiring "a high degree of awareness of . . . probable falsity." *St. Amant v. Thompson,* 390 U.S. 727, 731 (1968) (quotation omitted).  It "is not measured by whether a reasonably prudent man would have published, or would have investigated before

---

[1] The Amended Complaint does not purport to add allegations to show republication of any earlier statements.  *Cf.* Ruling Tr. at 5:7-25 (complaint failed to allege republication).

publishing." *Id.* Instead, a plaintiff must plead facts indicating that the defendant "in fact entertained serious doubts as to the truth of his publication." *Id.* Plaintiff still fails to allege facts suggesting such subjective knowledge of falsity by those responsible for the challenged statements.

### 1. The Views Of Former Fox Employees Who Were Not Responsible For The Challenged Statements Cannot Show Actual Malice.

The Amended Complaint primarily seeks to bolster the role of Abby Grossberg on the TCT show to address the Court's holding that allegations about Grossberg's "subjective doubt about whether FBI informants were influencing the crowd" on January 6 were insufficient to allege actual malice. As the Court rightly held, Plaintiff failed to allege facts showing that Grossberg "was responsible for publishing the challenged statements." Ruling Tr. 11:7-8, 10-11. Nothing in the Amended Complaint changes that conclusion. The new allegations simply confirm that Grossberg had a minor role on the show for a limited time and was not responsible for publishing the challenged statements.

It is settled law that "the state of mind required for actual malice [must] be brought home to the persons in the [defendant's] organization having responsibility for the publication of the [statement]." *Sullivan*, 376 U.S. at 287. That means that, "[w]hen there are multiple actors involved in an organizational defendant's publication of a defamatory statement, the plaintiff must identify the individual responsible for publication of a statement, and it is that individual the plaintiff must prove acted with actual malice." *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123-24 (2d Cir. 2013). The law thus requires that "allegations of actual malice must be specific to the person within [an organization] who was responsible for . . . writing" the challenged statement. *Prince v. Intercept*, No. 21-cv-10075, 2023 WL 4492413, at *8 (S.D.N.Y. July 12, 2023). The Fourth Circuit, for example, has held that the state of mind of an Executive Producer could not be used to prove actual malice for *scripted* statements on *his own show* where there was no evidence

that he had worked on the particular script at issue.  *Blankenship v. NBCUniversal, LLC*, 60 F.4th 744, 762 (4th Cir. 2023).  Similarly, in *Donald J. Trump for President, Inc. v. CNN Broad., Inc.*, 500 F. Supp. 3d 1349 (N.D. Ga. 2020), the court refused to consider the state of mind of various CNN editors and producers because "the complaint does not connect [them] to the specific article in question."  *Id.* at 1357 n.4; *see also Mejia v. Telemundo Mid-Atl. LLC*, 440 F. Supp. 3d 495, 502 (D. Md. 2020) (dismissing case about a chyron where there were "no factual allegations referring to the state of mind of the individual in charge of Defendant's banners").

Here, nothing in the Amended Complaint shows that Grossberg was responsible for publishing the challenged statements such that her state of mind would be relevant.  To start with, Grossberg did not begin working on TCT until September 5, 2022, *after* two of the four challenged broadcasts (July 13 & 14) had already aired.  Am. Compl. Ex. E ¶¶ 225, 489.  Next, there are no allegations showing that she had any responsibility for content on the show beyond her limited role in booking guests.  And Grossberg claims even that limited role was largely gutted before the next challenged statement was made on January 6, 2023.  She claims she was demoted on November 30, 2022, lost her title as "Senior Producer," and had another Senior Producer layered above her—who "immediately began to marginalize her" and "began directing the booking team himself."  *Id.* at ¶¶ 259, 261, 264.  After that, Grossberg claims that she was increasingly marginalized and bookings were made without her knowledge.  *Id.* at ¶¶ 256, 269-70, 275-80, 311, 328, 330.  By Grossberg's own account, her involvement in the content of the TCT show falls far short of what could qualify her as a person responsible for publishing the challenged statements—especially where there are no factual allegations whatsoever suggesting that she played *any* role in the specific shows and statements challenged in the Amended Complaint.

To the extent Plaintiff points to Grossberg to show the state of mind of *others* at Fox, the allegations still fall short. Plaintiff claims Grossberg "admitted" that Carlson "manufactured false stories" and "purposefully distorted his presentation of material about January 6th, including about Epps." Am. Compl. ¶¶ 87, 93. But Grossberg never claimed any insight into *Carlson's* state of mind. She alleged, "*[u]pon information and belief*" that Carlson "attempted to spin and manufacture a[] false narrative" about January 6th. Am. Compl. Ex. F ¶ 137. She did not allege *facts* suggesting that *Carlson* thought what he was saying was false, and *her* view that statements were false cannot show actual malice, given her lack of responsibility for the statements. In any event, Plaintiff reproduced the exact same allegations from Paragraph 137 of Grossberg's Second Amended Complaint in his original complaint, *see* D.I. 1-1 ¶ 64, and this Court already ruled those assertions from Grossberg were not sufficient to allege actual malice.[2]

Plaintiff similarly falls short with claims that Grossberg described "meetings"[3] between Fox executives and TCT producers at which they agreed to "manufacture" "false" stories about January 6th," including the assertion "that Epps was a federal agent." Am. Compl. ¶¶ 94, 95, 96. That simply misrepresents Grossberg's complaint. What Grossberg actually alleged—again "upon information and belief"—was a "plan" to run stories based on Carlson's team's review of 44,000 hours of Capitol security footage to "downplay the violent rebellion." Am. Compl. Ex. F ¶¶ 133-34. Nothing in Grossberg's complaint provides factual allegations to suggest that the people involved believed that the viewpoint Carlson would present based on the footage was "false." Nor, more importantly, did Grossberg even allege that the Fox executives discussed stories involving

---

[2] Grossberg's assertions turn on the fact that an attorney for the Proud Boys rejected the idea that the FBI had infiltrated the group and incited rioters on January 6. As Fox explained previously, Plaintiff was not in the Proud Boys. That the attorney rejected the idea of the FBI infiltrating the Proud Boys is thus irrelevant to the challenged statements about Plaintiff. D.I. 22 at 7.

