IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAMES RAY EPPS, SR.,

     Plaintiff,

v.

                        C.A. No. 23-cv-761-JLH

FOX NEWS NETWORK, LLC,

     Defendant.

## ANSWERING BRIEF OF PLAINTIFF JAMES RAY EPPS, SR. TO DEFENDANT FOX NEWS NETWORK, LLC'S MOTION TO DISMISS AMENDED COMPLAINT

Dated: January 23, 2025

Of Counsel:

Michael J. Teter
TETER LEGAL
P.O. Box 522365
Salt Lake City, UT 84152
(202) 796-6619
michael@teterlegal.com

Dick J. Baldwin
PARR BROWN
101 South 200 East, Suite 700
Salt Lake City, UT 84111
(801) 532-7840
dbaldwin@parrbrown.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff James Ray Epps, Sr.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ................................................. 1

SUMMARY OF THE ARGUMENT ......................................................................... 1

STATEMENT OF FACTS ......................................................................................... 2

CHOICE OF LAW .................................................................................................... 2

ARGUMENT ............................................................................................................. 2

1.     FOX FAILS TO MEET ITS BURDEN UNDER RULE 12(b)(6) ........................ 2

2.     RAY HAS ALLEGED FACTS FROM WHICH ACTUAL MALICE
       CAN BE REASONABLY INFERRED .................................................................. 4

       2.1     Ray Has Pleaded Facts That Raise a Reasonable Inference of Direct
               Evidence of Actual Malice .......................................................................... 6

       2.2     Ray Pleaded Facts Providing Circumstantial Evidence Supporting a
               Reasonable Inference of Actual Malice ...................................................... 9

3.     THE COMPLAINED-OF STATEMENTS ARE CAPABLE OF
       DEFAMATORY MEANING ................................................................................ 14

       3.1     Ray Has Pleaded Facts Sufficient to State a Plausible Claim Against
               Fox for Carlson's Statements on the *Redacted* Podcast ............................ 15

       3.2     The Statements' Common Meaning Conveyed Objectively Verifiable
               Facts .......................................................................................................... 16

       3.3     Context Shows the Statements Were Intended to Convey Facts Not
               Opinions .................................................................................................... 18

       3.4     The Statements' Broader Setting Shows They Were Factual
               Assertions .................................................................................................. 19

       3.5     Ray Has Pleaded Facts Sufficient to Plausibly Demonstrate that the
               Statements Relied on Undisclosed and/or Untruthful Facts ...................... 20

4.     RAY HAS PLEADED FACTS SUFFICIENT TO PLAUSIBLY STATE
       A CLAIM FOR DEFAMATION PER SE AND FOR SPECIAL
       DAMAGES ........................................................................................................... 23

5.     RAY PLEADED FACTS STATING A PLAUSIBLE CLAIM FOR
       FALSE LIGHT ..................................................................................................... 25

CONCLUSION ......................................................................................................... 25

## TABLE OF AUTHORITIES

<u>CASES</u>

*Abbas v. Foreign Policy Grp., LLC*,
    783 F.3d 1328 (D.C. Cir. 2015) ................................................................................ 18

*Aguila v. Planned Parenthood of Utah*,
    530 P.3d 959 (Utah App. 2023) ................................................................................ 16

*Aoki v. Benihana Inc.*,
    839 F. Supp. 2d 759 (D. Del. 2012) ........................................................................... 2

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................. 2, 3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................. 9

*Biro v. Conde Nast*,
    807 F.3d 541 (2d Cir. 2015) ..................................................................................... 9

*Boone v. Newsweek LLC*,
    2023 WL 2245104 (E.D. Pa. Feb. 27, 2023) ................................................... Passim

*Boulger v. Woods*,
    917 F.3d 471 (6th Cir. 2019) .................................................................................. 18

*Celle v. Filipino Rep. Enters. Inc.*,
    209 F.3d 163 (2d Cir. 2000) ................................................................... 4, 5, 11, 14

*Condit v. Dunne*,
    317 F. Supp. 2d 344 (S.D.N.Y. 2004) ........................................................ 19, 20, 21

*Curtis Publ'g Co. v. Butts*,
    388 U.S. 130 (1967) ................................................................................................ 5

*Dalbec v. Gentleman's Companion, Inc.*,
    828 F.2d 921 (2d Cir. 1987) ..................................................................................... 4

*Dunn v. Gannett N.Y. Newspapers, Inc.*,
    833 F.2d 446 (3d Cir. 1987) ................................................................................... 23

*Eastwood v. Nat'l Enquirer, Inc.*,
    123 F.3d 1249 (9th Cir. 1997) .................................................................................. 4

*Goldwater v. Ginzburg*,
 414 F.2d 324 (2d Cir. 1969) ............................................................... 5

*Harris v. City of Seattle*,
 152 F. App'x 565 (9th Cir. 2005) ....................................................... 4

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
 491 U.S. 657 (1989) ..................................................................... 5, 13

*Helios Streaming, LLC v. Vudu, Inc.*,
 2021 WL 254069 (D. Del. Jan. 26, 2021) ........................................ 23

*Herbert v. Lando*,
 441 U.S. 153 (1979) ........................................................................... 4

*Herring Networks, Inc. v. Maddow*,
 8 F. 4th 1148 (9th Cir 2021) ............................................................ 21

*Hill v. Cosby*,
 665 F. App'x 169 (3d Cir. 2016) .................................................. 3, 14

*Jensen v. Sawyers*,
 130 P.3d 325 (Utah 2005) ................................................................ 25

*Johnson v. Warner Bros. Entmt., Inc.*,
 2017 WL 588714 (D. Del. 2017) ........................................................ 2

*Keisel v. Westbrook*,
 542 P.3d 536 (Utah 2023) ................................................................ 22

*Lemelson v. Bloomberg*,
 903 F. 3d 19 (1st Cir. 2018) .................................................. 3, 4, 6, 8

*MCCAFFERTY V. NEWSWEEK*,
 955 F.3d 352 (3d Cir. 2020) ............................................................ 22

*Milkovich v. Lorain Journal Co.*,
 497 U.S. 1 (1990) ....................................................................... 19, 21

*Mzamam v. Winfrey*,
 693 F. Supp. 2d 442 (E.D. Pa. 2010) ............................................... 13

*New York Times Co. v. Sullivan*,
 376 U.S. 254 (1964) ....................................................................... 4, 5

*Nunes v. Lizza*,
   12 F. 4th 890 (8th Cir. 2021) ............................................................................. 5, 13

*Page v. Oath Inc.*,
   270 A.3d 833, 850 (Del. 2022) ............................................................................... 6

*Palin v. New York Times Co.*,
   113 F.4th 245 (2d Cir. 2024) ....................................................................... Passim

*Palin v. New York Times Co.*,
   940 F.3d 804 (2d Cir. 2019) .................................................................................. 4

*RainFocus Inc. v. Cvent Inc.*,
   528 P.3d 1221 (Utah Ct. App. 2023) ......................................................... 3, 14, 15

*Russell v. Thomson Newspapers*,
   842 P.2d 896 (Utah 1992) ..................................................................................... 25

