# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF DELAWARE

| | |
|---|---|
| **JAMES RAY EPPS, SR.**, <br><br> *Plaintiff*, <br><br> v. <br><br> **FOX NEWS NETWORK, LLC**, <br><br> *Defendant*. | C.A. No. 1:23-cv-00761-JLH |

## REPLY IN SUPPORT OF DEFENDANT FOX NEWS NETWORK, LLC'S
## MOTION TO DISMISS THE AMENDED COMPLAINT

**OF COUNSEL:**

Patrick F. Philbin (*pro hac vice*)
Kyle T. West (*pro hac vice*)

**TORRIDON LAW PLLC**
801 Seventeenth Street NW
Suite 1100
Washington, DC 20006
Tel: (202) 249-6900
pphilbin@torridonlaw.com
kwest@torridonlaw.com

**DLA PIPER LLP (US)**
John L. Reed (I.D. No. 3023)
Peter H. Kyle (I.D. No. 5918)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Tel. (302) 468-5700
Fax: (302) 394-2341
john.reed@us.dlapiper.com
peter.kyle@us.dlapiper.com

*Attorneys for Defendant Fox News Network, LLC*

## **TABLE OF CONTENTS**

                                                                **Page**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 1

I.      The Amended Complaint Still Fails To State a Claim for Defamation ............................... 1

          A.      Plaintiff Still Fails To Allege Facts Plausibly Suggesting Actual Malice ............... 1

                   1.      The Views of Fox Employees Who Were Not Responsible for the Challenged Statements Cannot Show Actual Malice................................. 2

                   2.      Supposed Omission of Favorable Facts and Supposed Inconsistencies Do Not Plausibly Allege Actual Malice ........................... 5

                   3.      Plaintiff's Remaining Arguments Merely Rehash Assertions the Court Has Already Rejected......................................................................... 6

          B.      Fox Cannot Be Liable for Statements on the "*Redacted*" Podcast ......................... 6

          C.      The Challenged Statements Are All Protected Opinions ....................................... 7

                   1.      The Challenged Statements Did Not Have a Precise Meaning or Convey Objectively Verifiable Facts .......................................................... 8

                   2.      The Statements Are Protected Opinions on Disclosed Facts ..................... 8

          D.      It Is Undisputed That Claims for the July 13, 2022, Show Are Time Barred ....... 10

          E.      Plaintiff Fails to Allege Defamation Per Se or Special Damages ..........................11

II.     The False Light Claim Fails for the Same Reasons ...........................................................11

CONCLUSION.............................................................................................................................. 12

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbas v. Foreign Policy Group, LLC*,
   783 F.3d 1328 (D.C. Cir. 2015)......................................................................................................8

*Adelson v. Harris*,
   973 F. Supp. 2d 467 (S.D.N.Y. 2013).............................................................................................7

*Agnant v. Shakur*,
   30 F. Supp. 2d 420 (S.D.N.Y. 1998).............................................................................................11

*Baum v. Gillman*,
   667 P.2d 41 (Utah 1983)...............................................................................................................11

*Bauman v. Butowsky*,
   377 F. Supp. 3d 1 (D.D.C. 2019)....................................................................................................7

*Bhatti v. Republican Caucus of Pa. House of Representatives*,
   No. 18-cv-2178, 2020 WL 3412661 (M.D. Pa. June 22, 2020) ...................................................12

*Biro v. Condé Nast*,
   963 F. Supp. 2d 255 (S.D.N.Y. 2013).............................................................................................5

*Boulger v. Woods*,
   917 F.3d 471 (6th Cir. 2019) ..........................................................................................................8

*Brown v. Waters*,
   No. 21-cv-1493, 2024 WL 4024738 (D. Del. Sept. 3, 2024)........................................................10

*Chapin v. Knight-Ridder, Inc.*,
   993 F.2d 1087 (4th Cir. 1993) ........................................................................................................8

*Conklin v. Laxen*,
   180 A.D.3d 1358 (N.Y. 2020) ......................................................................................................11

*Dongguk Univ. v. Yale Univ.*,
   734 F.3d 113 (2d Cir. 2013)............................................................................................................2

*Drew v. Pac. Life Ins. Co.*,
   496 P.3d 201 (Utah 2021)...............................................................................................................6