[3] The Grossberg complaint actually alleges only a single meeting. Am. Compl. Ex. F ¶¶ 133-34.

Plaintiff *at all*. *Cf. Blankenship*, 60 F.4th at 762 (state of mind of executive who suggested storyline could not be used to show actual malice absent direct tie to the specific statements at issue). Her allegations about the supposed meeting are irrelevant here.

Plaintiff fares no better with allegations about other Fox employees who had no role whatsoever on TCT but who criticized some of Carlson's commentary about January 6. Former Fox Capitol Hill Producer Jason Donner claims that he complained to Fox's D.C. Bureau Chief about statements that Carlson made in a special entitled *Patriot Purge*. Am. Compl. ¶¶ 98-103. There is no allegation that he complained to Carlson or anyone else about the specific statements at issue in this case, and there is no reference to Plaintiff anywhere in Donner's complaint. Instead, Donner claims he told the D.C. Bureau Chief that he thought it was false for Carlson to "sugges[t]" that the FBI had "orchestrated" January 6. Am. Compl. Ex. G. ¶ 29. But neither Donner nor the D.C. Bureau Chief had a role in publishing the statements in this case, so Donner's views (and his complaint to the Bureau Chief) cannot establish actual malice, and Donner does not purport to provide any information about Carlson's state of mind. Nor does it advance the ball that Donner claims the D.C. Bureau Chief responded that unspecified "people" were "upset" about Carlson's statements. *Id.* at ¶ 27. Nothing in those assertions comes any closer to alleging *facts* showing that those responsible for the statements at issue in this case subjectively believed that they were false (or had serious doubts on that matter).

Allegations about former Fox employee Geraldo Rivera's criticisms of Carlson are even further afield. *See* Am. Compl. ¶¶ 102, 108. Plaintiff links those criticisms to statements about himself only on "information and belief," *id.* ¶ 102, because there are no facts to suggest Rivera's comments had anything to do with the statements in this case. In any event, Rivera also never had

any role on TCT, and whether he thought some of Carlson's statements about January 6 in general were false is irrelevant to showing actual malice for the statements challenged here.

### 2.    The Alleged "Omission" Of Facts Does Not Show Actual Malice.

Plaintiff also cannot allege actual malice on the theory that Carlson omitted information that would have undercut statements made on the show.  Plaintiff complains that, as of February 2023,[4] Fox had access to Capitol security footage showing Plaintiff trying to deescalate the crowd after it had breached the first barricade.  According to Plaintiff, omitting that information somehow shows that relevant Fox employees subjectively knew that the challenged statements were false. Am. Compl. ¶¶ 77, 109, 118.  But courts have repeatedly rejected the notion that a speaker must list all information that contradicts their statements lest they be found to have acted with actual malice by "omission."  As the court in *Reliance Ins. Co. v. Barron's*, 442 F. Supp. 1341 (S.D.N.Y. 1977), explained, "[o]bviously the author of an article will have to choose which facts to include and which to omit. . . . Were the courts or [plaintiffs] to be allowed to dictate the contents of such articles, censorship would have won out over free speech and the right to dissent." *Id.* at 1352.  If omitting facts contrary to a viewpoint sufficed for actual malice, far from protecting free speech, the actual malice standard would become a tool for compelling speech.  Accordingly, "the fact that an article is one sided or fails to include as many positive features about the subject as negative ones has no tendency to prove that the publisher believed it to be false."  *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 285 (S.D.N.Y. 2013) (quotation omitted); *see also Talley v. Time, Inc.*, 923 F.3d 878, 906 (10th Cir. 2019) (same); *Nothstein v. USA Cycling*, 499 F. Supp. 3d 101, 125-26 (E.D. Pa. 2020) (same); *Westmoreland v. CBS Inc.*, 601 F. Supp. 66, 68 (S.D.N.Y. 1984) (same).

---

[4] Even if omission of Plaintiff's deescalation efforts were evidence of actual malice, it would be relevant only to the March 6, 2023, episode of TCT and the March 11, 2023 *Redacted* Podcast.

In any event, video of Epps trying to "deescalate" the crowd *after* the breach of the first barricade does not undermine the alleged statements about Epps—it is equally consistent with Epps changing behavior after things got out of hand.  In addition, as this Court rightly noted, *see* Ruling Tr. at 13:4-14:6, Fox *did* publish other information that contradicted the opinions expressed about Plaintiff (such as Plaintiff's own denials and the January 6 Committee's endorsement of his denials), and that undercuts any plausible inference that Fox was purposefully avoiding evidence contrary to the challenged statements.  *Id.*; *see also Lemelson v. Bloomberg L.P.*, 903 F.3d 19, 24 (1st Cir. 2018); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016) (collecting cases).

### 3. Alleged Inconsistency In Statements Does Not Allege Actual Malice.

Plaintiff also misses the mark with the theory that an "inconsistency" in statements made on TCT shows actual malice.  Am. Compl. ¶¶ 109, 111-13.  Plaintiff alleges that in a show in January 2022, Carlson discussed video of the "Scaffold Commander" urging people into the Capitol, but on March 7, 2023, a guest said that Plaintiff was "the *only* person on video on January 5th night and January 6th morning, encouraging people to go into the Capitol."  *Id.* at ¶ 111.  But there is nothing inconsistent in the two shows.  The guest said, in the conjunctive, that Plaintiff was "the only person on video January 5th night *and* January 6th morning" encouraging people into the Capitol.  *Id.* (emphasis added).  That is true.  There is no video of the "Scaffold Commander" on January 5.  In any event, the two statements were made over a year apart by different people and could not give rise to a plausible inference of subjective doubt about the truth of the guest's statement, especially in the context of a live, unscripted broadcast.  And Plaintiff's entire argument on this point is particularly irrelevant because the guest's statement on March 7, 2023, is not one of the defamatory statements challenged in the Amended Complaint.