*Schiavone Constr. Co. v. Time, Inc.*,
   847 F.2d 1069 (3d Cir. 1988) ................................................................... 3, 4, 13, 15

*SIRQ, Inc. v. Layton Cos., Inc.*,
   379 P.3d 1237 (Utah 2016) .................................................................................... 25

*Solano v. Playgirl, Inc.*,
   292 F.3d 1078 (9th Cir. 2002) ................................................................................. 6

*Spencer v. Glover*,
   397 P.3d 780 (Utah Ct. App. 2017) ....................................................................... 16

*St. Amant v. Thompson*,
   390 U.S. 727 (1968) ............................................................................................... 5

*State Farm Mut. Auto. Ins. Co. v. Del. Diagnostic & Rehab. Ctr., P.A.*,
   2021 WL 1929365 (D. Del. May 13, 2021) ........................................................... 23

*Stern v. Cosby*,
   645 F. Supp. 2d 258 (S.D.N.Y. 2009) ............................................................. 5, 11

*Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*,
   2019 WL 8641303 (D. Del. Aug. 7, 2019) ........................................................... 23

*Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*,
   330 F.3d 1110 (9th Cir. 2003) ................................................................................. 5

*Talley v. Time, Inc.*,
  923 F.3d 878 (10th Cir. 2019) ................................................................................................. 13

*US Dominion, Inc. v. Fox News Network, LLC*,
  293 A.3d 1002 (Del. Super. Ct. 2023) ............................................................................... Passim

*US Dominion, Inc. v. Fox News Network, LLC*,
  2021 WL 5984265 (Del. Super. Ct. Dec. 16, 2021) ......................................................... 9, 13

*Veritas v. Cable News Network, Inc.*,
  121 F.4th 1267 (11th Cir. 2024) ...................................................................................... 3, 4, 6

*West v. Thomson Newspapers*,
  872 P.2d 999 (Utah 1994) .......................................................................................... 14, 15, 16

*Zerangue v. TSP Newspapers, Inc.*,
  814 F.2d 1066 (5th Cir. 1987) .................................................................................................. 5

*Zuckerbrot v. Lande*
  167 N.Y.S.3d 313 (N.Y. Cup. Ct. 2022) .................................................................................. 5

## RULES

FED. R. CIV. P. 12 ................................................................................................... 1, 2, 3, 23

## OTHER AUTHORITIES

RESTATEMENT (SECOND) OF TORTS § 566 ...................................................................... 23

RESTATEMENT (SECOND) OF TORTS § 580A .................................................................... 5

RESTATEMENT (SECOND) OF TORTS § 614 ...................................................................... 15

RESTATEMENT (SECOND) OF TORTS § 652E .................................................................... 25

## NATURE AND STAGE OF THE PROCEEDINGS

Fox removed this action from Delaware state court on July 12, 2023. (D.I. 1.) The court granted Fox's motion to dismiss on November 27, 2024 (D.I. 28.) The court granted Ray Epps leave to file the Amended Complaint on December 27, 2024. Fox now seeks dismissal under Federal Rule of Civil Procedure 12(b)(6). (D.I. 36.)

## SUMMARY OF THE ARGUMENT

A defendant seeking dismissal at the pleading stage bears the burden of demonstrating that even accepting the factual allegations as true, the plaintiff has failed to state a claim for relief. This is true in the defamation context as well. Here, Ray pleaded facts satisfying each element of his defamation and false light claims. He pleaded facts sufficient to reasonably infer that Fox acted with actual malice and its statements were capable of defamatory meaning.

Fox fails to advance its arguments through this proper lens and instead encourages this Court to overstep its role. Fox asks this Court to conclude, contrary to Ray's well-pleaded allegations, that Mr. Carlson's senior producer and head of booking was not that central to Mr. Carlson's show. Fox asks this Court to disregard allegations involving others within Fox, including those in the highest echelons of the organization, which are more than adequate to nudge Ray's claims across the line from conceivable to plausible. Ray has alleged well-pleaded facts that the Court must accept as true and which give rise to a reasonable inference that Fox acted with actual malice.

Similarly, Fox has failed to meet its burden to demonstrate that the complained-of statements are not capable of sustaining a defamatory meaning. Fox told its viewers that Ray was a federal agent who incited the January 6 insurrection, and it did so intentionally, telling them that it was a fact. Fox said it was "reporting" "emerging news." Fox said that the January 6 Committee and others were *lying* about Ray—proving the point that it was a verifiable assertion

1

of fact. Now, to avoid accountability for broadcasting false facts, Fox says it was only expressing

an opinion. But that's not what it told its audience and the effect on Ray of Fox's lies

demonstrate that Fox's viewers took from the broadcasts exactly what Fox intended.

Even if the Court construed the statements as opinion, the Amended Complaint also

alleges undisclosed and misrepresented facts that preclude Fox's opinion defense.

## STATEMENT OF FACTS

When evaluating Fox's motion to dismiss, all of Ray's factual allegations are accepted as

true, and all reasonable inferences are drawn in his favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). Rather than restate each of those allegations here, Ray will reference them (with citations

to his Complaint) as needed when responding to Fox's arguments.

## CHOICE OF LAW

Utah law governs this dispute. Delaware applies the most-significant-relationship test to

determine choice of law issues in multi-state tort actions, such as defamation and false light. *See*

*Aoki v. Benihana Inc.*, 839 F. Supp. 2d 759, 764-65 (D. Del. 2012). In that analysis, Fox must

overcome the presumption that the law of Ray's domicile applies. *Johnson v. Warner Bros.*

*Entmt., Inc.*, C.A. No. 16-185-LPS, 2017 WL 588714, at *3 (D. Del. 2017). It has not raised any

arguments attempting to rebut the presumption that Utah law applies.

## ARGUMENT

## 1.    FOX FAILS TO MEET ITS BURDEN UNDER RULE 12(B)(6)

Fox presents two primary bases for dismissal: that Ray fails to allege facts demonstrating

actual malice and that the complained-of statements constitute protected opinion. Under the

motion to dismiss standard, Fox fails to carry its burden.

A party seeking dismissal under Rule 12(b)(6) bears the burden of demonstrating that,

even accepting the well-pleaded factual allegations as true and drawing all reasonable inferences

in the plaintiff's favor, the plaintiff has failed to state a claim. Fed. R. Civ. P. 12(b)(6). In the context of defamation and false light, the burden still remains on the defendant.

With regards to actual malice, courts make clear that, "[t]o survive a motion to dismiss, [a complaint] must only plead facts that, taken as true, raise a 'reasonable inference' that [the defendant] acted with actual malice." *Boone v. Newsweek LLC*, No. CV 22-1601, 2023 WL 2245104, at *4 (E.D. Pa. Feb. 27, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *accord Veritas v. Cable News Network, Inc.*, 121 F.4th 1267, 1283 (11th Cir. 2024) (same); *Lemelson v. Bloomberg*, 903 F. 3d 19, 24 (1st Cir. 2018) (same). Similarly, in analyzing whether a statement gives rise to potential liability, the allegations only need to show that the complained-of words are *capable* of a defamatory meaning. "Where the language can be interpreted in both a defamatory and nondefamatory manner, the question is one for the jury to decide." *Schiavone Constr. Co. v. Time, Inc.*, 847 F.2d 1069, 1083 (3d Cir. 1988). Indeed, to justify dismissal, a "non-defamatory reading must constitute the *only* reasonable interpretation." *Hill v. Cosby*, 665 F. App'x 169, 174 (3d Cir. 2016) (emphasis in original) (quotation omitted); *see also RainFocus Inc. v. Cvent Inc.*, 528 P.3d 1221, 1226 (Utah Ct. App. 2023) (reversing a 12(b)(6) dismissal and stating, "our question is whether the statements were capable of sustaining a defamatory meaning."). Indeed, even in the summary judgment context for defamation cases, inferences must be drawn in the non-movant's favor. *See Palin v. New York Times Co.*, 113 F.4th 245, 266-67 (2d Cir. 2024).