*Jacob v. Bezzant*,
   212 P.3d 535 (Utah 2009).............................................................................................................12

*Jankowicz v. Fox News Network, LLC*,
    No. 23-cv-513, 2024 WL 3510309 (D. Del. July 22, 2024) ...................................................... 7

*Jensen v. Sawyers*,
    130 P.3d 325 (Utah 2005) ........................................................................................................ 12

*Jewett v. IDT Corp.*,
    No. 04-cv-1454, 2008 WL 508486 (D.N.J. Feb. 20, 2008) ..................................................... 12

*Keisel v. Westbrook*,
    542 P.3d 536 (Utah App. 2023) ................................................................................................ 7

*Kerrigan v. Otsuka Am. Pharm., Inc.*,
    560 F. App'x 162 (3d Cir. 2014) ............................................................................................... 7

*Liberman v. Gelstein*,
    605 N.E.2d 344 (N.Y. 1992) .................................................................................................... 11

*McCafferty v. Newsweek Media Grp., LTD.*,
    955 F.3d 352 (3d Cir. 2020) ................................................................................................. 5, 8

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) .................................................................................................. 7

*New York Times Co., v. Sullivan*,
    376 U.S. 254 (1964) .................................................................................................................. 5

*Palin v. New York Times Co.*,
    113 F.4th 245 (2d Cir. 2024) .................................................................................................. 11

*Prince v. Intercept*,
    No. 21-cv-10075, 2023 WL 4492413 (S.D.N.Y. July 12, 2023) ............................................... 5

*RainFocus Inc. v. Cvent Inc.*,
    528 P.3d 1221 (Utah App. 2023) .............................................................................................. 7

*Rivera v. State*,
    142 N.E.3d 641 (N.Y. 2019) ..................................................................................................... 6

*RSM Prod. Corp. v. Fridman*,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009) ....................................................................................... 2

*Satz v. Org. for Resol. of Agunot Inc.*,
    No. 23-cv-36, 2024 WL 1330011 (S.D.N.Y. Mar. 28, 2024) .................................................... 7

*Schiavone Constr. Co. v. Time, Inc.*,
    847 F.2d 1069 (3rd Cir. 1988) .............................................................................................. 5, 7

*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014)................................................................................................3

*Solano v. Playgirl, Inc.*,
    292 F.3d 1078 (9th Cir. 2002) ............................................................................................4

*West v. Thomson Newspapers*,
    872 P.2d 999 (Utah 1994).............................................................................................7, 9

*Zhou v. NextCure, Inc.*,
    No. 20-cv-07772, 2023 WL 4493541 (S.D.N.Y. July 12, 2023)...............................................2

**Other Authorities**

Fed. R. Civ. P. 8....................................................................................................................2, 5

Fed. R. Civ. P. 12(b)(6)...............................................................................................................3

Fed. R. Civ. P. 12(f).....................................................................................................................2

Fed. R. Civ. P. 12(g) ............................................................................................................11, 12

Restatement (Second) of Torts § 566..........................................................................................9

Restatement (Second) of Torts § 652E .....................................................................................12

1 Smolla, *Law of Defamation* § 6:29 (2d ed.)........................................................................9, 10

## INTRODUCTION

Plaintiff fails to provide any basis to salvage the Amended Complaint from dismissal. He does not identify any new factual allegations to alter the holding that he has failed to plead actual malice. He seeks to build up Abby Grossberg as a person responsible for the challenged statements on *Tucker Carlson Tonight* (TCT). But he has no answer to Grossberg's own assertions that, by the time of the challenged statements, she had been demoted, excluded from decision-making, and was largely kept in the dark even in the limited role she had related to booking guests.

Plaintiff also fails to rebut Fox's showing that the challenged statements are all protected opinions on disclosed facts. The transcripts make clear that Carlson provided known facts—including video of Plaintiff—and then provided commentary on those facts, allowing viewers to judge for themselves what to conclude from Plaintiff's conduct and the fact that he had not been charged. At one point, Carlson told viewers: "[Y]ou can draw whatever conclusions you like from that video. We have ours and we shared them with you." D.I. 13-1 at 2. Such discussion about Plaintiff and his role on January 6 reflected core First Amendment protected opinions that cannot support a claim for defamation or false light.