### 4.    The Court Has Correctly Rejected Plaintiff's Remaining Assertions.

Plaintiff's remaining allegations rehash theories the Court already held insufficient to show actual malice.  He tries to buttress the theory that Darren Beattie was an unreliable "source" by pointing out that Carlson once said that "we wouldn't know anything about" Epps but for Beattie's reporting.  Am. Compl. ¶ 106.  But Carlson plainly meant that Beattie's reporting had focused attention on objectively verifiable facts (like video of Plaintiff) that otherwise would have escaped notice.  Plaintiff still fails to identify a single fact that Fox supposedly sourced from Beattie and alleges that he was a "source" only "[o]n information and belief."  *Id.*  Moreover, as the Court has already held, the transcript of Beattie's appearance shows that he was *not* a source but instead was providing "his own commentary and opinions based on disclosed facts."  Ruling Tr. 12:8-9.

The Amended Complaint adds no factual allegations at all to bolster Plaintiff's erroneous actual malice theories based on Fox's supposed economic motive, the inherent implausibility of the statements about Plaintiff, or the lack of a retraction.  Am. Compl. ¶¶ 107-08, 113.  Those theories fail for the reasons the Court has already explained.  *See* Ruling Tr. 12:10-18 (motive); *id.* 14:7-25 (inherent improbability);[5] *id.* at 13:11-16 (lack of retraction).

In short, the Court's analysis on the original complaint still applies.  Plaintiff fails to allege actual malice because he still "does not allege that, for instance, the defendant made up any of the disclosed facts on which the statements were based, that defendant knew for certain that plaintiff was not a government informant, or even that it was possible for defendant to know for certain at

---

[5] Plaintiff's inherent improbability theory is further undermined by the Department of Justice's recent admission that there were, in fact, at least 17 DOJ confidential human sources who entered the restricted area around the Capitol on January 6—a figure that does not even include assets handled by other government departments, such as the Department of Homeland Security.  *See* Office of the Inspector Gen., U.S. Dep't of Justice, A Review of the FBI's Handling of Its Confidential Human Sources and Intelligence Collection Efforts in the Lead Up to the January 6, 2021 Electoral Certification 4-5 (Dec. 2024), https://perma.cc/MHS5-BLF4.

the time the statements were made, or that defendant published any facts that were contrary to information it otherwise knew for a fact to be true."  Ruling Tr. 15:6-13.

**B.      Fox Cannot Be Liable For Carlson's Statements On The "*Redacted*" Podcast.**

The Court rightly held that the original complaint "contains no allegations of fact that would plausibly support the contention that Mr. Carlson was acting within the scope of his employment while appearing on [the *Redacted*] podcast."  Ruling Tr. 7:8-10.  The Amended Complaint does not fix that defect.  Plaintiff does not allege facts showing Carlson's appearance was (i) "of the general kind [he] [wa]s employed to perform" and (ii) "motivated, at least in part, by the purpose of serving the employer's interest."  *Drew v. Pac. Life Ins. Co.*, 496 P.3d 201, 214 (Utah 2021) (quotation omitted); *accord Rivera v. State*, 142 N.E.3d 641, 645 (N.Y. 2019).

The only new allegations are quotations from a leaked cease-and-desist letter Fox sent in June 2023 telling Carlson he had *breached* his contract by publishing a non-Fox program on the Internet.[6]  *Id.*  Fox sent the letter after Carlson published a show on X (f/k/a Twitter), and the letter explained that his contract said that his "services shall be completely exclusive to Fox" and "prohibited [Carlson] from rendering services of any type whatsoever" to others, including "'over the internet via streaming or similar distribution.'"  Am. Compl. ¶ 24.  Nothing in that letter suggests that appearing on *Redacted* was part of Carlson's job.  It provides no plausible basis whatsoever for concluding that appearing on someone else's platform was a service of the kind he was employed to perform for Fox.  Carlson made it clear, moreover, that he was appearing on the podcast because the host, Clayton Morris, was a long-time friend.  Redacted, *Tucker Carlson: The*

---

[6] The Amended Complaint uses quotation marks without any citation but appears to be quoting this story: Sara Fischer & Mike Allen, "Scoop: Fox News says Tucker Carlson breached his contract," *Axios* (June 7, 2023), https://perma.cc/4C5Q-R99S.

*Truth Needs to Come Out*, at 0:06-0:45, YouTube (Mar. 11, 2023), https://tinyurl.com/2cf4em4c.

Thus, Carlson's statements on *Redacted* cannot be attributed to Fox.[7]

> ### C.    The Amended Complaint Also Fails to State a Claim for Defamation Because the Challenged Statements Are Constitutionally Protected Opinions.

Plaintiff's defamation claims also fail because the challenged statements all convey opinions, not facts.  Under the First Amendment, a statement that "does not contain a provably false factual connotation will receive full constitutional protection," and "statements that cannot reasonably be interpreted as stating actual facts about an individual" are protected.  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (quotations and brackets omitted).  Utah and New York law incorporate the same or greater protections.  *See West v. Thomson Newspapers*, 872 P.2d 999, 1015-19 (Utah 1994); *Immuno AG v. Moor-Jankowski*, 567 N.E.2d 1270, 1273 (N.Y. 1991).  The question whether a statement "constitutes constitutionally protected opinion or unprotected fact is an issue that must be decided by the court," and if the issue is close, "a court should err on the side of non-actionability."  *Adelson v. Harris*, 973 F. Supp. 2d 467, 487 (S.D.N.Y. 2013) (quotation omitted); *accord Bauman v. Butowsky*, 377 F. Supp. 3d 1, 15 (D.D.C. 2019).