Accordingly, the question for the Court is whether Ray has "laid out enough facts from which malice might reasonably be inferred," *Lemelson*, 903 F.3d at 24, and whether the statements Fox made about Ray are capable of being interpreted in a defamatory manner.

*Schiavone*, 847 F.2d at 1083. For the reasons discussed below, the answer to both questions is yes, and the Court should deny Fox's motion.

## 2.    RAY HAS ALLEGED FACTS FROM WHICH ACTUAL MALICE CAN BE REASONABLY INFERRED

Actual malice exists when a statement is made with "knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). A plaintiff alleging actual malice typically must do so through circumstantial evidence. That is because, as many courts have observed, "[W]e have yet to see a defendant who admits to entertaining serious subjective doubt about the authenticity of an article it published." *Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249, 1253 (9th Cir. 1997); *see also Herbert v. Lando*, 441 U.S. 153, 170 (1979) ("plaintiffs will rarely be successful in proving awareness of falsehood from the mouth of the defendant himself").

A plaintiff can, of course, prove actual malice "through the defendant's own actions or statements." *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 183 (2d Cir. 2000). But that is not required. Instead, "[m]alice may be proved inferentially because it is a matter of the defendant's subjective mental state, revolves around facts usually within the defendant's knowledge and control, and rarely is admitted." *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 927 (2d Cir. 1987); *see also Palin*, 113 F.4th at 263 (same).

Courts have identified categories of circumstantial evidence capable of showing actual malice, including that the defendant: (1) possessed information that seriously calls into question the truth of its story, *see Veritas*, 121 F.4th at 1284; *Lemelson*, 903 F.3d at 25; (2) made the statements despite internal inconsistencies or reliable contradictory information, *see Schiavone*, 847 F.2d at 1090; (3) conceived of the false narrative before publication and purposefully avoided the truth, *see Schiavone*, 847 F.2d at 1092; *Palin*, 940 F.3d at 813; *Harris v. City of*

4

*Seattle*, 152 F. App'x 565, 568 (9th Cir. 2005) (unpublished); (4) relied on an obviously unreliable sources, *see St. Amant v. Thompson*, 390 U.S. 727, 732 (1968); *Zuckerbrot v. Lande*, 167 N.Y.S.3d 313, 335-36 (N.Y. Cup. Ct. 2022); (5) possessed a financial motive to lie about the plaintiff, *see Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989); *Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*, 330 F.3d 1110, 1135-36 (9th Cir. 2003) (explaining that evidence publisher "was financially overextended" before releasing allegedly defamatory report and "needed a blockbuster story to raise [its] profile and increase funding revenues," was relevant to the actual malice inquiry on summary judgment); (6) advanced an inherently improbable story, *see Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 158-59 (1967); *Goldwater v. Ginzburg*, 414 F.2d 324, 337 (2d Cir. 1969); (7) disregarded the plaintiff's denials, *see Nunes v. Lizza*, 12 F. 4th 890 (8th Cir. 2021); and (8) refused to retract while continuing to repeat statements that had been proven false, *see Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071-72 (5th Cir. 1987). *See generally* Restatement (Second) of Torts § 580A cmt. (d). No one factor need be conclusive, and actual malice can be demonstrated by the "accumulation" of circumstantial evidence. *Celle*, 209 F.3d at 183; *see Stern v. Cosby*, 645 F. Supp. 2d 258, 278 (S.D.N.Y. 2009). The corollary to that principle, then, is that where a plaintiff alleges multiple factors, the court should not evaluate each factor in isolation.

Organizations like Fox are capable of acting with actual malice. *US Dominion, Inc. v. Fox News Network, LLC*, 293 A.3d 1002 (Del. Super. Ct. 2023). Because an organization necessarily acts through individuals, "the state of mind required for actual malice" must "be brought home to the persons in the [defendant's] organization having responsibility for the publication." *Sullivan*, 376 U.S. at 287. So long as the actual malice is brought home to "at least" one individual with responsibility for publishing the defamatory statement, the actual malice

requirement is satisfied. *Page v. Oath Inc.*, 270 A.3d 833, 850 (Del. 2022). Further, the requirement can be met even where the actual malice is "brought home" to those who were not "the final decisionmakers as to the content." *See Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1086 (9th Cir. 2002) (editorial staff members' concerns about defamatory statements satisfied actual malice even if staffers were not "the final decisionmakers" as to what was published).

### 2.1    Ray Has Pleaded Facts That Raise a Reasonable Inference of Direct Evidence of Actual Malice

As noted above, at the motion to dismiss stage, the only question for the Court is whether a plaintiff has pleaded facts that, "taken as true, raise a reasonable inference" that the defendant acted with actual malice. *Boone*, 2023 WL 2245104, *4; *see also Veritas*, 121 F.4th at 1283; *Lemelson*, 903 F.3d at 24. Ray has. Ray is an outlier among defamation plaintiffs, because he alleges direct evidence of actual malice.

Abby Grossberg worked as a Senior Producer/Head of Booking where she played a significant role in the content published on *Tucker Carlson Tonight*, the very program giving rise to Ray's claims. (D.I. 33, ¶¶ 86-87.) Grossberg has since spoken publicly about the fact that she, while serving as Senior Producer/Head of Booking for Carlson's show, did not believe the story that Fox was telling about Ray. (D.I. 33, ¶ 88.) Further, the job listing for Grossberg's position identified her as playing a "prominent role" in shaping Carlson's programming. (D.I. 33, ¶ 89.) She participated in meetings with those responsible for the content of Carlson's broadcasts. (D.I. 33, ¶ 90.) Given her role, it is reasonable to infer that she was responsible for Rep. Massie's appearance on March 6, 2023—during which Rep. Massie participated in making statements alleging Ray was a federal agent who incited the January 6 insurrection. (D.I. 33, ¶ 60.)

Grossberg also described meetings in which Carlson, Justin Wells, *Tucker Carlson Tonight*'s Senior Executive Producer and Vice President of Tucker Carlson Digital Products, and

high-ranking executives at Fox, including CEO Suzanne Scott and Executive Vice President of Primetime Programming Meade Cooper, coordinated to create false stories about January 6— including March 6, 2023's broadcast that discusses Ray. (D.I. 33, ¶¶ 60-61, 94-96.)[1]

Other former Fox employees have spoken about the falsity of Fox's statements about Ray. Jason Donner, another former producer at Fox, has confirmed that he and many others at Fox spoke out about the false reporting occurring on Carlson's show about January 6. (D.I. 33, ¶¶ 98-100.) Fox's D.C. Bureau Chief, Bryan Boughton, said that Carlson was "out of control." (D.I. 33, ¶ 101.) And Geraldo Rivera has stated that when he spoke out against Carlson's "preposterous" and "ridiculous" claims about January 6, he received calls from people *within Fox* expressing shock and outrage at Carlson's statements. (D.I. 33, ¶ 102.)