## ARGUMENT

I.      **The Amended Complaint Still Fails To State a Claim for Defamation.**

    A.      **Plaintiff Still Fails To Allege Facts Plausibly Suggesting Actual Malice.**

Plaintiff fails to identify any new, non-conclusory allegations of fact plausibly suggesting actual malice. Instead, after focusing new allegations on former employee Grossberg, Plaintiff wholly fails to address Grossberg's own admissions that, in the relevant time period, she had been "demoted," "marginalize[d]," "frequently shut out of important meetings," "excluded" from decision-making, and was largely "ke[pt] . . . in the dark." Am. Compl. Ex. E ¶¶ 259, 261, 275, 328. Instead, Plaintiff resorts primarily to rehashing arguments the Court has already rejected.

1

### 1. The Views of Fox Employees Who Were Not Responsible for the Challenged Statements Cannot Show Actual Malice.

Plaintiff fails to identify any new factual allegations that could alter the Court's holding that he has failed to plausibly allege that Grossberg was a person responsible for the challenged statements. *See* Ruling Tr. 11:7-8, 10-11. In a case like this involving an organizational defendant, "the plaintiff must identify the individual responsible for the publication of a statement, and it is that individual the plaintiff must prove acted with actual malice." *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123-24 (2d Cir. 2013).

No facts alleged here suggest Grossberg was responsible for the challenged statements. As a threshold matter, Plaintiff's attempt to rely on mere allegations from complaints in Grossberg's own settled cases—especially allegations that Grossberg herself made only "on information and belief"—cannot suffice to state a claim. "[P]aragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Fed. R. Civ. P. 12(f)" and insufficient to state a claim under Rule 8. *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009).[1]

In any event, Plaintiff does not and cannot dispute that Grossberg did not even work on TCT when the first two challenged statements were made on July 13 and 14, 2022. While Plaintiff touts Grossberg's "Senior Producer" title, Grossberg herself says that, before the next challenged statement on January 6, 2023, she had already been "demoted and removed of her Senior Producer title" and had two other Senior Producers (McCaskill and Fox) layered above her. Am. Compl. Ex. E ¶¶ 259-61, 265, 330. They both began directly running the booking team. *Id.*

---

[1] *Accord Zhou v. NextCure, Inc.*, No. 20-cv-07772, 2023 WL 4493541, at *11 (S.D.N.Y. July 12, 2023) ("[R]ecitations of unproven allegations made in other complaints do not, on their own, constitute factual allegations sufficient to survive a motion to dismiss.").

The earliest allegation from Grossberg that Epps relies on to allege that Grossberg doubted something said on TCT involved a meeting on January 9, 2023. Not only did that meeting occur *after* TCT had aired the January 6, 2023, statement Epps challenges here, but it related to content that aired only on March 5, 2023, that does not concern Epps and that he does not challenge in this case. *See* Am. Compl. Ex. F ¶¶ 133-136; Am. Compl. ¶¶ 94-95. Contrary to the misrepresentation in the Amended Complaint, *see* Am. Compl. ¶ 96, Grossberg never stated that she believed TCT made an inaccurate statement about Epps. Instead, she criticized the March 5, 2023, show for attempting to "downplay the violent rebellion" on January 6 by suggesting that it was not violent. Am. Compl. Ex. F ¶ 134. That has nothing to do with the statements in this case.

By the time of the last challenged statement on March 6, 2023, Grossberg says that the two Senior Producers above her (McCaskill and Fox) were tasking the booking team "without her knowledge" and that she was "purposely excluded" and "ke[pt] . . . in the dark" about booking tasks. Am. Compl. Ex. E ¶ 328. There is no basis whatsoever to infer, as Plaintiff suggests, Opp. 6, that she had any role booking Congressman Massie for March 6, 2023. And even if she had, simply booking a guest would not make her a person responsible for content on the show.[2]

Contrary to Plaintiff's assertions, it does not "violat[e] Rule 12(b)(6)'s command," Opp. 7, for Fox to quote Grossberg's own statements in her pleadings showing her minimal role. Plaintiff attached Grossberg's complaints as exhibits to his Amended Complaint and they are thus incorporated by reference. *See, e.g.*, *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Plaintiff cannot rely on the portions of those documents he prefers and ask the Court to ignore the rest.