Whether a statement is opinion turns on: (i) whether it has a precise meaning; (ii) whether it can be objectively verified as true or false; (iii) the full context; and (iv) the broader context in which the statement is made.  *West*, 872 P.2d at 1018; *Steinhilber v. Alphonse*, 501 N.E.2d 550, 553 (N.Y. 1986).  Here, all factors confirm the challenged statements were opinions.

---

[7] The allegation that the podcast briefly showed a video clip from Fox, *see* Am. Compl. ¶ 64, does not aid Plaintiff.  The clip lasts for 14 seconds, *see* Redacted, *Carlson* at 32:03-32:17, and there is no well-pleaded allegation that Fox provided permission for its use rather than the podcast simply showing it under a claim of fair use.

      1.      **The Challenged Statements Did Not Have A Precise Meaning Or Convey Objectively Verifiable Facts.**

To start with, virtually all of the challenged statements are not assertions of any verifiable fact, because they consist of Carlson—the host of an opinion and commentary show—or a guest setting out known (and undisputed) facts about Plaintiff and (i) asking questions or (ii) providing an opinion that the facts are strange and warrant further investigation.  Thus, on July 13, 2022, Carlson said it was "mysterious" that Plaintiff, who "was on camera repeatedly telling people to storm the Capitol," had not been indicted, and he concluded the segment with his opinion that "we should know about that much more than we know."  Am. Compl. ¶ 53.  Similarly, on January 6, 2023, Carlson noted that Epps has "never been charged" and asked "Why is that?"  Am. Compl. ¶ 58.  He urged that "[t]he question is, did Ray Epps work or have any contact with any government agency?"—and answered, "We don't know."  *Id.*  On July 14, 2022, Carlson encouraged viewers to ask questions by noting that people "go crazy when you ask simple questions like, what was the role of federal law enforcement" on January 6.  Am. Compl. ¶ 55.  In the same show, he noted it was "very strange" that Epps had not been charged and explained that "we will keep asking, because we think it is a very obvious and important question."  Am. Compl. Ex. B at 6, 7.

Asking such questions does not assert a precise meaning or imply provable facts about Plaintiff.  It conveys an opinion that the facts raise questions calling for an investigation.  In fact, Carlson made clear his goal was to show there were real questions to be answered.  He argued that "this is not a conspiracy theory.  It's a legitimate question. Why won't they answer it?"  Am. Compl. ¶ 47, and: "I don't think anyone watching should feel embarrassed to ask those questions or allow anyone to bark you into silence by calling you a conspiracy nut."  D.I. 13-9, Ex. O at 9.[8]

---

[8] The Court may consider the full transcript of a show for context even if the Amended Complaint quotes only excerpts.  *See, e.g.*, *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 179

Commentary asserting that facts "deserv[e] serious scrutiny," *Bauman*, 377 F. Supp. 3d at 11, and "raising questions" and "urging readers to investigate" is quintessential nonactionable opinion. *Shchegol v. Rabinovich*, 10 Misc. 3d 1057(A), at *7 (N.Y. Sup. Ct. 2005), *aff'd*, 30 A.D.3d 311 (N.Y. App. Div. 2006) (table decision). "[I]nvit[ing] the public to ask" questions, "rather than a libel, is the paradigm of a properly functioning press." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1096 (4th Cir. 1993).[9] And describing facts as "'suspicious' . . . is an expression of opinion that cannot support a claim of defamation." *Bauman*, 377 F. Supp. 3d at 11.

### 2.    The Challenged Statements Are Opinions Based On Disclosed Facts.

Even if any of the challenged statements implied (as Plaintiff claims) that Plaintiff was working for the government while encouraging rioters, the statements were still protected opinions. The governing rule here is that, "[u]nder the First Amendment, opinions based on disclosed facts are 'absolutely privileged' no matter 'how derogatory' they are." *McCafferty v. Newsweek Media Grp., LTD*, 955 F.3d 352, 357 (3d Cir. 2020); *see also Steinhilber*, 501 N.E.2d at 552 ("'[P]ure opinion' is a statement of opinion . . . accompanied by a recitation of the facts upon which it is based.").[10] This rule reflects the principle that, "[i]f the disclosed facts are true and the opinion is defamatory, a listener may choose to accept or reject it on the basis of an independent evaluation of the facts." *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972 (3d Cir. 1985). "[W]hen an author outlines the facts available to him, thus making it clear that the challenged

---

n.5 (S.D.N.Y. 2020); *Wang v. Univ. of Pittsburgh, et. al.*, No. 2:20-cv-1952, 2021 WL 6051568, at *15 (W.D. Pa. Dec. 21, 2021).

[9] *See also, e.g.*, *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1339 (D.C. Cir. 2015) (dismissing defamation claim based on the "widely adopted defamation principle that questions are questions" and noting that a "severe infringement on free speech" would result from treating them as actionable) (Kavanaugh, J.).

[10] *See also* Restatement (Second) of Torts § 566 cmt. c ("A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is.").

statements represent his own interpretation of those facts and leaving the reader to draw his own conclusions, those statements are generally protected by the First Amendment." *Partington v. Bugliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1995). Under this rule, a defendant's opinions, "even if bizarre, and even if they have no sound basis in the facts which the writer characterizes by these opinions, are still constitutionally protected." *Holy Spirit Ass'n for Unification of World Christianity v. Sequoia Elsevier Publ'g Co.*, 426 N.Y.S.2d 759, 760 (1st Dept. 1980).