Fox contends that these allegations do not demonstrate actual malice. But to do so, Fox violates Rule 12(b)(6)'s command that it must accept the alleged facts as true and draw all reasonable inferences in Ray's favor. For example, Fox minimizes Grossberg's role at Fox, ignoring the allegation that her job description said she played a "prominent role" in *Tucker Carlson Tonight*'s content. (D.I. 33, ¶ 89.) Fox disregards the allegation that Grossberg was responsible for booking guests and was still employed at Fox on March 6, 2023, when a guest participated in making defamatory statements about Ray. (D.I. 33, ¶¶ 60-61, 87-89, 96.) Indeed, Fox's refusal to accept the pleaded facts as true extends so far as to Fox taking issue with the allegation that Grossberg participated in "meetings," when, according to Fox, Grossberg's complaint "actually alleges only a single meeting." (D.I. 36, at 6 n.3.) But the very paragraph

---

[1] In other proceedings, Fox has admitted under oath that executives such as Scott and Cooper "participated in the editorial process and/or attended editorial meetings." *US Dominion, Inc. v. Fox News Network, LLC*, 293 A.3d 1002, 1045 (Del. Super. Ct. 2023).

Fox cites from Grossberg's complaint states, "On or about January 9, 2023, during *another* editorial meeting with the TCT team…" (D.I. 33, Ex. F, ¶ 133 (emphasis added)). "Another editorial meeting" naturally indicates that more than one meeting occurred.

Fox's unwillingness to accept the most direct and justifiable inferences represents an even more critical assault on the actual malice caselaw, which directs that "[o]n a Rule 12(b)(6) motion to dismiss, we do not concern ourselves with questions of evidentiary sufficiency, but ask only whether [the plaintiff] laid out enough facts from which malice might reasonably be inferred." *Lemelson*, 903 F.3d at 24 (internal citation omitted). Grossberg's lawsuits were centered on her allegations of sexual harassment and a hostile work environment. (D.I. 33, Exs. E & F.) Thus, her pleadings were not attempting to provide a full account of the internal discussions regarding Carlson's broadcasts. Instead, her references to Carlson's coverage of Ray are incidental to her claims against Fox. But her pleadings provide enough information to satisfy Rule 12(b)(6) as to Fox's actual malice regarding its statements about Ray and further allows the reasonable inference that discovery will reveal more information from Fox's internal communications regarding Carlson's on-air statements about Ray.

Similarly, when Fox's D.C. Bureau Chief acknowledges that Carlson is "out of control" with his January 6 coverage, it is reasonable to infer that others within Fox who are responsible for the show's content hold that view.

And Fox attempts a sleight of hand by focusing on the fact that Rivera "never had any role on TCT," (D.I. 36, 8), instead of grappling with the actual importance of Rivera's comment as noted in the Amended Complaint: "Mr. Rivera began receiving calls from people within Fox expressing their shock and outrage about Mr. Carlson's statements and thanking Mr. Rivera for speaking out because they felt they were unable to, *suggesting that other employees could be*

*found through discovery who could further corroborate the already unusually strong evidence of actual malice provided by Ms. Grossberg, Mr. Donner, and Mr. Rivera's accounts.*" (D.I. 33, ¶ 102 (emphasis added).) To be clear, Ray does not, at this stage, have to possess evidence demonstrating that people responsible for Carlson's show knew their claims about Ray were false. Instead, a "public-figure plaintiff must plead 'plausible grounds' to infer actual malice by alleging 'enough fact[s] to raise a *reasonable expectation that discovery will reveal evidence of* actual malice.*" *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (emphasis added)).

Ray has met this standard. Indeed, Fox's own history strongly suggests that significant internal communications will ultimately prove this last point true.[2]

## 2.2 Ray Pleaded Facts Providing Circumstantial Evidence Supporting a Reasonable Inference of Actual Malice

The allegations discussed above relate to direct evidence of actual malice, but courts do not expect, nor require, direct evidence. Instead, because defendants do not typically admit they held doubts about the truth of their broadcasts, plaintiffs are allowed to rely on circumstantial evidence in the actual malice inquiry. *Palin*, 113 F.4th at 263. Moreover, here again, "[a]t this early stage, however, [a plaintiff] need not show actual malice through the 'clear and convincing' evidence required to prevail at trial." *Boone*, 2023 WL 2245104, at *4.

---

[2] *Compare US Dominion, Inc. v. Fox News Network, LLC*, No. CV N21C-03-257 EMD, 2021 WL 5984265, at *28 (Del. Super. Ct. Dec. 16, 2021) (order denying Fox's motion to dismiss) *with US Dominion, Inc.*, 293 A.3d at 1043-55 (Del. Super. Ct. 2023) (order denying Fox's motion for summary judgment and partially granting US Dominion's motion for summary judgment).

Ray pleads additional circumstantial facts from which actual malice can be inferred, especially when evaluated alongside the allegations of direct evidence discussed above. Specifically:

- Statements by Grossberg, Donner, and Rivera provide circumstantial evidence that others within the organization who were responsible for publishing the false statements knew they were false or recklessly disregarded the falsity of the statements. (D.I. 33, ¶ 104.)

- Fox possessed tens of thousands of hours of surveillance video that demonstrated that Ray had worked to deescalate the crowd—a fact that undermines the essential aspect of Fox's narrative that the only reason Ray was not arrested or charged was because he was working for the government. (D.I. 33, ¶ 109.)

- Fox's statements about Ray contained internal inconsistencies (D.I. 33, ¶ 109) and were made despite reliable information that contradicted them (D.I. 33, ¶¶ 114-16).

- Fox conceived of the false narrative before publication and purposefully avoided the truth (D.I. 33, ¶¶ 87-88, 94-96, 109-110, 117-18).

- Fox relied on obviously unreliable sources, including Darren Beattie who had been discredited after being fired by the Trump Administration due to his ties to a white supremacist organization and whose news site lacked any employees or investigators. (D.I. 33, ¶ 106.)

- Fox possessed a financial motive to lie about Ray, reflected by its shifting explanation for January 6 (that it was Antifa, a "fedsurrection," and it was a peaceful gathering of tourists) and its story about Ray (he worked for the FBI, then law enforcement, then some other undefined governmental agency). (D.I. 33, ¶¶ 17, 20, 87-88, 107.)

- Fox advanced an inherently improbable story that the FBI or other governmental agency would rely on Epps, a 60-year-old wedding venue owner in Arizona, to initiate an insurrection against the peaceful transfer of power, and would then include that agent in its wanted posters. (D.I. 33, ¶¶ 27-28, 108.)

- Fox refused to investigate or air guests or videos that discredited the false statements it was making about Ray, despite that information having a strong doubt-inducing quality. (D.I. 33, ¶¶ 87-88, 117-18.)