---

[2] Plaintiff's focus on Congressman Massie is further irrelevant because, contrary to Plaintiff's assertion, Massie did not make "statements alleging Ray was a federal agent." Opp. 6. Massie mentioned Epps only in an aside to note that he showed a tape of Epps to the Attorney General. What Massie focused on was the "really strange behavior" in Capitol security footage of *other* "people behind the police lines in plain clothes"—not Epps. D.I. 13-15 at 15.

3

*Solano v. Playgirl, Inc.*, 292 F.3d 1078 (9th Cir. 2002), also cannot aid Plaintiff. There, the Associate Editor who was third on the masthead for a magazine and the Associate Art Editor—both of whom were working on the specific magazine cover challenged in the case—testified that, in editorial meetings about that cover, they raised concerns that it created a false implication and the senior vice president "bl[ew] off" those concerns. *Id.* at 1085-86 & n.5. There is nothing remotely similar in the Amended Complaint. As noted, Plaintiff has not alleged facts suggesting that Grossberg played *any* role in any of the specific challenged statements, much less that she raised concerns about statements specifically concerning Epps.

To the extent Plaintiff argues that Grossberg shows the state of mind of *others* at TCT, the allegations still fall short. Plaintiff points to only two instances in which Grossberg took issue with content on the show. As noted, one related to the show on March 5, 2023, which Grossberg claims "downplay[ed] the violent rebellion" on January 6. Am. Compl. Ex. F ¶ 134. But there is no allegation that show discussed Epps, and Grossberg's take on that show has no bearing on anyone's state of mind concerning any of the challenged statements in this case. The other instance involved Grossberg's interactions with a lawyer for members of the Proud Boys (who asserted that the FBI had not infiltrated the Proud Boys) and was fully set out in the original complaint. *See* Compl. ¶¶ 64-65. The Court already held those allegations did not suggest actual malice, and repeating the same allegations provides no reason to alter that conclusion.

Allegations about Jason Donner and Geraldo Rivera are even less relevant: neither ever worked on TCT at all. Contrary to Plaintiff's assertion, neither of them has ever "spoken about the falsity of Fox's statements about Ray." Opp. 7. As explained, *see* Mot. at 7, while they criticized Carlson's take on January 6, neither of them mentioned Epps at all. At bottom, Plaintiff's theory is that their statements show that *some* Fox employees disagreed with *some* statements on

4

TCT (not specifically about Epps), and that means discovery *might* reveal other employees with similar views, and *maybe* one of them will be a responsible person providing some evidence of actual malice for the statements at issue here. *See* Opp. 8-9, 12. On that view, to allege actual malice, all a plaintiff needs is someone—anyone—in a media organization who had doubts about a story they had no role in preparing and that suffices to launch a fishing expedition in discovery in the hope of finding some *other* person who can provide evidence of actual malice. Federal Rule 8 requires more than this daisy chain of speculation. Plaintiff's approach would also gut First Amendment protections provided by the requirement that a plaintiff must "plead *facts* that suggest actual malice," *McCafferty v. Newsweek Media Grp.*, 955 F.3d 352, 360 (3d Cir. 2020), which requires factual allegations "specific to the person within [an organization] who was responsible for" the challenged statement. *Prince v. Intercept*, No. 21-cv-10075, 2023 WL 4492413, at *8 (S.D.N.Y. July 12, 2023). Only that suffices to meet the standard that knowledge of falsity must be "brought home to the persons in the . . . organization having responsibility for the publication" of the statement. *N.Y. Times Co., v. Sullivan*, 376 U.S. 254, 287 (1964).

### 2. Supposed Omission of Favorable Facts and Supposed Inconsistencies Do Not Plausibly Allege Actual Malice.

As Fox has explained, the claim that Carlson omitted favorable information about Plaintiff does not suffice to plead actual malice. *See* Mot. 8. Plaintiff has no response to multiple cases holding that "fail[ing] to include as many positive features about the subject as negative ones has no tendency to prove that the publisher believed [the story] to be false." *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 285 (S.D.N.Y. 2013) (quotation omitted); *see also* Mot. at 8.[3] Plaintiff also cannot

---

[3] *Schiavone Constr. Co. v. Time, Inc.*, 847 F.2d 1069 (3rd Cir. 1988), does not help Plaintiff, because it did not involve mere omission of positive information. Instead, there was sufficient evidence of actual malice to reach a jury because four sources with knowledge had told the reporter that the assertion that the subject's name appeared on a particular list was false. *See id.* at 1091-92.