It does not matter that Plaintiff alleges the statements implied factual conclusions that could be proved true or false. As the Restatement explains, where a speaker discloses the facts on which he relies, even a factual conclusion—such as that a person is an alcoholic—is protected opinion. Restatement (Second) of Torts § 566 cmt. c, illus. 4; *see, e.g.*, *McKee v. Cosby*, 874 F.3d 54, 61, 63 (1st Cir. 2017) (assertion that plaintiff lied about incident was opinion on disclosed facts); *Hill v. Cosby*, 665 F. App'x 169, 174-75 (3d Cir. 2016) (same); *Redco*, 758 F.2d at 972 (statement that tire rims were unsafe was opinion on disclosed facts); *Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1290 (4th Cir. 1987) ("[W]e acknowledge that the defendants' statement is capable of being proved or disproved, but we nevertheless hold that when viewed in context it is clearly an opinion."); *Flynn v. CNN, Inc.*, No. 21-cv-2587, 2024 WL 1765566, at *11 (S.D.N.Y. Apr. 24, 2024) (statement that plaintiffs were QAnon followers based on two-second video clip was protected opinion).[11] Similarly here, even if the challenged statements implied a factual conclusion about Plaintiff, they reflected only interpretations based on disclosed facts.

---

[11] *See also Piccone v. Bartels*, 785 F.3d 766, 771 (1st Cir. 2015) ("[A] speaker can immunize his statement from defamation liability by fully disclosing the non-defamatory facts on which his opinion is based."); 1 Smolla, *Law of Defamation* § 6:29 (2d ed.) ("A pure opinion does not lose its protected status merely because it is ostensibly cast in factual form . . . .").

That principle applies to *all* the challenged statements.  Importantly, the statements must be considered in the context of the entire series of TCT shows discussing Plaintiff.  *See, e.g.*, *Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48, 64 (S.D.N.Y. 2021); *Spelson v. CBS, Inc.*, 581 F. Supp. 1195, 1202-04 (N.D. Ill. 1984).  In particular, Carlson and his guests did not need to repeat all the facts about Plaintiff in each and every show given that the facts had previously been disclosed.  Plaintiff was discussed on at least seven TCT shows in 2022 before the first challenged statement on July 13, *see* Am. Compl. ¶¶ 46-52, and those shows fully set out the facts, *see, e.g.*, D.I. 13-9 Ex. O, at 6-7.  Protection for an opinion based on disclosed facts also applies where the facts were "publicly known."  *Keisel v. Westbrook*, 542 P.3d 536, 555-56 (Utah 2023) (protected opinion where the incident at issue "had been widely discussed"); *accord Favre v. Sharpe*, 117 F.4th 342, 347-48 (5th Cir. 2024) (protected opinion where facts were "widely reported").[12]  That principle also applies here.  Before the first challenged statement on July 13, 2022, video of Plaintiff had been widely reported on the internet;[13] he had been the subject of two articles in the *Arizona Republic*, D.I. 13-4 & 13-5 Ex. H & Ex. I, and the subject of questions in a congressional hearing, D.I. 13-6 Ex. J, at 240; video of him was featured in the *New York Times* special *Day of Rage*, *id.* D.I. 13 Ex. G; he had been interviewed by the January 6 Committee, which generated further news, D.I. 13-2 & D.I. 13-14 Exs. E & U, and he had been the subject of both a segment on 60 Minutes, *id.* D.I. 13 Ex. C, at 13:00, and a feature article in the *New York Times*, D.I. 13-8 Ex. N.  Finally, the other TCT shows in the series also provide important context making it express that Carlson

---

[12] *See also, e.g.*, *Beattie v. Fleet Nat'l Bank*, 746 A.2d 717, 721 (R.I. 2000) (protected opinion where there were "publicly known" facts); Restatement (Second) of Torts § 566 cmt. b (protected opinion where the speaker "does not himself express the alleged facts" if the facts are "assumed," and facts may be "assumed" due to their "notoriety").

[13] "Meet Ray Epps: The Fed-Protected Provocateur Who Appears to Have Led the Very First 1/6 Attack on the US Capitol," *Revolver News* (Oct. 25, 2021), https://perma.cc/5JEV-8RR3.

was offering his opinion and commentary, which viewers were free to reject.  In one show (strategically omitted from the Amended Complaint), Carlson referred to video of Epps and bluntly explained: "[O]nce again, you can draw whatever conclusions you like from that video.  We have ours and we have shared them with you . . . ."  D.I. 13-1 Ex. A, at 2.

        **a.**        **July 13, 2022 Broadcast of TCT**

Plaintiff alleges that in a July 13, 2022 show, Carlson "suggested that the U.S. military was protecting Epps by collecting and concealing information about his conduct on January 6th."  Am. Compl. ¶ 81; *see also id.* ¶ 54.  But that simply misrepresents what was said.  Carlson pointed out that a congressman had introduced an amendment to the National Defense Authorization Act that would hide information collected by the military for use in congressional investigations.  Am. Compl. ¶ 53.  Carlson and his guest then argued that was a bad policy because the military should not collect information domestically and the amendment could cover information on various hypothetical subjects including "vaccine mandates" and "January 6," "includ[ing] . . . Ray Epps." *Id.*  Neither Carlson nor his guest said that the military *had* information on Epps.  Instead, Carlson concluded by calling for more information—both about the statute and Epps, saying "we should know about [Epps] much more than we know."  *Id.*  That did not imply any conclusions at all.

In any event, even if Carlson had implied a conclusion about Plaintiff, he was providing his opinion on disclosed facts.  Plaintiff's claim that "Carlson did not disclose any facts," Am. Compl. ¶ 81, is simply false.  He did repeat the key facts that Plaintiff was "on camera" urging people into the Capitol and yet had not been charged.  *Id.* ¶ 53.  No more is required.  *Cf. Flynn*, 2024 WL 1765566, at *12 ("[A] factual-sounding statement accompanied by a paltry explanation still counts as an opinion.").  Moreover, context from previous TCT shows setting out the facts must be considered, and the facts were also "publicly known."  *Keisel*, 542 P.3d at 555.