- Fox disregarded Ray's under oath denials, as well as statements by the January 6th Committee, an attorney for January 6th defendants, and Ryan Samsel. (D.I. 33, ¶¶ 35, 114-16.)

- Finally, Fox refused to retract statements that had been proven false, even after reviewing over 40,000 hours of surveillance footage and seeing that Ray had worked to deescalate the crowd, directly undermining Fox's reporting about Ray. (D.I. 33, ¶ 113.)

When accumulated, these allegations present a plausible picture of actual malice: people within Fox, including those working on, and responsible for, Carlson's show did not believe that Ray was a federal agent responsible for inciting the January 6 insurrection.

Fox would like this Court to treat Ray's allegations individually and relies on cases in which a plaintiff raised one or two allegations. That misses the point: the very nature of circumstantial evidence is that its relevance and strength come when viewed collectively. *Celle*, 209 F.3d at 183; *see also Stern*, 645 F. Supp. 2d at 278. Fox cites no case in which a court rejected—especially at the motion to dismiss stage—a complaint that contained as many factual allegations as Ray's. And courts have found each of these types of allegations relevant in assessing actual malice. *See supra* Section 2.

Fox asks this Court to usurp the jury's role, arguing it was not inherently improbable for the FBI to have informants at the Capitol on January 6. (D.I. 36 at 10.) But that's not what Ray claims as inherently improbable, nor is it what Carlson and his guests said about Ray. (D.I. 33, ¶¶ 53-65, 108.) Instead, Fox stated that Ray—a 60-year-old wedding venue owner—was a federal agent who was the centerpiece of the insurrection on January 6 and that despite working for the government, the FBI listed him on their website. (D.I. 36, ¶¶ 53-65.) Whether Fox's assertion was inherently probable is a factual question that must be decided by a jury. *Palin*, 113 F.4th at 264-65. Fox seeks dismissal by disputing whether its assertion was inherently improbable, instead of accepting Ray's allegations as true as required by the Federal Rules of Civil Procedure. Fox's position tacitly concedes that dismissal is improper because the parties dispute a factual question that must be decided by a jury. In fact, even by seeking to transform the discussion to one centered on the FBI's use of informants, and refusing to engage with the improbability of what Carlson actually said about Ray, Fox implicitly acknowledges the inherent improbability of Carlson's claims about Ray.[3]

Additionally, Fox does not address the allegations about Grossberg, Donner, and Rivera as providing circumstantial evidence that others within Fox who were responsible for the content of Carlson's show knew of, or recklessly disregarded, the falsity of the statements about Ray.

In fact, with the new allegations, Ray's Amended Complaint provides far more substance and details demonstrating actual malice than plaintiffs are typically capable of pleading at this stage. *Nunes*, 12 F.4th at 901 (reversing the grant of a motion to dismiss on actual malice

---

[3] Incidentally, while Fox cites to a report that "at least 17 DOJ confidential human sources" were on restricted areas of the Capitol grounds on January 6 (D.I. 36, at n. 5), it is noteworthy that Fox does not suggest that any of those confidential sources were placed on the FBI's website in the aftermath of the insurrection the way Ray was.

grounds based only on the defendant tweeting the story after plaintiff filed the lawsuit and alleged it was false); *Boone*, 2023 WL 2245104, at *6 (E.D. Pa. Feb. 27, 2023) (denying a motion to dismiss where the only allegation of actual malice rested on a badge number and nametag being visible in the picture included in a story so that defendants would have recklessly disregarded that fact and because it constituted evidence of internal inconsistences with the story); *US Dominion, Inc. v. Fox News Network, LLC*, No. CV N21C-03-257 EMD, 2021 WL 5984265, at *28 (Del. Super. Ct. Dec. 16, 2021) (denying Fox's motion to dismiss because the court could infer that Fox recklessly disregarded the truthfulness of its assertions based on Dominion's allegations that Fox possessed information undermining the assertions but continued to publish them, various Fox personnel disclaimed the truthfulness of the assertions, and colleagues within Fox expressed dissent regarding the assertions). That is also true when compared to matters that have advanced beyond motions to dismiss. *See, e.g.*, *Harte-Hanks*, 491 U.S. at 685 (purposeful avoidance of truth satisfied the actual malice standard); *Schiavone*, 847 F.2d 1091-93 (reversing a grant of summary judgment and holding that a jury could find actual malice from the fact that independent sources contradicted the article's defamatory statements, that a jury might not credit the explanations offered by the defendant for not disclosing certain facts, and that the decision itself to omit the facts is evidence of actual malice); *Mzamam v. Winfrey*, 693 F. Supp. 2d 442, 509-10 (E.D. Pa. 2010) (denying defendant's motion for summary judgment because plaintiff provided evidence suggesting defendant purposefully avoided the truth).[4]

---

[4] Nor do Fox's arguments distinguish between cases decided at summary judgment versus those at the motion to dismiss stage. For example, Fox cites *Talley v. Time, Inc.*, 923 F.3d 878 (10th Cir. 2019), but fails to address the fact that the district court granted summary judgment to defendants, relying on a full record that included evidence that the defendants in that case

In short, Ray alleged facts sufficient to render a claim of actual malice plausible. As the court in *Boone* recently stated, "if *Sullivan* and its progeny truly reflect an 'accommodation between [the] competing concerns' of open debate and reputational protection, some plaintiffs must clear the high bar those cases set." *Boone*, 2023 WL 2245104, at *7. If Ray's allegations accumulating ample direct and circumstantial evidence do not allow for a reasonable inference of actual malice, no plaintiff (including US Dominion against Fox) could satisfy the standard.

### 3.    THE COMPLAINED-OF STATEMENTS ARE CAPABLE OF DEFAMATORY MEANING

At this stage, Fox bears the burden of demonstrating that the statements at issue are not capable of defamatory meaning. *Hill*, 665 F. App'x at 174; *RainFocus*, 528 P.3d at 1226. And "[c]ourts are not to strain to interpret such writings in their mildest and most inoffensive sense to hold them nonlibelous." *Celle*, 209 F.3d at 177 (internal quotation omitted).

Fox argues that the complained-of statements cannot give rise to liability because they are statements of opinion based on disclosed facts. To be sure, courts recognize that full disclosure of *truthful* underlying facts supporting an opinion may insulate a publisher from liability. *RainFocus*, 528 P.3d at 1231. But speakers are not immunized simply by sprinkling in some factual content in the midst of "opinions" that imply defamatory facts that may be objectively proven or disproven. *West v. Thomson Newspapers*, 872 P.2d 999, 1015 (Utah 1994). That is because those seeking to defame by implication almost always include some factual content to give the defamatory sting greater verisimilitude. *Id.* The principal touchstone is always objective verifiability. Thus, while the Constitution protects expressions of opinion, a speaker "abuse[s] this protection . . . when the opinion states or implies facts that are false and

---

interviewed 60-70 people, recorded their interviews, spent six months investigating before even beginning to write the story, and engaged in extensive editing and fact-checking. *Id.* at 898-904.

defamatory." *Id.* Indeed, the Utah Court of Appeals recently rejected an opinion defense, finding

that "the factors of common meaning and objective verifiability lean toward fact." *RainFocus*,

528 P.3d at 1221.

And quite recently, the Delaware Superior Court, applying New York law, rejected Fox's

attempt to rely on a similar opinion defense. *US Dominion*, 293 A.3d at 1061.  It correctly ruled,

"An 'opinion' is actionable if a 'reasonable listener' would find the speaker conveyed facts about

the plaintiff." *Id.* "[T]he key inquiry is whether the challenged expression, however labeled by

defendant, would reasonably appear to state or imply assertions of objective fact." *Id.* (citation

omitted). "In determining whether speech is actionable, courts must additionally consider the

impression created by the words used as well as the general tenor of the expression, from the

point of view of the reasonable person." *Id.* (citation omitted). Viewers would have understood

the broadcasts as communicating *as a fact* that Epps was a federal agent provocateur.