5

and does not dispute Fox's explanation that there was no "inconsistency" in a statement made by a guest on the March 7, 2023, show. *See* Mot. 9. And any inconsistency on that show would be irrelevant in any event, because it is not even a show challenged in the Amended Complaint.

### 3. Plaintiff's Remaining Arguments Merely Rehash Assertions the Court Has Already Rejected.

Plaintiff's remaining arguments, *see* Opp. at 10-12, simply rehash various assertions—about Fox's motives, the improbability of the challenged statements, Darren Beattie's unreliability as a source, and failing to credit Plaintiff's own denials—that the Court has already held insufficient to allege actual malice. *See* Ruling Tr. 11-14. Plaintiff does not even pretend to offer any new allegations on these points that could warrant reversing the Court's prior decision.

### B. Fox Cannot Be Liable for Statements on the "*Redacted*" Podcast.

Plaintiff still fails to point to any new allegations suggesting that Carlson was acting within the scope of his employment when he appeared on *Redacted*. Plaintiff cites an alleged cease-and-desist letter that warned Carlson he breached his contract by publishing a new, non-Fox show on the Internet. Plaintiff's theory is that, if Fox did not send a "similar letter after the *Redacted* appearance," Opp. 16, then Carlson must have been acting within the scope of his employment.

That gets things backwards. All conduct of a media employee on platforms unrelated to his employer is not presumed to be within the scope of employment unless the employer expressly repudiates it. Instead, Plaintiff bears the burden of alleging facts showing that Carlson's appearance (i) was "of the general kind [he] [wa]s employed to perform" for Fox and (ii) was "motivated . . . by [a] purpose of serving [Fox's] interest." *Drew v. Pac. Life Ins. Co.*, 496 P.3d 201, 214 (Utah 2021); *accord Rivera v. State*, 142 N.E.3d 641, 645 (N.Y. 2019). He has still failed to allege any such facts. The only new allegation—that Carlson's contract required him to provide services exclusively to Fox and he was once called out for breaching that contract by publishing a

6

show on a non-Fox platform—does not remotely suggest that appearing on another non-Fox platform (*Redacted*) was part of his employment for Fox.

C.     **The Challenged Statements Are All Protected Opinions.**

To argue that the challenged statements are not opinions, Plaintiff repeatedly asserts that that, if a statement is "capable of defamatory meaning," it must go to the jury. *See* Opp. 1, 3, 14-15. That misstates the law. The question whether a statement can bear a defamatory meaning—that is, whether the statement is damaging to the plaintiff's reputation—is distinct from the question whether it is a protected expression of opinion. *West v. Thomson Newspapers*, 872 P.2d 999, 1011, 1013-20 (Utah 1994) (statement with defamatory meaning nonetheless a protected opinion).[4] The case Plaintiff repeatedly cites does not even address the distinction between fact and opinion. *See Schiavone Constr. Co. v. Time, Inc.*, 847 F.2d 1069 (3d Cir. 1988). "Whether a statement constitutes a fact or opinion is a legal question resolved by the court." *Kerrigan v. Otsuka Am. Pharm., Inc.*, 560 F. App'x 162, 168 (3d Cir. 2014); *accord Keisel v. Westbrook*, 542 P.3d 536, 548 (Utah App. 2023).[5] And if the issue is close—given the protections for opinions under the First Amendment and the Utah and New York constitutions—"a court should err on the side of non-actionability." *Adelson v. Harris*, 973 F. Supp. 2d 467, 487 (S.D.N.Y. 2013) (quotation omitted); *accord Bauman v. Butowsky*, 377 F. Supp. 3d 1, 15 (D.D.C. 2019).[6]

---

[4] *See also, e.g.*, *RainFocus Inc. v. Cvent Inc.*, 528 P.3d 1221, 1230 (Utah App. 2023) ("Even if a statement is defamatory, the Utah Constitution provides an independent source of protection for expressions of opinion." (quotation omitted)); *Satz v. Org. for Resol. of Agunot Inc.*, No. 23-cv-36, 2024 WL 1330011, at *5 (S.D.N.Y. Mar. 28, 2024) ("The First Amendment protects Americans' rights to express opinions and make statements they reasonably believe to be true, even though it may significantly harm a plaintiff's reputation.").