### b.    July 14, 2022 Broadcast of TCT

All the challenged statements in the July 14, 2022, episode of TCT were made by guest Darren Beattie and are plainly based on disclosed facts.  Before Beattie came on (in a segment the Amended Complaint does not quote), Carlson went through the known facts about Plaintiff in detail, including replaying video of Plaintiff urging people to go into the Capitol.  D.I. 13-11 Ex. Q, at 5-8.  Beattie then reiterated key facts before providing his opinion that Plaintiff was the "smoking gun of the fed-surrection."  Am. Compl. ¶ 55.  Indeed, the Court has already held that "the statements of Mr. Beattie himself on that broadcast . . . are purely his own commentary and opinions based on disclosed facts."  Ruling Tr. 12:7-9.

Plaintiff cannot undermine protection for Beattie's opinions on the theory that Beattie relied on false statements of fact.  Plaintiff claims it was false to say (i) that he "had not attended [Trump's] speech," and (ii) that he "was the one person calling for everyone to go in" to the Capitol. Am. Compl.  ¶ 83.  But the statement about the speech was true.  Plaintiff admitted under oath to the January 6 Committee that he stayed at the rally only "up to President Trump" and left when Trump began speaking.  *See* Ex. 2 ("Epps Tr.") at 42.  When asked, "why did you leave when President Trump started speaking?" he answered: "There was a group that started running towards the Capitol."  *Id.*  As for Plaintiff being the "one person" urging people into the Capitol, earlier in the segment Beattie made clear he was saying that Plaintiff was the "one person caught *repeatedly* urging people into the Capitol *as early as January 5th*."  Am. Compl. ¶ 55 (emphases added).  The failure to repeat those qualifiers a few sentences later did not alter the substance of what he was saying, and such a detail cannot undermine protection for Beattie's overall commentary as opinion.

In any event, as Plaintiff's own counsel has explained in his treatise, "[w]hen an opinion is based on expressly stated facts, it is normally immune from liability, unless the expressly stated facts are themselves false *and defamatory*."  1 Smolla, *Law of Defamation* § 6.29 (emphasis

added); *accord Cianci v. New Times Pub. Co.*, 639 F.2d 54, 65 (2d Cir. 1980) (Friendly, J.); *Flynn*, 2024 WL 1765566, at *11. That is, "[a]n opinion based on fully disclosed facts can be punished only if the stated facts are themselves false and demeaning." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1159 (9th Cir. 2021); *accord Standing Comm. on Discipline of U.S. Dist. Ct. for Cent. Dist. of Cal. v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995) (same). Nothing about Beattie's alleged factual errors was itself defamatory, and thus his statements remain protected opinions.

The only alleged statement from Carlson in the July 14 broadcast is the observation, after Beattie's opinions, that people "go crazy when you ask simple questions like, what was the role of federal law enforcement" on January 6. Am. Compl. ¶ 55. That is non-actionable commentary conveying no factual statement about Plaintiff at all. And even if it did imply that Plaintiff was involved with law enforcement, it was still an opinion based on facts disclosed earlier in the show.

### c.    January 6, 2023 Broadcast of TCT

In this show, Carlson again repeated key facts—including that Plaintiff was "caught on tape encouraging the crowd" on January 5 and 6 and that he admitted in a text message that he "orchestrated it," referring to the riot. Am. Compl. ¶ 58. Carlson then primarily asked questions, such as pointing out that Epps has "never been charged" and asking "Why is that?" *Id.* He ultimately concluded that "it's pretty obvious why that is," *id.*, which did not convey any concrete conclusion at all. And even if it did, it was plainly Carlson's opinion on disclosed facts.[14]

Plaintiff cannot undermine that result with the claim that Carlson relied on a false factual point when he suggested that Plaintiff had denied only involvement with "law enforcement" in

---

[14] Plaintiff also cannot advance the ball by pointing to a screen shot from TCT showing a picture of himself with the caption "FedEpps." Am. Compl. ¶ 57. The caption must be understood in the context of the entire discussion about Plaintiff, and the tongue-in-cheek nature of the caption in the signature purple and orange lettering of FedEx™ reinforced the impression that Carlson was providing his spin and commentary on the facts.

testimony to the January 6 Committee and had not been asked about *other* agencies.  Am. Compl.

¶ 84.  As excerpts in the Amended Complaint show, Plaintiff was asked at least *seven times* about

working with "law enforcement" or the FBI, and Plaintiff points to only *one* question broadening

the focus to "any government agency."[15]  *Id.*  Even if Carlson missed that one question, a mistake

on such a minor point cannot undermine protection for his opinions—especially because any error

in recounting the questioning before the Committee was not itself defamatory. *See supra* p. 18-19.

### d.    March 6, 2023 Broadcast of TCT.

It is impossible to tell what Plaintiff intends to claim was a defamatory statement about

him in the show of March 6, 2023.  The only mention of Plaintiff in the excerpts quoted in the

Amended Complaint is an aside by Congressman Massie, who notes that he showed the Attorney

General "the tape of Ray Epps."  Am. Compl.  ¶ 60.  But that occurs in a discussion about *other*

Capitol security footage showing "strange behavior" of *other* people and raising the suggestion

that the actions of *those* people (not Epps) suggest that there were law enforcement agents in the

crowd.  *Id.*  Contrary to Plaintiff's allegation, moreover, Carlson does not say anywhere that he

"knew 'for sure' that Epps was a federal agent."  Am. Compl. ¶ 82.  Carlson does not even mention

Epps.  *See id.* ¶¶ 60, 61.  Plaintiff points to Carlson's statement about *others* that he was not going

to "suggest they were Federal agents" because "we don't know" "who these people were."  *Id.*

¶ 61; *see also id.* ¶ 82.  Plaintiff apparently intends to claim, by negative implication, that when

Carlson named Epps in other (unspecified) shows, he was indicating certainty in suggesting that

Epps was working for the government.  Even if that strained implication could be credited, it does

not make anything in the March 6 show a statement about Epps.  And to present a claim about any

---

[15] In total, Plaintiff was asked *ten* times whether he was working on behalf of or had communicated with "law enforcement."  *See* Epps Tr. 5:18-19, 13:2-5, 17:20-22, 17:24-25, 18:4-5, 36:4-6, 36:12-13, 44:5-6, 72:3-4, 72:17-20.

other instances in which Carlson did name Plaintiff, Plaintiff would have to individually allege those statements in the complaint.