The Court must also respect the substantive Utah standard, which aligns with the national

consensus, that if in doubt, the Court must not dismiss. *RainFocus*, 528 P.3d at 1226. Fox is

entitled to dismissal only if its interpretation of the statements as non-defamatory is the *only*

permissible interpretation, as a matter of law. *Schiavone*, 847 F.2d at 1083. If the statements are

"capable of sustaining [a defamatory] meaning as a matter of law, the trier of fact must then

determine whether the statement was in fact so understood by its audience." *West*, 872 P.2d at

1008 (citing Restatement (Second) of Torts § 614).

### 3.1    Ray Has Pleaded Facts Sufficient to State a Plausible Claim Against Fox for Carlson's Statements on the *Redacted* Podcast

To successfully plead under Utah law that a defendant's acts occurred during the course

of employment, a plaintiff must plead facts that allow a "reasonable inference" that the

individual was "acting in the course and scope of [their] employment or contractual relationship

at times discussed herein" to create a factual question that must be decided by the jury. *Aguila v. Planned Parenthood of Utah*, 530 P.3d 959, 965-66 (Utah App. 2023).

Ray has pleaded facts that allow the reasonable inference that Carlson was operating within the scope of his employment with Fox when he appeared on the *Redacted* podcast of a former Fox personality. According to Fox's general counsel, Carlson's services were "completely exclusive to Fox" and Carlson was "prohibited from rendering services of *any type whatsoever*" to anyone else. (D.I. 33, ¶¶ 24, 65.) During the *Redacted* podcast, Carlson was identified to viewers and listeners as the host of Tucker Carlson Tonight and the podcast aired footage that Carlson had been provided exclusively—and that his Fox-employed producers had spent weeks "bravely slogg[ing]" through. (D.I. 33, ¶¶ 60, 63-65.)

If Fox's general counsel believed that Carlson's "services shall be completely exclusive to Fox," it is reasonable to infer that Carlson's appearance on the *Redacted* podcast was in furtherance of his contract with Fox, especially in light of the absence of any indication that Fox's general counsel sent Carlson a similar letter after the *Redacted* appearance.

### 3.2    The Statements' Common Meaning Conveyed Objectively Verifiable Facts

Utah courts "employ the 'common usage or meaning of the words' to determine 'whether the statement is capable of being objectively verified as true or false.'" *Spencer v. Glover*, 397 P.3d 780, 784-85 (Utah Ct. App. 2017) (quoting *West*, 872 P.2d at 1018). Fox broadly argues that the statements were not assertions of verifiable fact because they were all either questions or subjective opinions that the facts about Ray are strange. (D.I. 36 at 12-17.) That is incorrect. Fox directly told its viewers that Ray was a federal agent as part of its larger message that the January 6 attack was a false flag operation by the FBI. (D.I. 33, ¶¶ 55-65.)  It repeated and reinforced that message using rhetorical questions, onscreen graphics, distorted and selectively edited videos, and incomplete descriptions of the facts. (D.I. 33, ¶¶ 53-65.)

For example, after the January 6th Committee (the "Committee") refuted the conspiracy theory about Ray, Carlson told his viewers that the Committee was "lying" about Ray. (D.I. 33, ¶ 58.) By asserting that the Committee lied, Carlson was necessarily asserting two things: (1) Ray's status as a federal agent was not a matter of opinion, but was a factual matter about which one could lie; and (2) that it was *a fact* that Ray was involved with the FBI or law enforcement.

Carlson also prominently displayed an image of Ray with the phrase "Fed Epps" beneath it. (D.I. 33, ¶ 57.) There were no question marks or caveats to this on-screen graphic. It was naturally understood by viewers as a statement of fact: Ray Epps is a fed.

Fox also chose to air Darren Beattie's assertion that Ray was "the smoking gun of the entire fed-surrection." (D.I. 33, ¶ 55.) He did not say that was his opinion, simply point out strange facts, or leave the viewers to decide for themselves. Instead, he used the metaphor of the "smoking gun," which is unmistakable in common usage as an indication that there is conclusive evidence of a demonstrable fact. *E.g.*, *Smoking Gun*, Black's Law Dictionary (9th ed. 2009).

On March 6, 2023, Rep. Massie was a guest on Carlson's show and described showing Merrick Garland video of Ray during a hearing, to which Carlson responded:

> CARLSON: It's very clear from the footage that our producers bravely slogged through for three weeks and God bless them for doing it that that's exactly right. That Federal agents encouraged the violence that day. We are just a TV show and we can't show people without proof of who they really were, but I agree with your assessment completely.
> . . . .
> And in fact, there were many examples of behavior we saw in those tapes that didn't seem to make sense: Men in civilian clothes holding doors open for protesters, escorting others through the Capitol, et cetera. We would love to know who these people were, but as of tonight, we don't know and because we don't know, we're not going to put their faces on the screen and suggest they were Federal agents. That would be irresponsible.

(D.I. 33, ¶ 61.)  Carlson had repeatedly put Ray's face on the screen while asserting he was a federal agent. Carlson was telling his viewers that he had proof that Ray was a federal agent.

Finally, this Court does not need to speculate about what Carlson intended. He has admitted that he intended to convey objectively verifiable facts, not mere opinions, explaining, "I did not want to suggest someone was a federal agent or informant unless I knew *for a fact* because you could really get someone in trouble." (D.I. 33, ¶ 57 (emphasis added).)

### 3.3    Context Shows the Statements Were Intended to Convey Facts Not Opinions

The broader context shows that the challenged statements were not mere opinion. As demonstrated above, multiple statements were assertions of fact on their face—*e.g.*, that the Committee was lying about Ray, the "FedEpps" graphic, and that Ray was the smoking gun of the fed-surrection. Those comments, along with other references to the conspiracy on other Fox programs, helped lay groundwork for other statements to be understood as assertions of fact even when phrased as questions. They were rhetorical questions used to repeat the false assertion that Ray was a federal agent provocateur, and not as a genuine search for answers. Statements phrased as questions do not give the media immunity to "use questions 'as tools to raise doubts about a person's activities or character while simultaneously avoid liability.'" *Boulger v. Woods*, 917 F.3d 471, 479-80 (6th Cir. 2019) (quoting *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1338 (D.C. Cir. 2015)). Ray alleged that Fox's statements about him "were understood by people who saw, heard, and read them to be statements of fact about Epps." (D.I. 33, ¶ 154.) Specifically, "[t]he gist and sting of the statements made by Fox of and concerning Epps, considered individually and in their entirety, was that Epps was a federal agent planted to provoke the insurrection at the Capitol on January 6th." (D.I. 33, ¶ 154.)