[5] *Accord Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 695 (11th Cir. 2016); *Jankowicz v. Fox News Network, LLC*, No. 23-cv-513, 2024 WL 3510309, at *3 (D. Del. July 22, 2024).

[6] Even when addressing defamatory meaning, courts "do not indulge . . . inferences . . . in favor of a defamatory meaning." *Rainfocus*, 528 P.3d at 1225-26 (quotation omitted).

7

In any event, the issue here is not close. Plaintiff offers no sound basis for holding that the challenged statements are anything but protected opinions.

### 1. The Challenged Statements Did Not Have a Precise Meaning or Convey Objectively Verifiable Facts.

Plaintiff cannot dispute that almost all the challenged statements merely note the fact that Plaintiff had not been charged for his conduct on January 5 and 6 and either (i) ask questions, such as "why is that?" Am. Compl. ¶ 58, or (ii) suggest there was something "mysterious" and worth questioning about why Plaintiff had escaped charges, *id.* ¶ 53. Asking and encouraging questions does not assert a fact, and Plaintiff's cited cases do not alter that conclusion. *Boulger v. Woods*, 917 F.3d 471 (6th Cir. 2019), while noting that *all* questions are not "per se" excluded from being actionable, dismissed the claim before it because "it is generally settled . . . that a question, however embarrassing or unpleasant to its subject," cannot support a claim for defamation. *Id.* at 480 (quotation omitted). Similarly, *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1339 (D.C. Cir. 2015) (Kavanaugh, J.), dismissed a claim under the "widely adopted defamation principle that questions are questions" and treating them as actionable statements would result in a "severe infringement on free speech." Plaintiff has no response to the basic principle that "invit[ing] the public to ask" questions, "rather than a libel, is the paradigm of a properly functioning press." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1096 (4th Cir. 1993). Permitting Plaintiff's claims here to proceed would trample on that principle and stifle commentary on issues of public interest.

### 2. The Statements Are Protected Opinions on Disclosed Facts.

Plaintiff also fails to rebut Fox's showing that *all* the challenged statements are protected under the First Amendment rule that "opinions based on disclosed facts are absolutely privileged no matter how derogatory they are." *McCafferty*, 955 F.3d at 357 (quotation omitted). Plaintiff's theories for avoiding that rule misstate the law or distort the statements at issue.

8

First, it does not aid Plaintiff that any suggestion he was a federal agent "is a fact that may be proven true or false." Opp. 22. Plaintiff offers no response to multiple cases, the Restatement, and his counsel's own treatise explaining that an opinion "does not lose its protected status merely because it is ostensibly cast in factual form." 1 Smolla, *Law of Defamation* § 6:29 (2d ed.); *see also* Restatement (Second) of Torts § 566 cmt. c, illus. 4; Mot. 15 (collecting cases).

Second, Plaintiff's claims that the statements relied on *false* facts are incorrect. Plaintiff points to Beattie's statement that Plaintiff did not attend President Trump's speech on January 6. Opp. 20-21. But that was true. Plaintiff testified that he *left* the rally when Trump started speaking. *See* Mot. 18. Next, Plaintiff complains that Beattie said Plaintiff was the "one person repeatedly caught encouraging people to go into the Capitol." Opp. 21. As Fox explained, Beattie said Plaintiff was the one such person on tape "as early as January 5th." Mot. 18 (quoting Am. Compl. ¶ 55). Beattie's point, moreover, was that Plaintiff was the one person caught doing that who remained "unarrested" and "unindicted." Am. Compl. ¶ 55. That was also true.[7] Plaintiff fares no better quibbling with Carlson's characterization of the questions Plaintiff answered before the January 6 Committee. *See* Opp. 21. Carlson was right about ten of the eleven times the question was asked, *see* Mot. 20 & n.15.[8] In any event, to lose protection as an opinion, a statement must be based on "facts that are false *and defamatory*." *West*, 872 P.2d at 1015 (emphasis added); *accord*

---

[7] Plaintiff's citation, Opp. 21 n.5, to the charging document for another rioter (Hemphill) who apparently was caught on tape on both January 5 and 6 encouraging people to go into the Capitol just proves Beattie's point. Hemphill was charged for that conduct, Epps was not.