In any event, even if the March 6 broadcast could be contorted to imply a conclusion about Plaintiff, it would still qualify as an opinion based on the disclosed facts that Carlson (and others) had repeatedly been discussing for more than a year.

Plaintiff is even further afield in suggesting that statements in the March 6 show cannot be protected opinions because Carlson failed to air *other* security footage that Plaintiff claims would show him trying to "deescalate" the crowd. Am. Compl. ¶¶ 78-79. The Third Circuit has squarely rejected such a theory, holding that statements are protected opinions on disclosed facts even where the speaker "could have, but chose not to, include information that was more favorable to the [subject]." *Redco*, 758 F.2d at 972. Simply put, "there is no . . . requirement in the law" that a speaker must present a "balanced two-sided story" for a statement to be protected as an opinion on disclosed facts. *Mckee*, 874 F.3d at 64. Requiring a "balanced" presentation would unconstitutionally prohibit a speaker from marshaling facts to support a viewpoint, compel speech, and put courts in the impossible role of deciding how much "balance" is needed to allow a commentator to express an opinion without risking defamation liability.[16]

### 3.    Broader Context Also Confirms The Challenged Statements Are Opinion.

Finally, the broader context confirms that the challenged statements are opinion, because they all appeared on TCT, a "commentary talk show[]" where audiences expect "pitched

---

[16] Even if the statements in the *Redacted* podcast could be attributed to Fox, *but see supra* Part I.B, they cannot support a claim for defamation because they are also protected opinions. Carlson's statements there about Plaintiff occurred in a context referring back to matters discussed on TCT. Indeed, to place his comments in context, Carlson said, "We've named him repeatedly, we've invited him on the show repeatedly." Redacted, *Carlson* at 34:31-34:35. He was clearly providing opinions based on facts that had previously been discussed.

commentary." *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 182-84 (S.D.N.Y. 2020); *see also West*, 872 P.2d at 1018, 1020 (setting such as editorial page "argue[s] strongly in favor of finding the statements to be protected opinion"). That context confirms that audiences would understand the statements as opinions of the speakers based on the known facts.

### D.    Claims Based On The July 13, 2022 Broadcast Of TCT Are Time Barred.

Any claims for statements in the July 13, 2022, broadcast of TCT—statements set out for the first time in the Amended Complaint—are also time-barred. A claim in an amended complaint "relates back" to the date of the original pleading for limitations purposes only if the claim arises from conduct "set out" in the original pleading. Fed. R. Civ. P. 15(c)(1). Because "every distinct publication of a . . . slanderous statement gives rise to a separate cause of action," statements not set out in an original complaint cannot benefit from the relation-back doctrine. *Jewell v. Cap. Cities/ABC, Inc.*, No. 97-cv-5617, 1998 WL 702286, at *1-3 (S.D.N.Y. Oct. 7, 1998) (quotation omitted) (no relation back for new allegations about distinct statements *in same broadcast*); *Reid v. McKelvey*, No. 22-cv-10708, 2024 WL 4345585, at *5 (S.D.N.Y. Sept. 30, 2024) (no relation back for "new alleged instances of defamation that were not included in the original complaint").

Here, there can be no relation back, because the first complaint provided only a vague description of the broadcast and failed to identify any particular statement or to quote the show at all. D.I. 1-1 ¶ 49. As this Court held, "paragraph 49 does not say what the exact statements were." Ruling Tr. 8:1-2. Having failed to set out even the facts describing statements in the July 13 show, Plaintiff cannot benefit now from relation back. The claim must be treated as first raised in the Amended Complaint and is barred under the applicable one-year statute of limitations.[17]

---

[17] *See* Ruling Tr. 4:18-5:4 (one-year limitations period applies); *see also* N.Y. C.P.L.R. § 215(3) (one year for defamation); UT Code § 78B-2-302(4) (one year for defamation); *Jensen v. Sawyers*, 130 P.3d 325, 333 (Utah 2005) (one year for false light claims arising out of defamation in Utah).

### E.    Plaintiff Fails To Allege Either Defamation Per Se Or Special Damages.

Plaintiff's defamation claim also fails because he fails to allege either (i) the challenged statements fall in a recognized category of defamation per se, or (ii) special damages.  *See, e.g.*, *Baum v. Gillman*, 667 P.2d 41, 42 (Utah 1983); *Westmont Residential LLC v. Buttars*, 340 P.3d 183, 188 (Utah Ct. App. 2014); *Geraci v. Probst*, 938 N.E.2d 917, 922 (N.Y. 2010).[18]  Plaintiff apparently intends to claim defamation per se on the theory that the statements charged "serious criminal . . . conduct."  Am. Compl. ¶ 160.  But even if the statements implied that Plaintiff was working for the government, that theory fails.  Asserting that someone acted as an informant or agent for the government is not defamatory as a matter of law, much less defamatory per se. *See, e.g.*, *Agnant v. Shakur*, 30 F. Supp. 2d 420, 424 (S.D.N.Y. 1998) (accusation of being a government informant is not defamatory as a matter of law; collecting cases).  And statements that Plaintiff encouraged the crowd are true.  He was caught on tape and pled guilty to engaging in "disruptive conduct"—and "conspir[ing] to do so"—where the conduct "did in fact impede and disrupt the orderly conduct of Government business."  Information, *United States v. Epps*, No. 23-cr-00321 (D.D.C. Sept. 18, 2023), D.I. 1 (attached as Ex. 3); *see also id.*, D.I. 5 (signed statement of offense) (attached as Ex. 4); *id.*, D.I. 7 at 5:11-18, 12:14-24 (plea hearing) (attached as Ex. 5); *cf.* Argument H'rg Tr. at 42:12-15 (Nov. 26, 2024).  Even if the challenged statements suggested that Plaintiff engaged in that conduct while working for the government, that would still not charge him with a crime.  Instead, Plaintiff alleges that the statements implied he was part of an *authorized* undercover operation.[19]