As one example, Carlson said, "Ray Epps is still a free man. He's never been charged, much less imprisoned in solitary confinement like so many others. Why is that? Well, let's just

stop lying. At this point, it's pretty obvious why that is. But, of course, they're still lying about it." (D.I. 33, ¶ 58.) That passage illustrates a key feature of the context in which Fox repeatedly made its defamatory statements: Carlson's use of rhetorical questions. When Carlson asked, "Why is that?," it was not a question for which he was seeking an answer. He was making a point. And indeed, in this instance, he made that abundantly clear by supplying the answer to his question when asserting that the Committee was "still lying" about Ray.

The Supreme Court has held that "expressions of 'opinion' may often imply an assertion of objective fact." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990). The statements Fox labels as opinions demonstrate the Court's point. For example, in one broadcast Carlson claimed that if the Committee wanted answers about the attack on the Capitol it should speak to Ray Epps and "various FBI informants." (D.I. 33, ¶ 52.) Of course, Ray had already appeared before the Committee and Carlson had told his viewers that the Committee was lying about Ray. (D.I. 33, ¶ 58.) By continuing to connect Ray to the FBI while claiming that Ray could explain the attack, Carlson was reiterating his prior assertion that Ray was a federal agent provocateur.

Fox argues its broadcasts were replete with cautionary language, signaling that they were mere opinion. But that type of signaling does not insulate a defendant who "appeared to vouch for the statements at [other] times during the [broadcast]." *Condit v. Dunne*, 317 F. Supp. 2d 344, 366 (S.D.N.Y. 2004). Further, "[s]tatements that constitute false assertions of fact are no less defamatory simply because they are preceded by qualifying expressions." *Id.*

### 3.4    The Statements' Broader Setting Shows They Were Factual Assertions

Fox suggests that the broader setting demonstrates its statements were all opinion because they appeared on commentary talk shows. Of course, the network broadcasts under the name Fox News, suggesting to viewers that the network broadcasts news, not opinion. More directly, Carlson himself told viewers that he was "reporting news," not offering opinion or commentary.

On July 14, 2022, right before bringing on Beattie to talk about Ray, Carlson told his viewers:

"So for weeks, as you know that January 6 Committee has been holding hearings. They've been widely covered on the other channels. We haven't seen the news value in them. But there is a bit of news to emerge from that story, and we want to get to it now." (D.I. 33, ¶ 70.) In other words, Carlson was presenting "emerg[ing]" news. Similarly, on March 6, 2023, Carlson characterized a segment based on the Capitol surveillance footage as "reporting." (D.I. 33, ¶ 71.) If Carlson was presenting an opinion, why did he describe his segments as "reporting" and presenting "news"?

These facts and admissions provide further uncontradicted bases for this Court to conclude that a jury could find the complained-of statements capable of defamatory meaning.

Nor does Fox explain how direct assertions of fact are insulated simply because they appear in a commentary talk show. The cases cited by Fox are inapposite—Fox News is not a blog or an editorial page and even if it were, not all statements are immunized simply because they occur in that type of setting. *Condit*, 317 F. Supp. 2d at 363 (regarding *The Laura Ingraham Show*). Indeed, Fox's recent litigation against Dominion Voting demonstrates that statements on commentary talk shows—including those at issue in this litigation—are not categorically protected as mere opinion. *US Dominion, Inc.*, 293 A.3d 1002.

### 3.5    Ray Has Pleaded Facts Sufficient to Plausibly Demonstrate that the Statements Relied on Undisclosed and/or Untruthful Facts

Fox also contends that its statements were opinions based on disclosed facts. But the First Amendment does not protect opinions based on disclosed facts that are themselves false. *Milkovich*, 497 U.S. at 13-14; *see also Herring Networks, Inc. v. Maddow*, 8 F. 4th 1148, 1160 (9th Cir 2021); *Condit v. Dunne*, 317 F. Supp 2d 344 (S.D.N.Y. 2004).

Even assuming some of Fox's statements were opinion, Ray alleges they were based on false statements of fact. Specifically, Beattie falsely stated that Ray did not attend Donald

Trump's speech on January 6, 2021. (D.I. 33, ¶ 33, 83.) Beattie also falsely said that Ray was the one person repeatedly caught encouraging people to go into the Capitol. (D.I. 33, ¶ 55, 83.) Fox seeks to argue with these *facts*—refusing to accept the allegations as true. But on a motion to dismiss, all well-pled allegations must be accepted as true.[5]

Carlson disclosed false facts as a basis for displaying a graphic calling Ray "FedEpps" while asserting that the Committee was lying about Ray. Carlson falsely told his audience that Ray gave a misleading denial by carefully phrasing it to only deny working for "law enforcement," and not some other government agency. (D.I. 33, ¶ 84.) Carlson's characterization of Ray's testimony was false. The Committee asked Ray whether he was acting on behalf of "any government agency" and Ray said, "No, sir. The only time I've been involved with the government was when I was a Marine in the United States Marine Corps." (D.I. 33, ¶ 84.)

Carlson also showed an image of Ray speaking with Ryan Samsel and said that Ray had been captured on camera encouraging people to storm the Capitol. (D.I. 33, ¶¶ 57-58.) The obvious gist of Carlson's comment was that Ray encouraged Samsel to storm the Capitol. In that same broadcast, Carlson discussed Ray's testimony before the Committee, but did not tell his viewers that Ray testified to telling Samsel, "[T]hat's not why we're here. You've got to be peaceful . . . . It's not what we're about." (J6 Committee Transcript at 51-52.) Carlson also failed to disclose Samsel's statement to the authorities, explaining that Ray had said, "Relax, the cops are doing their job." (D.I. 33, ¶¶ 35.)

---

[5] And as further proof of the statement's falsity, the Court can take judicial notice of *United States of America v. Pamela Anne Hemphill*, Case No. 21-cr-555 (RCL), in which the Statement of Offense as part of Ms. Hemphill's plea deal documents her being caught on video, including on Alex Jones's YouTube channel, encouraging others on January 5, 2021 and January 6, 2021 to enter the Capitol, available at https://www.justice.gov/usao-dc/case-multi-defendant/file/1469486/dl.

Further, Carlson failed to disclose any factual basis for his statements on March 6 and 11, 2023, that he would not name someone as a federal agent unless he knew for a fact they were an agent. (D.I. 33, ¶¶ 60-63, 82.) Carlson's producers had viewed over 40,000 hours of surveillance footage and then Carlson told his views—without offering more—that he knew Ray was a federal agent from what he had seen in those videos. (D.I. 33, ¶¶ 60-63.)