[8] Plaintiff is also wrong in concocting a theory that Carlson made a false statement about what Plaintiff said to Ryan Samsel. Opp. 21. In the January 6, 2023, show, when Carlson said that Plaintiff was caught on tape "encouraging the crowd" both "on January 5th and 6th," Am. Compl. ¶ 58, he was clearly referring to tapes *with audio* of Plaintiff on January 5 encouraging a crowd to "go into the Capitol" the next day and on January 6 directing the crowd: "As soon as the President is done speaking, we go to the Capitol. The Capitol is this direction." D.I. 13-11 at 6. Nothing in the transcript shows Carlson purporting to describe what Plaintiff said to Samsel.

9

1 Smolla, *Defamation* § 6:29; *see also* Mot. 19.  None of the supposed errors Plaintiff identifies would be defamatory and the challenged statements remain protected opinions.

Third, Plaintiff also has not plausibly alleged that any challenged statement relied on—or implied—*undisclosed* facts.  Plaintiff claims that Carlson suggested that he "knew" Epps was a federal agent based on something in 40,000 hours of Capitol security footage.  Opp. 23.  But that flatly misrepresents what Carlson said.  In the March 6, 2023, show discussing those tapes, Carlson mentioned Epps only once: to note that the tapes showed he had lied about when he left the Capitol grounds.  D.I. 13-15, Ex. V at 12.  In the segment Plaintiff quotes, Congressman Massie described *other* footage showing "strange behavior" of *other* people "behind the police lines in plain clothes . . . walking up around boundaries, as if they weren't even there."  Am. Compl. ¶ 60.  Massie mentioned Epps only as an aside noting that he had shown a tape of Epps to the Attorney General.  But it was in response to the discussion of "strange behavior" of *others* that Carlson responded "that's exactly right"—reviewing the footage suggested that "Federal agents" were in the crowd.  *Id.*  Carlson never connected that discussion to Epps.[9]  In short, the transcript makes clear that the assertion that Carlson said that he "knew" that Epps was a federal agent based on the 40,000 hours of tapes is a pure fabrication.  Carlson never said or implied that.

### D. It Is Undisputed That Claims for the July 13, 2022, Show Are Time Barred.

Plaintiff does not dispute that any claim based on the show of July 13, 2022, is time barred and thus has forfeited that point.  *See, e.g.*, *Brown v. Waters*, No. 21-cv-1493, 2024 WL 4024738, at *2 (D. Del. Sept. 3, 2024).

---

[9] Similarly, earlier in the show Carlson noted "behavior" on the tapes that "didn't seem to make sense," such as "[m]en in civilian clothes holding doors open for protestors," but explained that "we don't know" whether those men were federal agents.  *Id.* ¶ 61.  Carlson did not connect that discussion to Epps either.  He never suggested that *any* of the footage shed *any* further light on Epps, other than the time Epps left the Capitol grounds.

### E. Plaintiff Fails to Allege Defamation Per Se or Special Damages.

The defamation claim also fails because Plaintiff fails to allege defamation per se or special damages. Plaintiff does not dispute that there are only four categories of defamation per se in Utah: statements that "impute criminal conduct, loathsome disease, conduct incompatible with the exercise of lawful business or unchastity." *Baum v. Gillman*, 667 P.2d 41, 43 (Utah 1983). And contrary to Plaintiff's suggestion, the Second Circuit decision in *Palin v. New York Times Co.*, 113 F.4th 245, 268 (2d Cir. 2024), has not expanded (without discussion) the same four categories under New York law. *See, e.g.*, *Liberman v. Gelstein*, 605 N.E.2d 344, 348 (N.Y. 1992) (listing categories).[10] Plaintiff has no rationale to bring his claims within those four categories. He does not dispute that he pled guilty to encouraging the crowd, and any suggestion that he did so as a federal agent would not imply he committed a separate crime. *See* Mot. 23.