---

[18] To qualify as defamation *per se*, a statement must "impute criminal conduct, loathsome disease, conduct incompatible with the exercise of lawful business or unchastity."  *Baum*, 667 P.2d at 43; *see also Porter v. Staples the Office Superstore, LLC*, 521 F. Supp. 3d 1154, 1163 (D. Utah 2021); *accord Liberman v. Gelstein*, 605 N.E.2d 344, 348 (N.Y. 1992) (listing similar categories).

[19] The FBI can authorize "Otherwise Illegal Activity" in such operations.  *See* The Attorney General's Guidelines on FBI Undercover Operations, https://perma.cc/9R3A-52HK.

Plaintiff also fails to allege special damages, which requires "the loss of something having economic or pecuniary value." *Porter*, 521 F. Supp. at 1163; *Liberman*, 605 N.E.2d at 347. Expenses incurred from allegedly losing his business and home in Arizona do not count, *see, e.g.*, Am. Compl. ¶¶ 139-40, because those damages occurred in May 2022, outside the limitations period, *see id.* ¶ 22.  The only damage alleged within the limitations period is the round figure of $25,000, vaguely described as "associated with living in hiding," including "security measures, storage costs, and maintenance associated with living in a trailer." *Id.* ¶ 141.  That does not suffice. "To satisfy the special damages requirement, a plaintiff must set forth an itemized account of his losses; round figures, general allegations of a dollar amount or boilerplate allegations . . . are insufficient." *Agnant*, 30 F. Supp. 2d at 426; *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 330 (S.D.N.Y. 2010).  In other words, the pleadings must "apprise the defendant of such damages as must of necessity flow from that which is alleged." *Cohn v. J. C. Penney Co., Inc.*, 537 P.2d 306, 311 (Utah 1975).  Here, no facts are alleged to show a basis for the claimed damages or to show a causal connection to the challenged statements.

In addition, special damages "are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(g)." *Passantino v. Weissmann*, 23-cv-2780, 2024 WL 4346061, at *10 (D.D.C. Sept. 30, 2024).  Federal law independently requires a plaintiff to "specifically state the amount of damages with particularity and specify facts showing that such special damages were the natural and direct result of the defendant's conduct." *Id.* (quotation marks omitted).  Plaintiff fails that standard.  *See id.* (round allegation of $75,000 in special damages "associated with lost business opportunities" and protecting reputation insufficient under Rule 9(g)).

## II.    The False Light Claim Fails For The Same Reasons.

Plaintiff's false light claim fails for similar reasons.[20]

*First*, the same First Amendment restrictions apply to false light.  The claim fails because Plaintiff fails to allege actual malice, *see* Ruling Tr. at 9:18-21 (Plaintiff has conceded that actual malice applies to false light claim), and the challenged statements are all protected opinions.[21]

*Second*, any claim based on the July 13, 2022, show is time-barred.  *See Jensen*, 130 P.3d at 332-37; *Bates v. Utah Ass'n of Realtors*, 297 P.3d 49, 50 (Utah Ct. App. 2013); *supra* Part I.D.

*Third*, Plaintiff's false light claim fails because he has not pled special damages.  *See Jacob v. Bezzant*, 212 P.3d 535, 543 (Utah 2009) (special damages required for false light); *see also* Restatement (Second) of Torts § 652E cmt. e; *see generally supra* p. 24.

## <u>CONCLUSION</u>

The amended complaint should be dismissed for failure to state a claim.

---

[20] New York does not recognize a tort of false light invasion of privacy, so the claim fails under New York law.  *See, e.g.*, *Costanza v. Seinfeld*, 181 Misc.2d 562, 564 (N.Y. Sup. Ct. 1999).

[21] *See Time, Inc. v. Hill*, 385 U.S. 374, 390-91 (1967) (actual malice standard applies to false light); *McCafferty*, 955 F.3d at 360 ("failure to plead actual malice dooms" false light claim); *Nunes v. Rushton*, 299 F. Supp. 3d 1216, 1235 (D. Utah 2018) (false light, like defamation, fails because the "comments were all protected opinion"); *accord SIRQ, Inc. v. The Layton Companies, Inc.*, 379 P.3d 1237, 1246 (Utah 2016).

DATED:  January 10, 2025

**OF COUNSEL:**

Patrick F. Philbin (*pro hac vice*)
Kyle T. West (*pro hac vice forthcoming*)
**TORRIDON LAW PLLC**

801 Seventeenth Street N.W.
Suite 1100
Washington, DC 20006
Tel: (202) 249-6900
pphilbin@torridonlaw.com
kwest@torridonlaw.com

**DLA PIPER LLP (US)**

  /s/ John L. Reed
John L. Reed (I.D. No. 3023)
Peter H. Kyle (I.D. No. 5918)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Tel. (302) 468-5700
Fax: (302) 394-2341
john.reed@us.dlapiper.com
peter.kyle@us.dlapiper.com

*Attorneys for Defendant*
*Fox News Network, LLC*

26