And even characterizing some of Carlson's statements as opinion does not protect Fox from liability, as a matter of law. Fox relies on *McCafferty v. Newsweek*, where the Third Circuit distinguished between a generalized accusation of "racism" and factual allegations of racist misconduct, which could be actionable. 955 F.3d 352, 352 (3d Cir. 2020). Utah recently endorsed the same distinction. *Keisel v. Westbrook*, 542 P.3d 536, 550 (Utah 2023). Here, Fox did not accuse Ray of some amorphous ideological pejorative. Rather, Fox labeled him a federal agent provocateur, accusing him of engaging in insurrectionist misconduct. (D.I. 33, ¶¶ 55-65.) Whether he was a federal agent provocateur is a fact that may be proven true or false.

Even expressions of opinion are not insulated from liability when the speaker "did not entertain the opinion" or "a reasonable and fair-minded person could not have entertained the derogatory opinion." W. Keeton et al., Prosser & Keeton on the Law of Torts § 113. Ray alleged that "Fox and Mr. Carlson knew the story they were pushing about Epps was a lie." (D.I. 33, ¶ 75.) If Fox did not subjectively believe what they presented to viewers, even if phrased as opinion, Fox has no legitimate claim to the opinion doctrine's protection.

Finally, Fox tacitly concedes that each broadcast did not fully disclose the facts upon which the statements were made when arguing that it was not required to disclose them in every segment. (D.I. 36 at 16.) The problem Fox faces, however, is that it relies on several cases in which the facts were "widely reported." (D.I. 36 at 16.) Here, however, Carlson had been

provided with *exclusive* access to 40,000 hours of surveillance footage. Carlson told his viewers that, after reviewing that footage, he knew Ray was a federal agent. Those videos were not "widely reported" or known and discussed. A statement is capable of being a "pure opinion" even if the speaker does not disclose all of the underlying facts only when "*both* parties to the communication know the facts or assume their existence." *Dunn v. Gannett N.Y. Newspapers, Inc.*, 833 F.2d 446, 453 (3d Cir. 1987) (citing Restatement (Second) of Torts § 566 cmt. b) (emphasis added). Fox cannot lay claim to that protection here.

At minimum, Fox's opinion defense is not amenable to resolution on a motion to dismiss. The sufficiency of Fox's disclosure is a factual question that cannot be resolved at this stage.

## 4.    RAY HAS PLEADED FACTS SUFFICIENT TO PLAUSIBLY STATE A CLAIM FOR DEFAMATION PER SE AND FOR SPECIAL DAMAGES

Fox argues for the first time that its statements do not constitute defamation per se. The complained-of statements in the Amended Complaint were all included within the original complaint. As such, Fox has waived this new argument because it could have been raised in its initial motion to dismiss. *See* Fed. R. Civ. P. 12(g)(2); *Helios Streaming, LLC v. Vudu, Inc.*, 2021 WL 254069, at *8 (D. Del. Jan. 26, 2021); *State Farm Mut. Auto. Ins. Co. v. Del. Diagnostic & Rehab. Ctr., P.A.*, 2021 WL 1929365, at *3 (D. Del. May 13, 2021); *Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*, 2019 WL 8641303, at *3 (D. Del. Aug. 7, 2019), *report and recommendation adopted*, 2020 WL 1527321 (D. Del. Mar. 31, 2020).

Further, statements are defamatory per se if they tend to "to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of [her] in the minds of right-thinking persons, and to deprive [her] of their friendly intercourse in society." *Palin*, 113 F.4th at 268. Fox contends Ray's allegations are inadequate because the statements did not accuse Ray of criminal conduct. Fox selectively quotes the Amended Complaint, using an ellipsis to materially

alter Ray's allegation and to suggest that Ray relies exclusively on the criminal conduct aspect of defamation per se. (D.I. 36, at 23.) In truth, Ray alleges that Fox's statements "are defamatory per se, as they impute serious criminal or unethical conduct to Epps. Fox's statements have exposed Epps to the most extreme hatred and contempt. Fox's statements were calculated to— and did in fact—provoke outrage and cause Epps significant harm." (D.I. 33, ¶ 160.)

Fox failed to meet its burden because it did not address Ray's complete allegation, which is alone a sufficient basis to disregard its argument. But Fox's argument is wrong on the merits too. Fox accused Ray of being the "smoking gun of the Fed-surrection" (D.I. 33, ¶¶ 55-65), of being a federal agent who incited an insurrection (D.I. 33, ¶¶ 55-65), and of lying—including under oath, itself a crime—about his role (D.I. 33, ¶ 58.) Carlson acknowledged that wrongly accusing someone of such behavior would have serious consequences. (D.I. 33, ¶ 63.) And Fox was aware of the consequences of its actions, including that it had subjected Ray to "public contempt, ridicule, aversion or disgrace," which was described in the New York Times article that Carlson and Beattie discussed on air before reiterating their lies about Ray. (D.I. 33, ¶ 55.)

This is not speculative: as Ray pleaded, Carlson's comments were designed to, and did, subject him to public contempt and hatred. (D.I. 33, ¶¶ 74, 120-130.) Indeed, while the parties have been briefing this motion, President Trump appeared on a program hosted by Dan Bongino and again invoked the false narrative about Ray, confirming that the outrageous harms caused by Fox's false assertions are likely to continue. *Ep. 2023, Trump Joins the Show to Drop Massive Truth Bombs*, The Dan Bongino Show (Jan. 17, 2025), https://bongino.com/ep-2403-trump-joins-the-show-to-drop-massive-truth-bombs (bringing up Ray unprompted).

Moreover, Ray has also sufficiently pleaded special damages, including specific attorney fees and costs associated with living in hiding and security. (D.I. 33, ¶¶ 22, 149, 161, 175.)

24

5.    **RAY PLEADED FACTS STATING A PLAUSIBLE CLAIM FOR FALSE LIGHT**

There are similarities between false light and defamation, but they are distinct torts. *Jensen v. Sawyers*, 130 P.3d 325, 334 (Utah 2005). "In many cases . . . the publicity given to the plaintiff is defamatory," and where that is so, false light claims will "afford an alternative or additional remedy, and the plaintiff can proceed upon either theory, or both, although he can have but one recovery for a single instance of publicity." Restatement (Second) of Torts § 652E cmt. b. Even where the publicity is not defamatory, the false-light doctrine redresses harms. *Id.* Thus, Utah law recognizes "a distinct branch of false light liability for speech that is technically true but places someone in a highly offensive and misleading light." *SIRQ, Inc. v. Layton Cos., Inc.*, 379 P.3d 1237, 1246 n.6 (Utah 2016); *Jensen*, 130 P.3d at 336 (same); *Russell v. Thomson Newspapers*, 842 P.2d 896, 906-07 (Utah 1992) (same).

Ray alleges that Fox published statements that placed Ray in a highly offensive and misleading light, and that Fox acted with actual malice or reckless disregard for the truth. He has, therefore, successfully stated a plausible alternative claim for false light.

**CONCLUSION**

For the foregoing reasons, this Court should deny Fox's motion in its entirety.

Dated:  January 23, 2025

Of Counsel:

Michael J. Teter
TETER LEGAL
PO Box 522365
Salt Lake City, UT 84152
(202) 796-6619
michael@teterlegal.com

Dick J. Baldwin
PARR BROWN GEE & LOVELESS
101 South 200 East, Suite 700
Salt Lake City, UT 84111
(801) 532-7840
dbaldwin@parrbrown.com

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff James Ray Epps, Sr.*