Plaintiff also fails to allege special damages. He does not dispute that special damages must be alleged with specific dollar amounts and itemized expenses. *See, e.g.*, *Agnant v. Shakur*, 30 F. Supp. 2d 420, 426 (S.D.N.Y. 1998). But he offers no rationale to bring his vague assertion of damages from "living and hiding in Utah" and $15,000 in unspecified "expenses" in connection with his criminal case, Am. Compl. ¶¶ 22, 149, within that rule.

Plaintiff's assertions of waiver under Rule 12(g) are plainly incorrect. Rule 12(g) bars an argument on a successive 12(b)(6) motion only when the argument was "available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Here, Fox secured dismissal of Plaintiff's only specific claim for damages in the original complaint ($350,000 in lost profits, D.I.

---

[10] New York courts continue to hold that "[a] plaintiff in a defamation action must allege that he or she suffered special damages—the loss of something having economic or pecuniary value . . . unless the defamatory statement falls within one of the four per se exceptions, which consist of statements (i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman." *Conklin v. Laxen*, 180 A.D.3d 1358, 1360 (N.Y. 2020).

11

1-1 ¶ 90) because those damages were incurred before July 10, 2022, and were barred by the Court's ruling on the statute of limitations. Accordingly, the Amended Complaint makes an entirely *new* allegation of damages "incurred while Epps was domiciled in the State of Utah" vaguely related to "hiding" and "security measures" and cites a round figure of $15,000 only in connection with unspecified "expenses" in his criminal case. Am. Compl. ¶¶ 22, 149. Fox's argument that these new allegations fail to allege special damages (and that Plaintiff failed to meet the alternative requirement of defamation per se) was not available on the original motion because the complaint did not contain these allegations. Thus, Rule 12(g) is no bar to raising the argument now.[11]

## II.   The False Light Claim Fails for the Same Reasons.

*First*, Plaintiff does not dispute that his false light claim fails under New York law.

*Second*, he concedes that First Amendment restrictions apply. *See* Mot. 25. The claim thus fails because Plaintiff fails to allege actual malice and the challenged statements are opinions.

*Third*, Plaintiff does not dispute that any false light claim based on the July 13, 2022, show is time barred. *See Jensen v. Sawyers*, 130 P.3d 325, 332-37 (Utah 2005); Fox Mem. at 25.

*Fourth*, Plaintiff does not dispute that his entire false light claim fails because he failed to plead special damages. *See Jacob v. Bezzant*, 212 P.3d 535, 543 (Utah 2009); *see also* Restatement (Second) of Torts § 652E cmt. e; Fox Mem. at 25.

## CONCLUSION

The Amended Complaint should be dismissed for failure to state a claim.

---

[11] *See, e.g.*, *Bhatti v. Republican Caucus of Pa. House of Representatives*, No. 18-cv-2178, 2020 WL 3412661, at *3 (M.D. Pa. June 22, 2020) ("[W]here an amended complaint contains new factual allegations in support of a claim, Rule(g)(2) does not apply and the defendant may raise new defenses and objections to that claim."); *Jewett v. IDT Corp.*, No. 04-cv-1454, 2008 WL 508486, at *2 (D.N.J. Feb. 20, 2008).

| | |
|---|---|
| DATED:  January 30, 2025 | **DLA PIPER LLP (US)** |
| **OF COUNSEL:** |   /s/ John L. Reed |
| Patrick F. Philbin (*pro hac vice*) | John L. Reed (I.D. No. 3023) |
| Kyle T. West (*pro hac vice*) | Peter H. Kyle (I.D. No. 5918) |
| | 1201 N. Market Street, Suite 2100 |
| **TORRIDON LAW PLLC** | Wilmington, DE 19801 |
| 801 Seventeenth Street N.W. | Tel. (302) 468-5700 |
| Suite 1100 | Fax: (302) 394-2341 |
| Washington, DC 20006 | john.reed@us.dlapiper.com |
| Tel: (202) 249-6900 | peter.kyle@us.dlapiper.com |
| pphilbin@torridonlaw.com | |
| kwest@torridonlaw.com | |

*Attorneys for Defendant Fox News Network, LLC*

13